Thomas R. Califano, Esq.
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail:  thomas.califano@dlapiper.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| ORION HEALTHCORP, INC. | : Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : Case No. 18-71789 (AST) |
| | : |
| Debtors. | : (Jointly Administered) |

-------------------------------------------------------------------x

**APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF EXECUTIVE OFFICER AND CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, *NUNC PRO TUNC* TO THE PETITION DATE**

Orion HealthCorp, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby apply (the "Application") to this Court for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing the Debtors to retain FTI Consulting, Inc. ("FTI"), pursuant to the terms and conditions of that certain letter agreement between FTI and the Debtors dated October 19, 2017 (the "Engagement Letter"),[1] a copy of which is attached hereto as **Exhibit B**, to (i) provide Timothy J. Dragelin as Chief Executive Officer[2] and Chief Restructuring Officer ("CEO/CRO"), (ii) provide additional staff (the "Hourly Temporary Staff" and, together with the CEO/CRO, the "FTI Professionals" or the "Interim Management Service Providers"); (b) providing that the employment of the FTI Professionals is effective *nunc pro tunc* as of March 16, 2018 (the "Petition Date"); and (c) granting certain related relief. In support of this Application, the Debtors submit the Declaration of Timothy J. Dragelin (the "Dragelin Declaration"), attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully state as follows:

**JURISDICTION**

1. This Court has jurisdiction over these cases, the Debtors, property of the Debtors' estates and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core

---

[1] Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein. Additionally, any initially capitalized terms used in this Application and not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

[2] Mr. Dragelin is the proposed Chief Executive Officer of all of the Debtor entities, except for Orion HealthCorp, Inc.

proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Application are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

4. On the Petition Date, each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code.

5. The Debtors continue to be in possession of their assets and to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 4, 2018, the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 82]. As of the date hereof, no trustee or examiner has been appointed in the Debtors' chapter 11 cases.

6. Additional factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in more detail in the *Declaration of Timothy J. Dragelin in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") [D.I. 2], which is fully incorporated in this Application by reference.

## RELIEF REQUESTED

7. By this Application, the Debtors seek the entry of an order pursuant to Bankruptcy Code sections 105(a) and 363(b): (a) authorizing the Debtors to retain FTI, pursuant to the terms and conditions set forth in the Engagement Letter, to (i) provide Timothy J. Dragelin as CEO/CRO, (ii) provide the Hourly Temporary Staff; (b) providing that the employment of the FTI Professionals is effective *nunc pro tunc* as of the Petition Date; and (c) granting certain

related relief.

## QUALIFICATIONS OF FTI AND MR. DRAGELIN

8.      In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of the Interim Management Service Providers will substantially enhance their attempts to maximize the value of their estates. FTI possesses extensive knowledge and expertise in the areas of bankruptcy and financial matters relevant to these chapter 11 cases, and is well qualified to serve as the Debtors' Interim Management Service Providers. In selecting its Interim Management Service Providers, the Debtors sought an advisor with experience in providing similar services in complex cases. FTI employs seasoned professionals, such as the FTI Professionals in this case, with C-level experience to assist distressed companies with financial and operational challenges, and FTI regularly assists large and complex businesses similar to the Debtors.

9.      In addition to FTI's experience in the management of troubled companies, both in and out of court, FTI has developed an in-depth understanding of the Debtors' financial history, business operations, and the industry in which the Debtors operate. FTI has therefore accumulated significant in-depth knowledge regarding the Debtors. Its professionals have worked closely with the Debtors' and have become well acquainted with the Debtors' operations, debt structure, creditors, business, and related matters. Accordingly, FTI has developed significant relevant experience regarding the Debtors that will assist FTI in providing effective and efficient services in these chapter 11 cases.

10.     Mr. Dragelin is a Senior Managing Director in the Corporate Finance and Restructuring practice at FTI, where he leads FTI's Corporate Finance and Restructuring's Healthcare Industry practice. Mr. Dragelin has more than twenty (20) years of experience on restructuring matters, including representing debtors and creditors in bankruptcy and out-of-court

restructurings. His experience includes bankruptcy planning and management, turnaround consultation, interim management, lender advisory, buy-side due diligence, sell-side mandates, valuation, process improvement, forensic investigations, and litigation advisory work. Mr. Dragelin also has developed an in-depth understanding of the Debtors' financial history, business operations, and the industry in which the Debtors operate. Accordingly, Mr. Dragelin has developed significant relevant experience regarding the Debtors that will assist him in providing effective and efficient services in these chapter 11 cases.

