# **EXHIBIT C**

**(Dragelin Declaration)**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------------x

**DECLARATION OF TIMOTHY J. DRAGELIN IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF EXECUTIVE OFFICER AND CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, *NUNC PRO TUNC* TO THE PETITION DATE**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Timothy J. Dragelin declares:

1. I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "FTI" or "FTI

Professionals"). I submit this Declaration on behalf of FTI in support of the *Application of Debtors for an Order Authorizing the Debtors to Retain FTI Consulting, Inc. to Provide the Debtors a Chief Executive Officer and Chief Restructuring Officer and Certain Additional Personnel, Nunc Pro Tunc, to the Petition Date* (the "Application"), which was filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## FTI'S QUALIFICATIONS

2. The Debtors are familiar with the professional standing and reputation of FTI. The Debtors understand that FTI comprises a worldwide network of 4,400 employees in 26 countries on six continents and has a wealth of experience providing financial advisory services in restructurings and reorganizations. FTI enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States and is particularly well-qualified to advise the Debtors with respect to its restructuring efforts. FTI's clients include many corporations in the Global 1000, as well as a majority of the largest 25 banks and top 100 law firms in the world.

3. FTI has advised management, senior lenders, and unsecured creditors in several significant restructurings and turnarounds in recent years, including General Motors, Northwest Airlines, American Home Mortgage, Bombay Company, Calphine, Global Power, Tower Automotive, Winn Dixie, Refco, Dana Corporation, Bally Total Fitness, Circuit City, Delphi, Flying J/Big West Oil, Fremont Investment & Loan, Gottschalks, Hawaiian Telecom, Intermet, Lehman Brothers, LyondellBassell, Townsends, Inc., Tribune Company, Nortel Networks, Washington Mutual, and WCI Communities, among others. FTI has a wealth of experience in providing restructuring and financial advisory services in restructurings and reorganization and

enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

4. Since the time FTI was engaged on behalf of the Debtors, FTI has developed a great deal of institutional knowledge regarding the Debtors' operations, finances, and systems. FTI has therefore accumulated significant in-depth knowledge regarding the Debtors. Its professionals have worked closely with the Debtors' and have become well acquainted with the Debtors' operations, debt structure, creditors, business, and related matters. Accordingly, FTI has developed significant relevant experience regarding the Debtors that will assist FTI in providing effective and efficient services in these chapter 11 cases.

## TERMS OF RETENTION

5. As set forth in the agreement between FTI and the Debtors (the "Engagement Letter"), attached to the Application as **Exhibit B**, FTI has been providing and will continue to provide a Chief Executive Officer [1] and Chief Restructuring Officer ("CEO/CRO"), and additional personnel to perform the following services, with the goals of assisting the Debtors, in a cost effective manner, in the planning, analysis of, and execution of a restructuring that is intended to maximize value for all constituents and minimize disruption to the Debtors' operations.

6. Among other things, the FTI Professionals have provided, or will provide on a prospective basis upon the Court's approval of this Application, services in the following categories (the "Services"):

> (a) Timothy J. Dragelin will serve as the Debtors' CEO/CRO, as applicable.

---

[1] Mr. Dragelin is the proposed Chief Executive Officer of all of the Debtor entities, except for Orion HealthCorp, Inc.

3

      (b)      The Hourly Temporary Staff will assist the CEO/CRO to provide the following service

          (1)      Assisting the Debtors in its assessment of cash management and cash flow forecasting processes, including the monitoring of actual cash flow versus projections

          (2)      Assisting the Debtors in (i) identifying various operational, managerial, financial and strategic restructuring alternatives, especially as they relate to the sale of assets in a bankruptcy court proceeding, and (ii) understanding the business and financial impact of same;

          (3)      Assisting the Debtors in connection with their communications and negotiations with other parties, including its secured creditors, significant vendors, etc.;

          (4)      Subject to the limitations[2] set forth in the Engagement Letter, assisting the Debtors with their preparation of various financial reports which may be required during discussions with the Debtors' board, creditors, and stakeholders;

          (5)      Advising and assisting the Debtors in their development of budgets, DIP financing, and other purposes;

          (6)      Advising and assisting the Debtors concerning various other financial/business disclosures, assisting with filing tax returns, and reporting requirements pertaining to the chapter 11 proceedings;

          (7)      Interact with the advisors to the Committee;

          (8)      Upon conclusion of a sale or restructuring process, advising and assisting the Debtors to analyze claims and potential objections to claims and avoidance actions (e.g. preference and fraudulent transfer actions) based on the proposed exit strategy;

          (9)      Providing advice and recommendations with respect to other related matters as the Debtors or their professionals may request from time to time, as agreed to by FTI; and

---

[2] On a postpetition basis, FTI will assist the Debtors with filing tax returns.

