Thomas R. Califano, Esq.
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**DEBTORS' RESPONSE (I) IN OPPOSITION TO THE MOTION PURSUANT TO FRCP 45(d)(3) TO QUASH AND/OR MODIFY DEBTORS' SUBPOENA SEEKING NON-DEBTOR RECORDS HELD BY ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C. AND (II) IN SUPPORT OF DEBTORS' *EX PARTE* MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULES 2004 AND 9014 DIRECTING THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK PC, A. MITCHELL GREENE, ESQ., ADAM GREENE, ESQ., AND MATTHEW C. CAPOZZOLLI, ESQ.**

Orion HealthCorp, Inc. and its affiliated debtors and debtors in possession (collectively the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US), hereby submit this response (the "Response") (i) in opposition to the *Motion Pursuant to FRCP 45(d)(3) to Quash and/or Modify Debtors' Subpoena Seeking Non-Debtor Records Held by Robinson Brog Leinwand Greene Genovese & Gluck P.C.* [D.I. 228] (the "Motion to Quash") and (ii) in support of the Debtors' request for complete and accurate accounting records [D.I. 234] pursuant to the *Order Pursuant to 11 U.S.C. §§ 542(a) and 542(e) Compelling Robinson Brog Leinwand Greene Genovese & Gluck PC to Turnover an Accounting* [D.I. 164] (the "Accounting Order") and the *Debtors' Ex Parte Motion for an Order Pursuant to Bankruptcy Rules 2004 and 9014 Directing the Production of Documents and the Examination of Robinson Brog Leinwand Greene Genovese & Gluck PC, A. Mitchell Greene, Esq., Adam Greene, Esq., and Matthew C. Capozzolli, Esq.* [D.I. 21] (the "2004 Motion"). In support of this Response, the Debtors rely on the *Declaration of Frank Lazzara in Response to Robinson Brog Leinwand Greene Genovese & Gluck PC's Motion to Quash and/or Modify Debtors' Subpoena Seeking Non-Debtor Records* (the "Lazzara Declaration"), filed contemporaneously herewith under seal. [1] In further support of this Response, the Debtors respectfully state as follows:

---

[1]  All capitalized terms not otherwise defined in this Response shall have the meaning given to them in the Lazzara Declaration. Due to the sensitive nature of the financial information contained therein, the Debtors intend to file the Lazzara Declaration under a motion to seal.

## PRELIMINARY STATEMENT

As the Court is well aware, the Debtors have sought for months to recover their files and account for their funds which were or are in possession of their former counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog"). The Debtors have shown that the relationship between Robinson Brog, the Debtors and the Debtors' former management was extensive. Robinson Brog has frustrated these efforts by slowly turning over documents in a manner which makes it almost impossible for the Debtors to review in a meaningful fashion. Additionally, after being asked for months to produce an accounting of funds which passed through its accounts, Robinson Brog has drawn artificial distinctions between "debtor transactions" and "non-debtor transactions" and thus provided a meaningless "accounting" of the Debtors' escrow accounts, which fails to comply with the Accounting Order and the applicable New York Rules of Professional Conduct (the "Professional Rules"). In particular, the Accounting Order required Robinson Brog to turn over all accounting records to the Debtors, including all invoices sent to the Debtors and all payments received from the Debtors (the "Debtor Accounting Records"), from the escrow accounts that are within the possession, custody and control of Robinson Brog (the "Escrow Account"). *See Lazzara Declaration*, ¶ 7. Further, the Debtors issued a subpoena in relation to the Accounting Order (the "Subpoena") requiring Robinson Brog to turn over all documents and records relating to the Escrow Account held by Robinson Brog on behalf of the Non-Debtors (the "Non-Debtor Accounting Records" and, together with the Debtor Accounting Records, the "Accounting Records"). In purported compliance with the Accounting Order, Robinson Brog selectively reported only a fraction of the transactions which went through its accounts based on its bare assertion that those were the only "Debtor transactions." *See Letter to Judge Trust*, dated May 23, 2018 [D.I. 249]. As shown in

the Lazzara Declaration, however, any such distinction is of recent manufacture and is not in conformance with the course of dealing of the parties.    Additionally, the Lazzara Declaration establishes the following:

