Walter H. Curchack
Vadim J. Rubinstein
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Telephone: (212) 407-4861
Email: wcurchack@loeb.com

Jerome A. Miranowski
FAEGRE BAKER DANIELS LLP
90 S. 7th St., 2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: (612) 766-7000
Email: jerome.miranowski@faegrebd.com

*Counsel to Destra Targeted Income Unit Investment Trust and Constellation Health Group, LLC*

| In re: | Chapter 11 |
|---|---|
| Orion HealthCorp, Inc. | Case No. 18-71748 (AST) |
| Constellation Healthcare Technologies, Inc. | Case No. 18-71749 (AST) |
| NEMS Acquisition, LLC | Case No. 18-71750 (AST) |
| Northeast Medical Solutions, LLC | Case No. 18-71751 (AST) |
| NEMS West Virginia, LLC | Case No. 18-71752 (AST) |
| Physicians Practice Plus, LLC | Case No. 18-71753 (AST) |
| Physicians Practice Plus Holdings, LLC | Case No. 18-71754 (AST) |
| Medical Billing Services, Inc. | Case No. 18-71755 (AST) |
| Rand Medical Billing, Inc. | Case No. 18-71756 (AST) |
| RMI Physician Services Corporation | Case No. 18-71757 (AST) |
| Western Skies Practice Management, Inc. | Case No. 18-71758 (AST) |
| Integrated Physician Solutions, Inc. | Case No. 18-71759 (AST) |
| NYNM Acquisition, LLC | Case No. 18-71760 (AST) |
| Northstar FHA, LLC | Case No. 18-71761 (AST) |
| Northstar First Health, LLC | Case No. 18-71762 (AST) |
| Vachette Business Services, Ltd. | Case No. 18-71763 (AST) |
| MDRX Medical Billing, LLC | Case No. 18-71764 (AST) |
| Vega Medical Professionals, LLC | Case No. 18-71765 (AST) |
| Allegiance Consulting Associates, LLC | Case No. 18-71766 (AST) |
| Allegiance Billing & Consulting, LLC | Case No. 18-71767 (AST) |
| Phoenix Health, LLC, | Case No. 18-71789 (AST) |
| Debtors. | (Jointly Administered) |

**DESTRA TARGETED INCOME UNIT INVESTMENT TRUST'S OBJECTION
AND RESERVATION OF RIGHTS TO THE DISCLOSURE
STATEMENT FOR DEBTORS' JOINT PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Destra Targeted Income Unit Investment Trust ("Master Trust") objects to the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Joint Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Relating Relief* [D.I. 586] (the "Motion")[1] and states as follows:

1. The Master Trust believes that certain sections of the Disclosure Statement, specifically Section II(E)(ii)(h) entitled "Seized Funds" and Section III(M) entitled "Parmar Litigation", lack adequate information because those sections fail to adequately or accurately describe the relevant facts and circumstances.

2. The Master Trust has reached out to the Debtors in good faith regarding the Motion. The Debtors requested that the Master Trust provide redline edits showing proposed revisions to the Disclosure Statement, and the Master Trust did so. A true and correct copy of the redline edits provided by the Master Trust to the Debtors is attached as <u>Exhibit A</u>. The Master Trust has proposed some edits to the specific language of the Disclosure Statement and has also sought to preserve its right to assert different or supplemental facts in the context of these Chapter 11 Cases, including, without limitation, the Parmar Litigation and any mediation related thereto. The Master Trust has not yet received a response to its redline edits from the Debtors and therefore the Debtors and the Master Trust have not yet reached agreement on any

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed in the Motion and/or the Disclosure Statement, as applicable.

proposed edits. The Master Trust hopes that an agreement can be reached, but in the meantime, the Master Trust objects to the Motion.

WHEREFORE, for the foregoing reasons, the Master Trust request that this Court deny the Motion and grant such further relief as the Court deems just and equitable.