11. Denial of the relief requested herein will deprive the Debtors of the assistance of FTI's uniquely qualified professionals. Given the extensive prepetition services provided by FTI to the Debtors, a denial of FTI's employment would unjustly disadvantage the Debtors and all parties in interest, as the Debtors would not be able to utilize FTI's extensive understanding of the Debtors' operations. If the Debtors were forced to engage other interim management service providers, such a change would result in significant and costly burdens to the Debtors' estates, which would further devalue the Debtors' assets.

## SERVICES TO BE PERFORMED BY FTI

12. Consistent with the terms of the Engagement Letter, the FTI Professionals are charged with assisting the Debtors with its various operational, administrative, and financial needs arising in connection with these chapter 11 cases (collectively, the "Services").[3]

13. Among other things, the FTI Professionals have provided, or will provide on a prospective basis upon the Court's approval of this Application, Services in the following categories:

---

[3] The Services shall not include (i) audit, legal, tax (except as provided in the scope below), environmental, accounting, actuarial, employee benefits, insurance advice or similar specialist and other professional services which are typically outsourced; or (ii) investment banking, including valuation or securities analysis, including advising any party or representation of the Debtors on the purchase, sale or exchange of securities or representation of the Debtors in securities transactions.

 (a) Timothy J. Dragelin will serve as the Debtors' CEO/CRO, as applicable.

 (b) The Hourly Temporary Staff will assist the CEO/CRO to provide the following services:

  (1) Assisting the Debtors in its assessment of cash management and cash flow forecasting processes, including the monitoring of actual cash flow versus projections;

  (2) Assisting the Debtors in (i) identifying various operational, managerial, financial and strategic restructuring alternatives, especially as they relate to the sale of assets in a bankruptcy court proceeding, and (ii) understanding the business and financial impact of same;

  (3) Assisting the Debtors in connection with their communications and negotiations with other parties, including its secured creditors, significant vendors, etc.;

  (4) Subject to the limitations[4] set forth in the Engagement Letter, assisting the Debtors with their preparation of various financial reports which may be required during discussions with the Debtors' board, creditors, and stakeholders;

  (5) Advising and assisting the Debtors in their development of budgets, debtor-in-possession financing, and other purposes;

  (6) Advising and assisting the Debtors concerning various other financial/business disclosures, assisting with filing tax returns, and reporting requirements pertaining to the chapter 11 proceedings;

  (7) Interact with the advisors to the Committee;

  (8) Upon conclusion of a sale or restructuring process, advising and assisting the Debtors to analyze claims and potential objections to claims and avoidance actions (e.g. preference and fraudulent transfer actions) based on the proposed exit strategy;

---

[4] On a postpetition basis, FTI will assist the Debtors with filing tax returns.

      (9)  Providing advice and recommendations with respect to other related matters as the Debtors or their professionals may request from time to time, as agreed to by FTI;

      (10)  Providing such other financial advisory services as may be agreed by FTI and the Debtors;

      (11)  assisting in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions;

      (12)  assisting in segregating prepetition and postpetition business transactions;

      (13)  assisting the Debtors in the identification of executory contracts and unexpired leases and performing cost/benefit evaluations with respect to the assumption or rejection of each;

      (14)  assisting the Debtors in the preparation of required financial related disclosures, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports;

      (15)  providing assistance with implementation of court orders;

      (16)  participating in meetings and providing support to the Debtors and their other professional advisors in negotiations with potential investors, banks and other secured lenders, the Committee, the U.S. Trustee, other parties-in-interest, and professionals hired by the same, as requested; and

      (17)  rendering such other restructuring and general business consulting or such other assistance for the Debtors management or counsel may request, that are not duplicative of services provided by other professionals engaged by the Debtors.

    (c)  The Hourly Temporary Staff may be assisted by or replaced by other FTI professionals.

14.  Subject to this Court's approval of the relief requested in this Application, the FTI Professionals are willing to provide the Services to the Debtors. Under the Engagement

-7-

Letter, the CEO/CRO will report directly to the Debtors' Board of Directors. FTI will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## COMPENSATION AND EXPENSES

15. The FTI Professionals have agreed to be paid according to the following fee structure (the "Fee Structure"):

    (a) Hourly Rates. The normal hourly billing rates for the current, or any additional, professionals with the skills and experience needed for engagements of this kind, which are subject to periodic revision, are as follows:

Per Hour (USD).[5]

| | |
|---|---:|
| Senior Managing Directors | $660 - 1,050 |
| Directors / Senior Directors / Managing Directors | $500 - 835 |
| Consultants/Senior Consultants | $335 - 605 |
| Administrative / Paraprofessionals | $135 - 265 |

    (b) Reasonable Direct Expenses. FTI will bill for reasonable direct expenses which are incurred on the Debtors' behalf during their engagement (the "Reasonable Direct Expenses"). The Reasonable Direct Expenses include reasonable and customary third-party out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement and billed at actual cost. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including reasonable counsel fees) with respect thereto.