4

(10) Providing such other financial advisory services as may be agreed by FTI and the Debtors;

(11) assisting in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions;

(12) assisting in segregating prepetition and postpetition business transactions;

(13) assisting the Company in the identification of executory contracts and unexpired leases and performing cost/benefit evaluations with respect to the assumption or rejection of each;

(14) assisting the Company in the preparation of required financial related disclosures, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports;

(15) providing assistance with implementation of court orders;

(16) participating in meetings and providing support to the Company and their other professional advisors in negotiations with potential investors, banks and other secured lenders, the Committee, the U.S. Trustee, other parties-in-interest, and professionals hired by the same, as requested; and

(17) rendering such other restructuring and general business consulting or such other assistance for the Company management or counsel may request, that are not duplicative of services provided by other professionals engaged by the Company.

(c) The Hourly Temporary Staff may be assisted by or replaced by other FTI professionals.

7. Subject to this Court's approval of the relief requested in this Application, the FTI Professionals are willing to provide the Services to the Debtors. Under the Engagement Letter, the CEO/CRO will report directly to the Debtors' Board of Directors. FTI will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## COMPENSATION AND EXPENSES

8. The FTI Professionals have agreed to be paid according to the following fee structure (the "Fee Structure"):

    (a) Hourly Rates. The normal hourly billing rates for the current, or any additional, professionals with the skills and experience needed for engagements of this kind, which are subject to periodic revision, are as follows:

Per Hour (USD).[3]

| | |
|---|---|
| Senior Managing Directors | $660 - 1,050 |
| Directors / Senior Directors / Managing Directors | $500 - 835 |
| Consultants/Senior Consultants | $335 - 605 |
| Administrative / Paraprofessionals | $135 - 265 |

    (b) Reasonable Direct Expenses. FTI will bill for reasonable direct expenses which are incurred on the Debtors' behalf during their engagement (the "Reasonable Direct Expenses"). The Reasonable Direct Expenses include reasonable and customary third-party out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement and billed at actual cost. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including reasonable counsel fees) with respect thereto.

    (c) Retainer. FTI received a total of $413,500.00 in retainer payments (the "Retainer"), all of which was applied against prepetition fees and expenses. FTI will send the Debtors periodic invoices on the first day of the month for services rendered and charges and disbursements incurred. Upon transmittal of the invoice, FTI may immediately draw upon the Retainer up to the amount of the invoice.

    (d) Employment Protections. The Debtors agree to promptly notify FTI if the Debtors or any of their subsidiaries or affiliates extend (or solicit the possible interest in receiving) an offer of

---

[3] Pursuant to the Engagement Agreement, the hourly rates are subject to monthly or weekly caps for certain individuals as follows: Timothy J. Dragelin, $120,000/month; Daniel Jones, $20,000/week; Llewelyn Hall, $48,000/month. *See* Engagement Agreement, Exhibit B.

employment to a principal or employee of FTI involved in this engagement and agree that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus, to be paid to FTI's former principal or employee that the Debtors or any of their subsidiaries or affiliates hire at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this engagement.

### INDEMNIFICATION PROVISIONS

9. As a material part of the consideration for which FTI has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions in Exhibit A of the Engagement Letter (the "Indemnification Provisions"). The Indemnification Provisions provide that the Debtors indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees under certain circumstances. All requests of FTI for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and shall be subject to review by, the Court to ensure that payment of such indemnity (a) conforms to the terms of the Engagement Letter and (b) is reasonable based upon the circumstances.

10. The Debtors and FTI believe that the Indemnification Provisions, as modified by the proposed order, are customary and reasonable for firms providing interim management services.

11. Moreover, the terms and conditions of the Indemnification Provisions were negotiated by the Debtors and FTI at arm's-length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's services to successfully navigate their chapter 11 case. Accordingly, as part of this Application, the Debtors request that this Court approve the

7

Indemnification Provisions as set forth in the Engagement Letter.

## ALLOWANCE OF FEES AND EXPENSES

12. If the Court approves the relief requested herein, neither FTI nor the FTI Professionals will be employed under section 327 of the Bankruptcy Code, but rather as interim management service providers under section 363 of the Bankruptcy Code. Accordingly, FTI and the FTI Professionals will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

13. However, if the Court approves the relief requested herein, FTI intends to file with the Court and serve on the Debtors, the U.S. Trustee and the Official Committee of Unsecured Creditors appointed in these cases (collectively, the "Notice Parties") a report on staffing by the 30th of each month for the previous month (the "Staffing Report"). The Staffing Report would include the names and functions filled by all FTI personnel assigned to this engagement, and would be subject to review by the Court in the event so requested by any of the Notice Parties.

14. In addition, FTI will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on a quarterly basis, which Compensation Reports will be filed by the 30th of the month following the end of the previous quarter. The Compensation Reports would summarize the services provided, identify the compensation earned, itemize expenses incurred and provide for an objection period of 21 days from the filing and service of the Compensation Reports. All such compensation would be subject to review by this Court if an objection is filed.

## PAYMENTS PRIOR TO THE PETITION DATE

15. As noted above, FTI has provided prepetition services to the Debtors (the "Prepetition Services"). During the one-year period prior to the commencement of these chapter

11 cases, FTI has received $3,648,757.00 from the Debtors for professional fees, charges and disbursements incurred prior to the Petition Date. Further, as noted above, FTI received prepetition the Retainer in the amount of $413,500.00, all of which was applied against prepetition fees and expenses. A list of payments FTI has received for Prepetition Services in the 90 days prior to the Petition Date is described in **Schedule 1**, attached hereto.