i.    In excess of $155.0 million in transactions occurred through the Escrow Account;

ii.    Robinson Brog reported to the Debtors' former senior management on a consolidated basis;

iii.    The Debtors' books and records indicate that at least for the year-end 2016 the Debtors reported almost all the escrow funds as Debtor funds;

iv.    Debtors paid the Robinson Brog's fees from the Escrow Account;

v.    The Debtors' operating expenses and debt service were paid from the Escrow Account;

vi.    A number of the transferees of the funds were vehicles through which the Debtors' former management allegedly committed fraud;

vii.    The email account to which Robinson Brog reported on the Escrow Account was an email account maintained by the Debtors on their servers; and

viii.    As of July 27, 2017, Robinson Brog reported to the Debtors' management that it had in excess of $16.0 million in the Escrow Account which has never been accounted for.

Based upon the Debtors' limited investigation to date, which has been hampered by Robinson Brog, it has become clear that the Debtors require full disclosure of *all* transactions that ran through the Escrow Account – whether Debtor or Non-Debtor – to fulfill their fiduciary duty to their creditors.    The Debtors also require an examination under oath of the Robinson Brog partners who have knowledge of these transactions.

The Debtors have a duty to their estates and creditors to investigate and analyze the current and historical financial condition and business operations.    The accounting of the Escrow Account produced by Robinson Brog fails to provide the Debtors sufficient information with respect to each of the transfers in the Escrow Account, which is critically important to the

ongoing investigation. *See Lazzara Declaration*, ¶ 53. It does not describe the client matters to which each payment relates or identify the purpose, recipient or source of such payment. *See Lazzara Declaration*, ¶ 53. Whether the Debtors are entitled to receive a full accounting from Robinson Brog under (i) section 542(e) of title 11 of the United States Code (the "Bankruptcy Code"), (ii) the Professional Rules, (iii) Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the (iv) *Order Authorizing the Debtors to Issue Subpoenas* [D.I. 163], or (v) the Accounting Order, it is clear that the Debtors are entitled to receive the requested information. In particular, Bankruptcy Rule 2004 permits a broad investigation into "any matter which may affect the administration of the debtor's estate." The transfer of millions of dollars through the accounts of a law firm that represented both Debtors and Non-Debtors clearly affects the administration of these estates. Robinson Brog should be ordered to make full disclosure and appear for examination under oath.

Further, section 542(e) of the Bankruptcy Code allows the Court to order a law firm to turn over all recorded information relating to a debtor's financial affairs. The Escrow Account was maintained by Robinson Brog on the Debtors' behalf during the course of its representation of the Debtors. As the Lazzara Declaration shows, the Debtors used the Escrow Account extensively to transfer funds. *See Lazzara Declaration*, ¶ 12. Thus, the Debtors require turnover of Robinson Brog's own accounting records maintained on behalf of the Debtors in order for the Debtors to conduct their investigation into their financial condition and business operations. Professional Rules 1.5 and 1.15(d) require Robinson Brog to keep complete records of all of the Debtors funds and deliver to the Debtors a complete summary of any and all of the Debtors' funds that passed through Robinson Brog's hands at any point in time. Yet, Robinson Brog provided only a small fraction of the transactions that went through the Escrow Account. This

Court unambiguously directed Robinson Brog to turn over an accounting and transactional history relating to the Escrow Account under the Accounting Order and it is clear that Robinson Brog has not made a good faith effort to comply with this Court's order and the applicable rules. With respect to an accounting of the Non-Debtor transactions, the Debtors have appropriately requested such information by serving the Subpoena on Robinson Brog. As discussed herein, Robinson Brog is not precluded from turning over such information on the basis of the attorney-client or Fifth Amendment privileges. Accordingly, the Debtors respectfully request that this Court grant the request for the turnover of a comprehensive accounting that reflects both Debtor and Non-Debtor transactions through the present.