Dated: December 12, 2018

**LOEB & LOEB LLP**

By: /s/ Vadim J. Rubinstein
Walter H. Curchack
Vadim J. Rubinstein
345 Park Avenue
New York, NY 10154
Telephone: (212) 407-4861
Email: wcurchack@loeb.com
       vrubinstein@loeb.com

**FAEGRE BAKER DANIELS LLP**
Jerome A. Miranowski
90 S. 7th St., 2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: (612)-766-7000
Email: Jerome.miranowski@faegrebd.com

*COUNSEL FOR DESTRA TARGETED INCOME UNIT INVESTMENT TRUST*

# Exhibit A

*The Master Trust's proposed revisions to Disclosure Statement Section II(E)(ii)(h):*

**h. Seized Funds**

Certain of the proceeds of the Merger that were to be paid to Parmar or entities under his control are subject to dispute in the action styled *Destra Targeted Income Unit Investment Trust, on behalf of Unitholders, et al. v. Parmjit Singh Parmar (a.k.a. Paul Parmar), et al.*, Del. Ch. No. 13006-VCL (the "***Destra State Court Litigation***"), currently pending in the Delaware Court of Chancery (the "***Chancery Court***"). Specifically, on December 27, 2016, the plaintiffs in the Destra State Court Litigation filed a verified complaint in the Chancery Court seeking (i) a declaratory judgment as to the ownership of certain CHT shares and invalidating certain transfers of CHT shares and any actions taken by Parmar and the other defendants in the Destra State Court Litigation regarding the conveyance, transfer, or encumbrance of CHT's shares; (ii) asserting breaches of fiduciary duties and the aid and abetting thereof; (iii) asserting breaches of the "CH Group" and CHT operating agreements; and counts of fraudulent transfer, conversion, unjust enrichment, and civil conspiracy and fraud. See Verified Complaint, Del. Ch. No. 13006-VCL, [Docket No. 1].

By order dated January 25, 2017, the Chancery Court directed Parmar to deposit $55,267,485.28 of the cash proceeds from the Merger (the "***YCST Funds***")[22] in an escrow account at the law firm Young Conaway Stargatt & Taylor ("***YCST***").

Upon information and belief, on or about March 15, 2017, the FBI seized approximately $20,100,356.70 from Robinson Brog's IOLA, which upon information and belief, contained certain of the Merger proceeds that were to be paid to Parmar-controlled entities. On December 8, 2017, the FBI obtained a seizure warrant for the YCST Funds. At the request of the Chancery Court, the Sponsor filed a motion to lift the preliminary injunction as to the YCST Funds and to pay the administrative expenses of YCST. On March 16, 2018, the Chancery Court lifted the preliminary injunction <u>for the sole and exclusive purpose of permitting the YCST funds to be seized by the federal government in accordance with the pending seizure warrant</u>. As discussed below, the YCST Funds are now the subject of a motion for a temporary restraining order/preliminary injunction imposed by the Bankruptcy Court filed by the Debtors in connection with the Parmar Litigation (as defined below) pending before the Bankruptcy Court.

---

[22] Upon information and belief, the YCST Funds were amounts intended for the benefit of Parmar for the equity in CHT-related entities controlled by Parmar: Blue Mountain Healthcare, LLC ($49,918,984.28) and Alpha Cepheus ($5,348,501)~~, and represented the maximum amount of damages the plaintiffs in the Parmar Litigation believed they were entitled to as a result of the Merger transaction~~.

*The Master Trust's proposed revisions to Disclosure Statement Section III.M:*

**M. Parmar Litigation.**

On April 4, 2018, the Initial Debtors commenced an adversary proceeding captioned *Orion Healthcorp, Inc., et al. vs. Parmer, et al.*, [Case No. 18-080853-AST] (the "***Parmar Litigation***"). On April 9, 2018, the Debtors filed an *Emergency Ex Parte Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 7065* [Docket No. 5] (the "***TRO Motion***") whereby the Debtors sought a restraining order and injunction prohibiting the disbursement of the YCST Funds, as the Initial Debtors alleged that the YCST Funds constituted property of the Debtors' Estates or were otherwise subject to the Debtors' constructive trust and other claims.