    (c) Retainer. FTI received a total of $413,500.00 in retainer payments (the "Retainer"), all of which was applied against prepetition fees and expenses. FTI will send the Debtors periodic invoices on the first day of the month for services rendered and charges and disbursements incurred. Upon transmittal of the invoice, FTI may immediately draw upon the Retainer up to the amount of the invoice.

---

[5] Pursuant to the Engagement Agreement, the hourly rates are subject to monthly or weekly caps for certain individuals as follows: Timothy J. Dragelin, $120,000/month; Daniel Jones, $20,000/week; Llewelyn Hall, $48,000/month. *See* Engagement Agreement, Exhibit B.

(d) <u>Employment Protections</u>.  The Debtors agree to promptly notify FTI if the Debtors or any of their subsidiaries or affiliates extend (or solicit the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this engagement and agree that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus, to be paid to FTI's former principal or employee that the Debtors or any of their subsidiaries or affiliates hire at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this engagement.

16.     The Debtors believe that FTI's Fee Structure is fair and reasonable in light of the type of services being provided and is comparable to those generally charged by firms of similar stature to FTI for comparable engagements.  In addition, given the numerous issues FTI may be required to address in these cases, the intense effort expected to be required over certain periods of time (particularly at the outset of these cases), FTI's commitment to the variable level of time and effort necessary to address all such related issues as they arise and the market prices for FTI's services for engagements of this nature in an out-of-court context, the Debtors believe that the FTI fee arrangement is fair and reasonable.

## INDEMNIFICATION PROVISIONS

17.     As a material part of the consideration for which FTI has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions in <u>Exhibit A</u> to the Engagement Letter (the "<u>Indemnification Provisions</u>").  The Indemnification Provisions provide that the Debtors indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees under certain circumstances.  All requests of FTI for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and shall be subject to review by, the Court to ensure that payment of such indemnity (a) conforms to the terms of the Engagement Letter and (b) is reasonable based upon the circumstances.

18.     The Debtors and FTI believe that the Indemnification Provisions are customary and reasonable for firms providing interim management services.

19.     Moreover, the terms and conditions of the Indemnification Provisions were negotiated by the Debtors and FTI at arm's-length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and their creditors in light of the fact that the Debtors require FTI's services to successfully navigate their chapter 11 case. Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Provisions as set forth in the Engagement Letter.

## ALLOWANCE OF FEES AND EXPENSES

20.     If the Court approves the relief requested herein, neither FTI nor the FTI Professionals will be employed under section 327 of the Bankruptcy Code, but rather as interim management service providers under section 363 of the Bankruptcy Code. Accordingly, FTI and the FTI Professionals will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

21.     However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (*i.e.*, the Jay Alix Protocol), FTI intends to file with the Court and serve on the Debtors, the U.S. Trustee and the Committee (collectively, the "Notice Parties") a report on staffing by the 30th of each month for the previous month (the "Staffing Report"). The Staffing Report would include the names and functions filled by all FTI personnel assigned to this engagement, and would be subject to review by the Court in the event so requested by any of the Notice Parties.

22.     In addition, FTI will file with this Court, and serve upon the Notice Parties,

-10-

reports of compensation earned and expenses (the "Compensation Reports") incurred on a quarterly basis, which Compensation Reports will be filed by the 30th of the month following the end of the previous quarter. The Compensation Reports would summarize the services provided, identify the compensation earned, itemize expenses incurred and provide for an objection period of 21 days from the filing and service of the Compensation Reports. All such compensation would be subject to review by this Court if an objection is filed.

## PAYMENTS PRIOR TO THE PETITION DATE

23. As noted above, FTI has provided prepetition services to the Debtors (the "Prepetition Services"). During the one-year period prior to the commencement of these chapter 11 cases, FTI has received $3,648,757.00 from the Debtors for professional fees, charges and disbursements incurred prior to the Petition Date. Further, as noted above, FTI received prepetition the Retainer in the amount of $413,500.00,[6] all of which was applied against prepetition fees and expenses. A list of payments FTI has received for Prepetition Services in the 90 days prior to the Petition Date is described in **Schedule 1**, attached to the Dragelin Declaration.

24. Other than as set forth herein or in the Engagement Letter, there is no proposed arrangement between the Debtors and FTI for compensation to be paid in these chapter 11 cases.

25. FTI is not a creditor of the Debtors' estates, and has been fully paid by the Debtors for all prepetition services rendered by FTI to the Debtors.

## DISINTERESTEDNESS

26. The Debtors do not believe that either FTI or the Interim Management Service Providers are "professionals" whose retention is subject to approval under section 327 of the

---

[6] The Retainer amount of $413,500.00 is included in, and not in addition to, the $3,648,757.00 that FTI has received for professional fees, charges and disbursements incurred prior to the Petition Date.