16.     Other than as set forth herein or in the Engagement Letter, there is no proposed arrangement between the Debtors and FTI for compensation to be paid in these chapter 11 cases.

17.     FTI is not a creditor of the Debtors' estates, and has been fully paid by the Debtors for all prepetition services rendered by FTI to the Debtors.

## DISINTERESTEDNESS

18.     The Debtors do not believe that either FTI or the Interim Management Service Providers are "professionals" whose retention is subject to approval under section 327 of the Bankruptcy Code. To the best of its knowledge and except to the extent disclosed herein, neither FTI nor any employee of FTI holds or represents an interest adverse to the Debtors' estates or has any connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases.

19.     At the request of the Debtors, FTI shared information obtained through FTI's work for the Debtors with CC Capital Management, LLC ("CC Capital"), the Debtors equity sponsor, including preparing an affidavit in support of a motion filed by CC Capital (the "Lazzara Affidavit"). CC Capital paid FTI approximately $194,202.00 for the preparation of the Lazzara Affidavit. No further amounts are owed and no further work is anticipated in relation to the Lazzara Affidavit.

20.     To the extent that FTI discovers any new relevant facts or relationships bearing

on the matters described herein during the period of FTI's retention, FTI will use reasonable efforts to file promptly a supplemental declaration.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

21. The Debtors and FTI intend that all of the services that FTI will provide to the Debtors will be appropriately directed by the Debtors so as to avoid duplication of efforts among the other professionals retained in this chapter 11 case and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the Debtors' Board of Directors and other professionals to avoid duplication of services among professionals. The Debtors belief that the services to be provided by FTI will complement and will not be duplicative of any services of the Debtors' other professionals, including any services provided by the Debtors' proposed investment banker, Houlihan Lokey Capital, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 11, 2018                          */s/ Timothy J. Dragelin*
                                               Timothy J. Dragelin
                                               Senior Managing Director
                                               FTI Consulting, Inc.

## Schedule 1

### Constellation Healthcare Technologies, Inc.
### Billing and Payments Related Within 90 Days Prior to the Petition Date

| FTI Consulting | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Service Period | | | Paid Invoices | |
| Date of Invoice | Invoice # | Amount | Beginning | End | Payment Amount | Variance | Paid on |
| 11/30/2017 | 7463377 | $228,625 | 11/13/2017 | 11/19/2017 | $228,625 | - | 12/15/2017 |
| 12/12/2017 | 7464008 | 113,076 | 11/20/2017 | 11/26/2017 | 113,076 | - | 12/22/2017 |
| 12/15/2017 | 7464620 | 206,801 | 11/27/2017 | 12/3/2017 | 206,801 | - | 12/29/2017 |
| 12/19/2017 | 7465547 | 142,770 | 12/4/2017 | 12/10/2017 | 142,770 | - | 1/5/2018 |
| 12/27/2017 | 7465609 | 124,392 | 12/11/2017 | 12/17/2017 | 124,392 | - | 2/1/2018 |
| 1/8/2018 | 7466420 | 106,030 | 12/18/2017 | 12/24/2017 | 106,030 | - | 2/9/2018 |
| 1/9/2018 | 7466508 | 47,589 | 12/25/2017 | 12/31/2017 | 47,589 | - | 2/9/2018 |
| 1/12/2018 | 7466957 | 75,083 | 1/1/2018 | 1/7/2018 | 75,083 | - | 2/9/2018 |
| 1/19/2018 | 7467615 | 98,761 | 1/1/1900 | 1/14/2018 | 98,761 | - | 2/23/2018 |
| 1/26/2018 | 7468155 | 104,407 | 1/8/2018 | 1/21/2018 | 104,407 | - | 2/23/2018 |
| 2/2/2018 | 7468816 | 125,278 | 1/15/2018 | 1/28/2018 | 125,278 | - | 3/2/2018 |
| 2/8/2018 | 7469130 | 157,319 | 1/29/2018 | 2/4/2018 | 157,319 | - | 3/2/2018 |

EAST\152253012.5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2/23/2018 | 7470711 | 125,307 | 2/5/2018 | 2/11/2018 | 125,307 | | 3/12/2018 |
| 2/26/2018 | 7470853 | 116,279 | 2/12/2018 | 2/18/2018 | 116,279 | | 3/12/2018 |
| 3/6/2018 | 7471562 | 117,968 | 2/19/2018 | 2/25/2018 | 117,968 | | 3/12/2018 |
| 3/16/2018 | n/a | 558,225 | 2/26/2018 | 3/16/2018 | 413,500[1] | $144,725[2] | 3/16/2018 |

---

[1] The Retainer of $413,500.00 was applied, prepetition, against outstanding fees and expenses on March 16, 2018.

[2] FTI waives all claims for amounts outstanding as of the Petition Date in the amount of $144,725.

2