## ARGUMENT

1.      The Debtors submit that there is a strong factual and legal bases upon which this Court should award the relief sought herein and require Robinson Brog to comply with the Accounting Order and Subpoena. Whether through Bankruptcy Rule 2004, section 542(e) of the Bankruptcy Code or Professional Rules 1.5 and 1.15, the Debtors are entitled to the turnover of the Accounting Records. The Accounting Records are crucial to ensuring that the Debtors are able to conduct a thorough and comprehensive investigation into all sources of result in a meaningful recovery for the Debtors' estates and creditors. An account through which in excess of $155.0 million passed seems like a good place to start. While the Debtors acknowledge that there are pending criminal cases against certain Non-Debtors, any privilege that they may assert does not otherwise preclude the production of documents. Thus, the Debtors respectfully request that this Court grant the relief requested herein as there are numerous bases for relief and Robinson Brog has not provided any legal justification for precluding such relief.

**A.      This Court has Numerous Legal Justifications, Including Bankruptcy Rule 2004, Section 542(e) of the Bankruptcy Code and Professional Rules 1.5 and 1.15, for Granting the Relief Sought Herein.**

2.      Bankruptcy Rule 2004 authorizes the bankruptcy court to order "the examination of any entity relating to the acts, conduct, property, liabilities or financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or the debtor's right to a discharge." *Motor Coach Indus., Inc. v. Drewes (In re Rosenberg)*, 303 B.R. 172, 175 (B.A.P. 8th Cir. 2004) (citing Fed. R. Bankr. P. 2004(a),(b)) (emphasis supplied). Moreover, the Court's broad equitable powers under section 105(a) of the Bankruptcy Code permit the fashioning of an order or decree in aid of the enhancement of the value of the Debtors' estates for the benefit of all stakeholders. Here, the Debtors are requesting among other things, financial records that fall squarely within the purpose of Bankruptcy Rule 2004.

3.      Also, section 542(e) allows the Court to order "an attorney, accountant or other person that holds recorded information . . . relating to the debtor's property or financial affairs" to turn over such information to the trustee. 11 U.S.C § 542(e); *see also In re Schick*, 215 B.R. 4, 8 (Bankr. S.D.N.Y. 1997) (directing the turnover of electronic information relating to the debtor pursuant to, *inter alia*, section 542(e)); *In re The Terraces Subdivision, L.L.C.,* No. A07–00048–DMD, 2007 WL 4287742 at *2 (Bankr. D. Alaska Dec. 5, 2007) (directing the turnover of electronic files pursuant to Section 542(e)). To secure turnover of recorded information under section 542(e), a debtor need only make an initial showing that the recorded information "relates to a debtor's property or financial affairs, which Courts interpret broadly." *See In re Crescent Resources, LLC*, 457 B.R. 506, 514-16 (Bankr. S.D. Tex. 2011). Pursuant to section 542(e) of the Bankruptcy Code, Robinson Brog has an affirmative obligation to turn over the entire accounting and transactional history of the Escrow Account.

4.     Further, under Professional Rules 1.5 and 1.15, a lawyer or law firm must follow strict bookkeeping requirements of all client funds entrusted to him or her, maintain complete records of all client funds, and render appropriate reports to the client regarding such funds.  NY ST RPC Rule 1.15 (McKinney).    Specifically, pursuant to Rule 1.15(d)(1)(ii), a lawyer must keep records showing the source of all funds deposited, names of all persons for whom funds are held for, description and amount of funds, and names of all persons to whom funds were disbursed, including an escrow account ledger.   NY ST RPC Rule 1.15 (McKinney); *see also Matter of Tems*, 238 A.D.2d 65, 67 (1997).   Further, upon request, an attorney is required to turn over or provide a proper accounting of the funds held on a client's behalf in its account.   *In re Babalola*, 139 A.D.3d 61, 65, 28 N.Y.S.3d 56, 59 (N.Y. App. Div. 2016) (suspending attorney in part because of failure to provide client with proper accounting of funds in IOLA account); *In re Brooks*, 271 A.D.2d 127, 129, 708 N.Y.S.2d 22, 24 (2000) (disbarring an attorney in part because of failure to provide a written accounting to a client when requested).