At the present time, YCST has agreed not to disburse the YCST Funds until further court order ~~of the Bankruptcy Court~~. Further, pursuant to a stipulation and order dated August 13, 2018, the United States of America ("***USA***") has agreed, among other things, that it will "(i) maintain the status quo with respect to the [YCST] Funds, and take no steps to seize same in connection with any criminal or civil proceeding; and (ii) any discovery between the Debtors and the USA shall be, and hereby is, stayed, and the Debtors shall not seek any discovery from the USA during the period the stay is in place." Such stipulation can be terminated by either side, without further order of the Bankruptcy Court, upon twenty (20) days' advance written notice. [Docket No. 80]. On November 12, 2018, the Destra Parties (defined below) and the Debtors entered into a stipulation pursuant to which the Destra Parties have agreed, among other things, that they (i) "will not seek relief with respect to, and will take no steps to seek distribution of the [YCST] Funds in the Destra [State Court] Litigation or any other proceeding; and (ii) discovery between and among the Parties shall be, and hereby is, stayed." Such stipulation can be terminated by either side, without further order of the Bankruptcy Court, upon twenty (20) days' advance written notice. [Docket No. 154]. This Stipulation with the Destra Parties is pending approval by the Bankruptcy Court.

On June 4, 2018, the Initial Debtors filed their *First Amended Complaint* [Docket No. 24] (the "***Amended Complaint***") in the Parmar Litigation. The Amended Complaint seeks to recover funds and other identified properties and asserts damages arising out of the same constructive and actual fraudulent transfers detailed in the Noteholder Complaint. The primary difference between the Noteholder Litigation and the Parmar Litigation is that the Amended Complaint in the Parmar Litigation seeks recoveries from Parmar, his affiliated entities and certain other insiders who conspired with Parmar to commit the fraudulent and wrongful acts (collectively as identified in the Amended Complaint, the "***Insider Defendants***"). The Insider Defendants include Parmar, Chivukula, Zaharis, Bakhshi, and several legal entities formed, controlled and held for the benefit of Parmar (the "***Parmar Shareholder Entities***"). The Amended Complaint also asserts claims, including injunctive and declaratory relief, against defendants Destra Targeted Income Unit Investment Trust (the "***Destra Trust***"), Constellation Health Group LLC ("***CHGLLC***"), Blue Cross Blue Shield of South Carolina ("***BCBS***") and the Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, solely in his capacity as Receiver of Freestone Insurance Company in Liquidation (the "***Receiver***" and with the Destra Trust and the BCBS, the "***Destra Parties***") as the Destra Parties have claimed a competing interest in the YCST Funds and certain of the other Parmar-related proceeds and properties which are the subject of the Debtors'

Case 8-18-71748-ast    Doc 610    Filed 12/12/18    Entered 12/12/18 17:23:25

fraudulent transfer claims (collectively, the "~~Fraudulently~~ *Transferred Property*"). The Amended Complaint also asserts claims, including injunctive and declaratory relief, against defendants CC Capital Holdco LLC and CHT Holdco LLC (together, the "*CC Capital Parties*"), and the USA as the CC Capital Parties and USA have also claimed a competing interest in the ~~Fraudulently~~ Transferred Property.

Pursuant to the Amended Complaint, the Initial Debtors have asserted that the ~~Fraudulently~~ Transferred Property constitutes property of the Debtors' estates and is otherwise recoverable by the Initial Debtors' estates pursuant to various causes of action set forth in detail therein.