-11-

Bankruptcy Code. However, FTI has provided information with respect to its connections with the Debtors and other significant parties in interest, as more specifically described in the Dragelin Declaration. To the best of its knowledge and except to the extent disclosed in the Dragelin Declaration, neither FTI nor any employee of FTI holds or represents an interest adverse to the Debtors' estates or has any connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases.

27. To the extent that FTI discovers any new relevant facts or relationships bearing on the matters described herein during the period of FTI's retention, FTI will use reasonable efforts to promptly file a supplemental declaration.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

28. The Debtors and FTI intend that all of the services that FTI will provide to the Debtors will be appropriately directed by the Debtors so as to avoid duplication of efforts among the other professionals retained in this chapter 11 case and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the Debtors' Board of Directors and other professionals to avoid duplication of services among professionals. The Debtors belief that the services to be provided by FTI will complement and will not be duplicative of any services of the Debtors' other professionals, including any services provided by the Debtors' proposed investment banker, Houlihan Lokey Capital, Inc.

## LEGAL BASIS FOR RELIEF REQUESTED

29. Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549

(1990); *Adelphia Communications Corp. v. The American Channel (In re Adelphia Communications Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

30.     "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2 1063, 1070 (2d. Cir. 1983).

31.     Here, the decision to employ the FTI should be authorized because it is based on the Debtors' sound exercise of business judgment. Entry into the Engagement Letter and retaining FTI to provide the FTI Professionals upon the terms set forth in the Engagement Letter, this Application and any order approving this Application, would enable the Debtors to most efficiently administer these chapter 11 cases, address issues arising in chapter 11, and preserve and maximize the value of the estates. The Debtors require the assistance of qualified and experienced personnel to assist in these matters. Thus, the Debtors believe that it would be in their best interest and in the best interests of their estates, creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective *nunc pro tunc* as of the Petition Date.

32.     The retention of corporate officers is proper under section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. *See, e.g., In re Dowling College*, Case

-13-

EAST\152253012.5

No. 16-75545 (REG) (Bankr. E.D.N.Y. Dec. 6, 2016) (order authorizing debtors' retention of chief restructuring officer and additional personnel); *In re Interfaith Medical Center, Inc.*, Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. Mar. 27, 2014) (same); *In re ConnectEdu, Inc.*, Case No. 14-11238 (SCC) (Bankr. S.D.N.Y. June 16, 2014) (same); *In re Archbrook Laguna Holdings LLC*, Case No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Calpine Corp.*, Case No.05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing employment of interim chief financial officer pursuant to section 363 of the Bankruptcy Code); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order designating chief restructuring officer and chief financial officer pursuant to section 363 of the Bankruptcy Code); *In re Endeavor Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (same); *In re Devonshire PGA Holdings, LLC*, Case No. 13-12460 (CSS) (Bankr. D. Del. Oct. 16, 2013) (same); *In re Harry &David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (order authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief restructuring officer and certain additional officers and personnel).

## THE PROPOSED RETENTION COMPORTS WITH THE BANKRUPTCY CODE AND THE PROTOCOL

33.   FTI will provide the Notice Parties with the Staffing Reports and the Compensation Reports. Because the Debtors are seeking to retain FTI pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, FTI is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, the Debtors request that fees and expenses of FTI incurred in the performance of the above-described services be treated as an administrative expense of the Debtors' chapter 11

estates and be paid by the Debtors in the ordinary course of business, without the need for FTI to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

34.     In addition, because the Debtors are not seeking to retain FTI as a professional under section 327 of the Bankruptcy Code, there is no requirement that FTI or the FTI Professionals be disinterested.  In addition, to the best of the Debtors' knowledge, information and belief except as is discussed in the Dragelin Declaration, FTI does not have or represent any interest adverse to the Debtors' estates or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties in interest in these cases, or for any other reason.  Additional information about FTI's connections to parties in interest in these cases is described in the Dragelin Declaration.

## **NO PRIOR REQUEST**

35.     No prior application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief sought herein and (b) granting such other and further relief as the Court may deem proper.

-15-

EAST\152253012.5

| | |
|---|---|
| Executed on April 11, 2018 | */s/ Thomas R. Califano* <br> Thomas R. Califano, Esq. <br> **DLA PIPER LLP (US)** <br> 1251 Avenue of the Americas <br> New York, New York 10020-1104 <br> Telephone: (212) 335-4500 <br> Facsimile: (212) 335-4501 <br> E-mail:  thomas.califano@dlapiper.com <br> <br> *Proposed Counsel to the Debtors and Debtors in Possession* |