5.     The Professional Rules are enforceable by the Court, as they "are intended to protect the public of which clients are members and preserve the integrity of the system in which lawyers operate."  *Estate of Larry Shaw & Susan Shaw v. Marcus,* No. 7:14-CV-3849 (NSR), 2016 WL 4679734, at *3 (S.D.N.Y. Sept. 6, 2016); *see also In re Fisher*, 908 F. Supp. 2d 468, 472-73 (S.D.N.Y. 2012); *In re Emmerling*, 223 B.R. 860, 869 (B.A.P. 2d Cir. 1997) (same).  Pursuant to the Accounting Order, Robinson Brog must provide accountings to the Debtors in compliance with Professional Rules 1.5 and 1.15.   *See* Accounting Order, ¶ 1.   A party must make a reasonably diligent effort to comply with an order where the order is clear and unambiguous.   *In re Stockbridge Funding Corp.*, 158 B.R. 914, 917 (S.D.N.Y. 1993).

6.      Here, Robinson Brog failed to make a good faith effort to comply with its ethical and professional obligations under the Accounting Order by only providing a small portion of its accounting records.    Specifically, Robinson Brog only provided accounting information that detailed seventeen (17) transactions.    However, based on information obtained by FTI Consulting, Inc., the Debtors' financial advisors, Robinson Brog previously provided the Debtors' former senior management with an accounting that detailed in excess of one hundred (100) transactions.    The limited accounting information provided by Robinson Brog has made it virtually impossible for the Debtors to connect transfers to any particular transaction, identify the source of funds or link transactions to a particular client or matter.

7.      For the reasons detailed below, Robinson Brog cannot rely on attorney-client privilege or the Fifth Amendment to justify its lack of compliance with the Bankruptcy Rules, Bankruptcy Code, Professional Rules and this Court's orders to prevent turnover of the Accounting Records to the Debtors.

**B.      Robinson Brog has not Articulated the Privilege it Seeks to Protect, but Even if it Did, Robinson Brog Cannot Rely on Attorney-Client Privilege or the Fifth Amendment Privilege to Prevent Turnover of the Accounting Records.**

8.      Robinson Brog fails to clearly articulate the privilege it is attempting to protect on behalf of the Non-Debtors to justify its lack of compliance with the Accounting Order.    *See* Motion to Quash, ¶ 21.    Regardless, the Debtors are merely requesting accounting information of the Escrow Account that is maintained by and in the sole possession of Robinson Brog.    As such, any attempt to assert attorney-client privilege or the Fifth Amendment privilege on behalf of the Non-Debtors is erroneous and in bad faith because the Accounting Records do not qualify as the type of client communications that the privileges seek to protect.    Further, even if the Accounting Records fall within the purview of the Non-Debtors' records, the Accounting Records are still

not protected by the attorney-client privilege and Fifth Amendment privilege.    Thus, the Debtors are entitled to the turnover of Accounting Records that involve Non-Debtor transactions.

> 1.    *Robinson Brog May Not Rely on the Fifth Amendment Privilege to Prevent the Turnover of the Accounting Records.*

9.    Robinson Brog alludes to the argument that complying with the Accounting Order and producing the Accounting Records, that include transactions between Non-Debtors and Debtors, would infringe on the Non-Debtors' or possibly its own partners' Fifth Amendment privilege. *See Motion to Quash*, ¶ 21.    In particular, Robinson Brog maintains that "[i]n light of the Criminal Complaint, the SEC Proceeding and the Civil Forfeiture Complaint, the Non-Debtors' Fifth Amendment and act of production privileges are not merely theoretical exercises." *See id*. This argument is nonsensical, without merit and must fail for the reasons stated below.

10.    *First*, as a threshold matter, Robinson Brog cannot assert a Fifth Amendment privilege on behalf of the Non-Debtors.    It is well settled that law firms are not entitled to assert the Fifth Amendment privilege on behalf of their client.    *See In re Hunt*, 153 B.R. 445, 452 (Bankr. N.D. Tex. 1992) (stating that attorneys do not have standing to raise the Fifth Amendment privilege on behalf of their clients); *see also In re Fairbanks*, 135 B.R. 717, 721 (Bankr. D.N.H. 1991) (finding that a law firm is not entitled to assert the Fifth Amendment privilege in response to a Rule 2004 order).