In connection with the filing of the Amended Complaint, the Initial Debtors also filed a motion [Docket No. 26] seeking an order of attachment (the "*Attachment Order*") against, and injunctive relief with respect to, any ~~Fraudulently~~ Transferred Property identified by the Debtors, including four (4) real property assets located in New York and New Jersey, which the Debtors believe are collectively worth more than $40 million, owned by Parmar and certain related parties and entities named as Insider Defendants. Pursuant to the Amended Complaint, the Initial Debtors have alleged that each of the real property assets was purchased with the proceeds of fraudulent transfers and are recoverable by the Initial Debtors. The Initial Debtors sought the Attachment Order because the proceeds used to purchase such properties are directly traceable to the Debtors' Merger Proceeds or other funds and the Debtors want to make sure that such real property assets are available to satisfy any judgments the Debtors' obtain against, among others, Parmar. The Bankruptcy Court entered the Attachment Order on July 3, 2018, as modified on August 10, 2018 [Docket Nos. 46, 47 and 74].

On July 10, 2018, Parmar filed his answer to the Amended Complaint [Docket No. 51] and asserted crossclaims against the CC Capital Parties. On July 30, 2018, the CC Capital Parties filed a motion to dismiss the cross claims [Docket No. 68] (the "*CC Capital Motion to Dismiss*"). On August 13, 2018, Parmar filed his objection to the CC Capital Motion to Dismiss [Docket No. 76]. On October 17, 2018, the Bankruptcy Court heard oral arguments on the CC Capital Motion to Dismiss. At the conclusion of the hearing, the Bankruptcy Court indicated that it would enter an order converting the CC Capital Motion to Dismiss into a summary judgment motion and set a briefing schedule for such motion.

On July 20, 2018, Defendant Bakhshi filed a motion to dismiss [Docket No. 59] the complaint as it related to him. On August 24, 2018, the Debtors filed an opposition to the motion to dismiss [Docket No. 112]. On September 11, 2018, Bakhshi filed his reply memorandum of law in further support of his motion to dismiss [Docket No. 126]. The Bankruptcy Court has not ruled on Bakhshi's motion to dismiss.

On August 15, 2018, each of the Destra Parties filed motions to dismiss [Docket Nos. 86, 92 and 95] (collectively, the "*Destra Motions to Dismiss*"). On September 24, 2018, the Debtors filed their omnibus response to the Destra Motions to Dismiss [Docket No. 131]. On October 3, 2018, each of the Destra Parties filed their reply memorandum in further support of the Destra Motions to Dismiss [Docket Nos. 135, 136 and 138]. Also, on October 3, 2019, the Debtors filed their omnibus reply memorandum of law in further support of their TRO Motion. [Docket No. 137]. On

17184021.1
214863-10008

October 17, 2018, the Bankruptcy Court heard oral arguments on the Destra Motions to Dismiss and the TRO Motion and ~~took them under advisement~~ marked each of the matters as submitted.

On August 30, 2018, Destra filed a motion to compel mediation [Docket No. 118] (the "*Mediation Motion*"). On September 7, 2018, the Debtors filed their objection to the Mediation Motion [Docket No. 124]. On September 13, 2018 the Bankruptcy Court held a hearing on the Mediation Motion, at which time it took the Mediation Motion under advisement.

After considering the Destra Motions to Dismiss and the TRO Motion, the Bankruptcy Court determined that the parties could benefit from mediation and directed the parties to confer and submit a form of order granting the relief sought in the Mediation Motion and sending certain of the key parties to non-binding mediation. At the present time, the ~~parties~~ Bankruptcy Court ~~are in negotiations regarding the selection of an acceptable mediator and submission of an appropriate~~ entered a mediation order ~~to the Bankruptcy Court. It is anticipated that~~ and the mediation ~~will~~ is scheduled to occur in mid-January 2019.[1]

---

[1] Certain parties (including the Destra Trust) assert that the Disclosure Statement lacks adequate information regarding the Destra State Court Litigation and the YCST Funds because it fails to adequately or accurately describe the facts and circumstances related thereto. The rights of all parties are fully preserved to assert different or supplemental facts regarding the Destra State Court Litigation and/or the YCST Funds in the context of these Chapter 11 Cases, including, without limitation, the Parmar Litigation and any mediation related thereto.