11.    *Second*, corporations and unincorporated business entities are not afforded the privilege against self-incrimination.    *See Bellis v. United States*, 417 U.S. 85, 89-90 (1974) ("the privilege against compulsory self-incrimination should be limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.").    Instead, the act of production privilege, like the Fifth Amendment right against self-incrimination from which it derives, "is a purely personal one." *Id.* at 90 (holding

that no organization may utilize the personal privilege against compulsory self-incrimination); *see also Couch v. United States,* 409 U.S. 322, 328 (1973) (holding that the Fifth Amendment privilege is   a personal privilege that adheres to the person).    Thus, the Non-Debtor entities cannot preclude the turnover of the Accounting Records by asserting the privilege against self-incrimination.    Following the same reasoning, Robinson Brog cannot assert the privilege against self-incrimination to prevent the turnover of its own Accounting Records.    *See Bellis v. United States*, 417 U.S. 85 at 94   (stating that corporate records do not contain the requisite element of privacy or confidentiality essential for the privilege against compulsory self-incrimination to attach); *see also In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 73 (2d Cir. 1986) (holding that a law firm cannot assert Fifth Amendment privilege to protect subpoenaed financial records).    Since the Accounting Records must be kept by law in accordance with the New York Rules of Professional Conduct, Robinson Brog is "admitting" little in the way of control or authentication by producing them.    *Id.*

12.    *Third*, even if Robinson Brog succeeds in asserting the Fifth Amendment privilege on behalf of the Non-Debtors, the Non-Debtors may not assert their privilege to prevent Robinson Brog from turning over the Accounting Records because the Accounting Records are part of Robinson Brog's records and are solely controlled by Robinson Brog.    *See In re Standard Fin. Mgmt. Corp.*, 77 B.R. 324 (Bankr. D. Mass. 1987) (stating that Fifth Amendment is personal right not to testify and does not stretch to documents or items in hands of others).

13.    *Lastly*, to the extent partners at Robinson Brog assert the Fifth Amendment privilege, it is unclear whether Robinson Brog's asserted privilege goes to the actual incriminating content of the documents its seeking to prevent from disclosing, or to the act itself of producing the documents which may have some testimonial and communicative implication.

Under either scenario, the "act of production" privilege is not available. *United States v. Doe*, 465 U.S. 605, 610 (1984). The Fifth Amendment prohibits compelled self-incrimination. It is well-settled that, "[i]f the creation of documents or records is voluntary, the element of compulsion does not exist and, therefore, the contents of such documents or records are not privileged" under the Fifth Amendment. *Id.* Stated differently, the contents of the documents are not subject to a claim of privilege against compulsory self-incrimination. *Id.* at 610–11 (stating that the contents of documents and records not privileged under Fifth Amendment).

14.    Instead, the Fifth Amendment privilege protects only testimonial acts. *In re Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 794 (D. Colo. 1992). However, the existence of files or records is not incriminating of itself. *Id.* Insofar as Robinson Brog contends that the *mere act* of disclosing files or records may have communicative or testimonial significance and, thus, are privileged, this argument too fails. In bankruptcy matters, "[a]s a rule, the surrender of property of the estate is not testimonial, and hence, does not implicate Fifth Amendment concerns." *In re Schick,* 215 B.R. 4, 10 (Bankr. S.D.N.Y. 1997); *see also In re Ross,* 156 B.R. 272, 281 (Bankr. D. Idaho 1993) (same); *see also In re Krisle,* 54 B.R. 330, 340-41 (Bankr. D.S.D. 1985) (same); *In re Devereaux*, 48 B.R. 644, 646 (Bankr. S.D.Cal. 1985) (same); *In re Crabtree*, 39 B.R. 726, 732 (Bankr. E.D. Tenn. 1984) (same).

15.    More specifically, Robinson Brog cannot assert its Fifth Amendment privilege to prevent turnover of the Accounting Records related to the Escrow Account. The Escrow Account was a multi-purpose account used to fund and transfer funds to both Debtor and Non-Debtor entities that Robinson Brog maintained in the ordinary course of its operations. *See Lazzara Declaration*, ¶ 12. The Escrow Account has always contained commingled Non-Debtor and Debtor funds and Robinson Brog never maintained a distinction between Debtor and Non-

Debtor funds.  *See Lazzara Declaration*, ¶ 13.  Courts have held that law firms or lawyers of the law firm may not invoke the Fifth Amendment privilege against self-incrimination to justify a refusal to comply with an order requiring production of financial records.  *See Bellis v. United States*, 417 U.S. 85 at 100 (stating that no privilege can be claimed by the custodian of corporate records); *see also see also Matter of Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543, 547 (3d Cir. 1976); (holding that the Fifth Amendment privilege is not applicable to a law firm's records); *see also United States v. Kuta*, 518 F.2d 947, 952 (7th Cir. 1975); *see also Segmond v. United States*, 589 F. Supp. 568, 575 (S.D.N.Y. 1984) (stating that the records of a corporation, no matter how small the corporation, are not privileged).

16.     In sum, the Debtors are merely requesting the full Accounting Records for the Escrow Account that is in Robinson Brog's sole control.  Robinson Brog has not demonstrated how the production of the Accounting Records would implicate either the Non-Debtors or Robinson Brog's Fifth Amendment privilege.  Instead, Robinson Brog is attempting to prevent the Debtors' continued investigation into the misappropriation of the funds in the Escrow Account, the sham acquisitions of multiple entities and the fraudulent induced go-private merger transaction.  *See Lazzara Declaration*, ¶¶ 22, 26, 33.  Thus, the Debtors respectfully request that the Court direct Robinson Brog to fully comply with the Accounting Order and Subpoena by producing a complete and accurate accounting of the Escrow Account.

 *2.     Robinson Brog Cannot Rely on the Attorney-Client Privilege on Behalf of the Non-Debtors to Prevent Turnover of the Accounting Records.*

17.     Robinson Brog's claim that it has a duty to assert the attorney-client privilege to prevent turning over all Accounting Records relating to the Escrow Account is unavailing. [2]  *See Motion to Quash*, ¶ 21.  Robinson Brog mischaracterizes the attorney-client privilege by

---

[2]   The case cited by Robinson Brog in the Motion to Quash, *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011), does not stand for the proposition that lawyers have a duty to assert attorney-client privilege.

attempting to assert the privilege on behalf of the Non-Debtors to prevent the turnover of its own records.    Further, even if Robinson Brog can assert the attorney-client privilege on behalf of the Non-Debtors, the attorney-client privilege does not protect the turnover of the Accounting Records relating to the Escrow Funds.    Thus, to the extent that Robinson Brog asserts that the attorney-client privilege precludes turnover, that argument must necessarily fail.

18.      The application of the attorney-client privilege in this case is governed by federal common law.  FED. R. EVID. 501; *In re Enron Corp.*, 349 B.R. 115, 126 (Bankr. S.D.N.Y. 2006). Under federal common law, attorney-client privileged communications are (1) confidential communications, (2) made to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.    *In re Royce Homes, LP*, 449 B.R. 709 (Bankr. S.D. Tex. 2011).

19.      In general, blanket assertions of the attorney-client privilege are disfavored.    *In re Bame*, 251 B.R. 367, 372 (Bankr. D. Minn. 2000).  Courts have instead held that attorney-client privilege must be strictly confined "within the narrowest possible limits consistent with the logic of its principles because the privilege only obstructs the truth-finding process and provide benefits that are at best, indirect and speculative." *In re Grand Jury Matter*, 147 F.R.D. 82, 84 (E.D. Pa. 1992).    The mere existence of an attorney-client relationship does not raise a presumption of confidentiality.    *P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 53 (E.D.N.Y. 1991), *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992). Accordingly, the burden of proving confidentiality of communication rests on the party asserting the privilege.    *Id*.    A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted and provide evidence that communication was intended to be and remain confidential.    *In re*

*Hotels Nevada, LLC*, 458 B.R. 560, 575 (Bankr. D. Nev. 2011). The privilege will protect only those disclosures that are necessary to obtain informed legal advice which might not have been made absent the privilege, to support the purpose of encouraging full and frank communication between attorneys and their clients. *In re Grand Jury Matter*, 147 F.R.D. 82 at 84; s*ee also P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50 at 53 (communications from an attorney to his client are privileged if they are legally related and have an expectation of confidentiality); *see also Brannon v. BankTrust, Inc.*, 50 So. 3d 397, 407 (Ala. 2010) (stating that privilege only shields communications between a lawyer and client that are based on or may disclose, confidential information provided by the client or contain advice or opinions of the attorney); *see also Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76 (S.D.N.Y. 1986) (stating that the attorney-client privilege only applies when lawyer is acting as lawyer, that is, giving legal advice).

20.    On the other hand, the identity of a client or receipt of fees from a client do not fall within the attorney-client privilege. *F.T.C. v. Cambridge Exch., Ltd., Inc.*, 845 F. Supp. 872, 874 (S.D. Fla. 1993) (finding that documents reflecting amounts received by a law firm as payment for services rendered, including all checks, wire transfer records, and applications of retainers are not protected by the attorney-client privilege). Further, financial information related to a lawyer's representation of a client, including but not limited to, billing records, wire transfer documents, ledgers, bookkeeping documents and fee arrangements which do not reveal client communications are not protected by the attorney-client privilege. *Id*.; *see also In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 72 (2d Cir. 1986) (finding that financial information, including cancelled checks drawn on an escrow account of law firm, retainer agreements, invoices and receipts for disbursements, is not protected by attorney-client

privilege and is subject to production).   Thus, a law firm acting as its client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged.   *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987).

21.     Further, an attorney's work product privilege protects against the disclosure of his mental impressions, conclusions, opinions or legal theories. *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992). The party seeking discovery of the lawyer's "work-product" must establish adequate reasons to justify such production.

22.     It logically follows that the Accounting Records do not fall within the attorney's work product privilege.   The work product privilege certainly cannot protect any financial records from disclosure to the Debtors inasmuch as the Non-Debtors do not contend that any such documents were prepared in anticipation of litigation.

23.     Further, the Accounting Order only seeks a full summary of the transactional history of the Escrow Account to complete the investigation into the current and financial condition and business operations of the Debtors.   First, Robinson Brog has no basis for asserting attorney-client privilege on behalf of the Non-Debtors to protect financial records that are in Robinson Brog's control.[3]   The burden is on Robinson Brog to assert the privilege and Robinson Brog has failed to identify how the Accounting Records qualify as communications that would fall under attorney-client privilege, let along assert the specific communications and grounds supporting the privilege.   Robinson Brog in no way was communicating with the Non-Debtors for the purpose of providing legal advice or services in connection with maintaining and

---

[3]  To the extent that Robinson Brog is asserting attorney-client privilege on behalf of Parmjit Parmar ("Parmar") as a former officer, the argument fails.  Former officers of a corporation cannot assert a privilege to prevent disclosure of information to the corporation itself.  *See In re Southern Air Transport, Inc.*, 255 B.R. 706, 711 (Bankr. S.D. Oh. 2000) ("The Court agrees that a corporate fiduciary is precluded from asserting privileges to protect his own interests that are adverse to those of the corporation.").

controlling the Escrow Accounts.    Instead, Robinson Brog's only contention lies with the fact that requesting the Accounting Records would cause an undue burden and expense because complying with the Accounting Order would "require a page by page review of all documents maintained by Robinson Brog." *See Motion to Quash*, ¶ 21 n. 4.  This is nonsense because as the Lazzara Declaration demonstrates, Robinson Brog gave comprehensive escrow accountings on a regular basis to the Debtors' former senior management.  *See Lazzara Declaration*, ¶ 13. However, even if the statement were true, the time and expense for turnover has no bearing on the issue of whether the Accounting Records are privileged.   Thus, Robinson Brog provides no case law or evidence to support its argument and only makes a conclusory assertion of privilege.

**C.    The Debtors Provided Sufficient Notice to the Non-Debtors of the Accounting Order, and Even if the Non-Debtors Were Not Provided Sufficient Notice, Robinson Brog Does Not Have Standing To Object on Behalf of the Non-Debtors.**

24.     Lastly, Robinson Brog attempts to assert that the Debtors did not place certain Non-Debtors on notice of the Subpoena.    Parmar and the majority of the Non-Debtors are represented by Charles E. Simpson[4], from Windels Marx Lane & Mittendor, LLP, who has attended all of the hearings thus far in these chapter 11 cases and is fully informed of the Debtors request for the turnover of the Accounting Records.    Further, Robinson Brog has particular concerns that O'Rion HelpCorp. and Sankar Chivukula were not served the Subpoena.   O'Rion HelpCorp. is not Robinson Brog's client of which it could assert a privilege, and, thus, there will be no records to produce in which it could assert privilege.   Upon information and belief, O'Rion HelpCorp. was formed by Adam Greene, one of the attorneys at Robinson Brog, and Adam Greene is named as the registered agent for notice purposes.    *See* Lazzara Declaration, ¶ 43. Thus, to the extent O'Rion HelpCorp. is a real entity, it was properly noticed.    Also, upon

---

[4] On May 22, 2018, Charles E. Simpson filed a notice of appearance on behalf of eight (8) of the 15 Non-Debtors [D.I. 231].

information and belief, Sankar Chivukula and Ravi Chivukula are the same person and Robinson Brog does not assert that Ravi Chivukula received insufficient notice.

25.     Further, in any event, subpoena recipients cannot avoid the reach of a subpoena by arguing that the Debtors failed to provide prior notice to other parties. *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *5 (D. Mass. Nov. 13, 2013).   Instead, Robinson Brog must show prejudice it suffered for insufficient notice. *Id.*; *see also Steel Works Rebar Fabricators, LLC v. Alterra Am. Ins. Co.*, No. 11-24032-CIV, 2012 WL 1918704, at *2 (S.D. Fla. May 25, 2012) (refusing to quash subpoena for lack of notice to parties when party cannot demonstrate any prejudice suffered for lack of timely notice).   Thus, Robinson Brog cannot assert insufficient notice on behalf of the Non-Debtors as justification for not complying with the Accounting Order and Subpoena.

26.     Lastly, the Debtors are only requesting Accounting Records that are in the sole possession and control of Robinson Brog, and therefore, the subpoena issued pursuant to the Accounting Order did not need to be served on the Non-Debtors. *In re Kiobel*, No. 16 CIV. 7992 (AKH), 2017 WL 354183, at *3 (S.D.N.Y. Jan. 24, 2017) (finding that service of subpoena on law firm seeking client's documents was sufficient because the documents were housed in the law firm); *see also In re Grand Jury (Attorney-Client Privilege)*, 527 F.3d 200 at 202 (finding that service of a subpoena on attorney seeking the client's records was sufficient when the documents were in the attorney's possession).   Robinson Brog was provided adequate notice and opportunity to be heard at multiple hearings on this matter before this Court entered the Accounting Order, and therefore, must comply with the order  *See In re Fundamental Long Term Care, Inc.*, No. 8:11-BK-22258-MGW, 2012 WL 4815321, at *1 (Bankr. M.D. Fla. Oct. 9, 2012).

## NOTICE

27.     Notice of this Response shall be provided to:  (i) the Office of the United States Trustee for the Eastern District of New York; (ii) the United States Attorney for the Eastern District of New York; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) Alex Spiro, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, co-counsel to the Robinson Brog; (v) Marian C. Rice, Esq., L'Abbate, Balkan, Colvita & Contini LLP, co-counsel to Robinson Brog; (vi) counsel to Bank of America, N.A.; (vii) counsel to BMO Harris Bank, N.A.; (viii) counsel to Keybank National Association; (ix) counsel to Stifel Bank & Trust; (x) counsel to Woodforest National Bank; (xi) the Internal Revenue Service; and (xii) all other parties required to receive service under Rule 2002-2 of the Local Bankruptcy Rules for the Eastern District of New York. The Debtors submit that no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

**WHEREFORE,** the Debtors respectfully request that the Court (i) deny the Motion to Quash, (ii) order Robinson Brog to comply with the Subpoena and the Accounting Order; and (iii) grant such other and further relief as the Court may deem proper.

Dated:   June 4, 2018
         New York, New York

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Thomas R. Califano*
Thomas R. Califano (6144)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com

*Proposed Counsel to the Debtors and
Debtors in Possession*