## **Exhibit A**

Blackline Comparison of the Second Amended Disclosure Statement to the
Third Amended Disclosure Statement

Thomas R. Califano, Esq.
Rachel Nanes, Esq. (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:   thomas.califano@dlapiper.com
           rachel.nanes@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | x | (Jointly Administered) |

-------------------------------------------------------------------------

**DEBTORS' ~~SECOND~~THIRD AMENDED JOINT PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated:  ~~December 27~~January 6, ~~2018~~2019

# TABLE OF CONTENTS

**Page**

SECTION 1.    DEFINITIONS AND INTERPRETATION    2
    1.1    Definitions    2
    1.2    Interpretation, Application of Definitions and Rules of Construction    13
    1.3    Computation of Time    14

SECTION 2.    ADMINISTRATIVE AND PRIORITY CLAIMS    14
    2.1    Administrative Expense Claims    14
    2.2    Accrued Professional Compensation Claims    14
    2.3    Priority Tax Claims    15

SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS    15
    3.1    Classified Claims Against and Interests in the Debtors    15
    3.2    CHT    16
    3.3    Orion    16
    3.4    Northeast Medical Solutions    17
    3.5    NEMS West Virginia    17
    3.6    Physicians Practice Plus    18
    3.7    Medical Billing Services    18
    3.8    Rand Medical Billing    19
    3.9    RMI Physician Services    19
    3.10    Western Skies Practice Management    20
    3.11    Integrated Physician Solutions    20
    3.12    Northstar First Health    21
    3.13    Vachette Business Services    21
    3.14    Allegiance Consulting Associates    22
    3.15    Allegiance Billing & Consulting    22
    3.16    NYNM Management    23

SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS    23
    4.1    General    23

SECTION 5.    ACCEPTANCE OR REJECTION OF THE PLAN    26
    5.1    Holders of Claims and Interests Entitled to Vote    26
    5.2    Classes Deemed to Reject    26
    5.3    Classes Deemed to Accept    27
    5.4    Acceptance by a Class    27
    5.5    Cramdown Under Section 1129(b) of the Bankruptcy Code    27
    5.6    Ballots    27

**TABLE OF CONTENTS**
(continued)

**Page**

SECTION 6.    MEANS FOR IMPLEMENTATION ..................................... 2827

    6.1    Compromise Regarding Deemed Consolidation .................. 2827
    6.2    Initial Secured Lender Distribution ............................... 28
    6.3    Liquidating Trust ...................................................... 28
    6.4    The Shell Debtors ..................................................... 32

SECTION 7.    DISTRIBUTIONS ................................................... 32

    7.1    Distribution Record Date ............................................ 32
    7.2    Date of Distributions ................................................. 32
    7.3    Disbursing Agent ..................................................... 33
    7.4    Rights and Powers of Disbursing Agent ........................ 33
    7.5    Delivery of Distributions in General ............................. 33
    7.6    Payments and Distributions on Disputed Claims ............. 33
    7.7    Manner of Payment .................................................. 3433
    7.8    Undeliverable Distributions and Unclaimed Property ........ 34
    7.9    Withholding and Reporting Requirements ...................... 34
    7.10   Surrender Instruments ............................................... 34
    7.11   Setoffs .................................................................. 34
    7.12   Insurance Claims ...................................................... 34
    7.13   Applicability of Insurance Policies ............................... 35
    7.14   No Post-petition Interest ............................................ 35
    7.15   Distributions Free and Clear ...................................... 35
    7.16   Fractional Dollars; De Minimis Distributions ................. 35

SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS ......................... 3635

    8.1    Allowance of Claims and Interests .............................. 3635
    8.2    Objections to Claims ................................................ 36
    8.3    Estimation of Claims ................................................ 36
    8.4    No Distribution Pending Allowance .............................. 36
    8.5    Distributions After Allowance ..................................... 36
    8.6    Preservations of Rights to Settle Claims ...................... 3736
    8.7    Disallowed Claims ................................................... 37

SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....... 37

    9.1    Assumption and Rejection of Executory Contracts and Unexpired Leases .... 37
    9.2    Inclusiveness .......................................................... 37
    9.3    Rejection Claims ...................................................... 37
    9.4    Full Release and Satisfaction ..................................... 38

# TABLE OF CONTENTS
(continued)

**Page**

9.5    Reservation of Rights    38

SECTION 10.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE    38

10.1    Conditions Precedent to Confirmation    38
10.2    Conditions Precedent to the Effective Date    ~~39~~38
10.3    Effect of Failure of Conditions    39

SECTION 11.    EFFECT OF CONFIRMATION    39

11.1    Immediate Binding Effect    39
11.2    Compromise and Settlement of Claims, Interests and Controversies    39
11.3    Releases by the Debtors    39
11.4    Releases by Holders of Claims    40
11.5    Exculpation    41
11.6    Injunction    41
11.7    Term of Injunctions or Stays    42
11.8    Injunction Against Interference with Plan    42
11.9    Release of Liens    42
11.10    Effectuating Documents and Further Transactions    42
11.11    Corporate Action    ~~43~~42
11.12    Cancellation of Documents    43
11.13    Dissolution of the Debtors    43
11.14    Preservation of Causes of Action    43
11.15    Preservation of Rights Under Bankruptcy Rule 2004    ~~44~~43

SECTION 12.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN    44

12.1    Modification and Amendments    44
12.2    Effect of Confirmation on Modifications    44
12.3    Revocation or Withdrawal of this Plan    44

SECTION 13.    RETENTION OF JURISDICTION    44

SECTION 14.    MISCELLANEOUS PROVISIONS    46

14.1    Payment of Statutory Fees    46
14.2    Dissolution of Committee    46
14.3    Section 1125(e) Good Faith Compliance    46
14.4    Substantial Consummation    ~~47~~46
14.5    Section 1146 Exemption    ~~47~~46
14.6    Closing of the Chapter 11 Cases    47
14.7    Plan Supplement    47
14.8    Further Assurances    47

## TABLE OF CONTENTS
(continued)

**Page**

| 14.9 | Exhibits Incorporated | 47 |
| 14.10 | Inconsistency | 47 |
| 14.11 | No Admissions | 47 |
| 14.12 | Reservation of Rights | ~~48~~47 |
| 14.13 | Successors and Assigns | 48 |
| 14.14 | Entire Agreement | 48 |
| 14.15 | Notices | 48 |
| 14.16 | Severability | 48 |
| 14.17 | Governing Law | 49 |
| 14.18 | Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b) | 49 |

-

## INTRODUCTION

On March 16, 2018 (the "***Petition Date***"), Orion HealthCorp, Inc. ("***Orion***"), Constellation Healthcare Technologies, Inc. ("***CHT***"), NEMS Acquisition, LLC ("***NEMS Acquisition***"), Northeast Medical Solutions, LLC ("***Northeast Medical Solutions***"), NEMS West Virginia, LLC ("***NEMS West Virginia***"), Physicians Practice Plus, LLC ("***Physicians Practice Plus***"), Physicians Practice Plus Holdings, LLC ("***Physicians Practice Plus Holdings***"), Medical Billing Services, Inc. ("***Medical Billing Services***"), Rand Medical Billing, Inc. ("***Rand Medical Billing***"), RMI Physician Services Corporation ("***RMI Physician Services***"), Western Skies Practice Management, Inc. ("***Western Skies Practice Management***"), Integrated Physician Solutions, Inc. ("***Integrated Physician Solutions***"), NYNM Acquisition, LLC ("***NYNM Acquisition***"), Northstar FHA, LLC ("***Northstar FHA***"), Northstar First Health, LLC ("***Northstar First Health***"), Vachette Business Services, Ltd. ("***Vachette Business Services***"), MDRX Medical Billing, LLC ("***MDRX***"), Vega Medical Professionals, LLC ("***Vega Medical Professionals***"), Allegiance Consulting Associates, LLC ("***Allegiance Consulting Associates***"), Allegiance Billing & Consulting, LLC ("***Allegiance Billing & Consulting***"), and Phoenix Health, LLC ("***Phoenix Health***," and collectively with Orion, CHT, NEMS Acquisition, Northeast Medical Solutions, NEMS West Virginia, Physicians Practice Plus, Physicians Practice Plus Holdings, Medical Billing Services, Rand Medical Billing, RMI Physician Services, Western Skies Practice Management, Integrated Physician Solutions, NYNM Acquisition, Northstar FHA, Northstar First Health, Vachette Business Services, MDRX, Vega Medical Professionals, Allegiance Consulting Associates and Allegiance Billing & Consulting, the "***Initial Debtors***") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Eastern District of New York (the "***Bankruptcy Court***"). On July 5, 2018 (the "***NYNM Petition Date***"), New York Network Management, L.L.C. ("***NYNM Management***" and together with the Initial Debtors, the "***Debtors***"), an affiliate of the Initial Debtors, commenced a chapter 11 case (together with the chapter 11 cases of the Initial Debtors, the "***Chapter 11 Cases***") by filing with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered.

The Debtors propose this ~~Second~~Third *Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (as it may be further amended, modified, or supplemented from time to time, together with any and all exhibits and schedules attached hereto or referenced herein, this "***Plan***") for the resolution and satisfaction of all Claims against and Interests in the Debtors.

Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. Reference is made to the Disclosure Statement for a discussion of the Debtors' history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

# SECTION 1.   DEFINITIONS AND INTERPRETATION

### 1.1   *Definitions*.

The following terms used herein shall have the respective meanings below:

*Accrued Professional Compensation* means, at any given time, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, investment banking, and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Cases, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid.

*Administrative Agent* means Bank of America, N.A., as administrative agent under the Prepetition Credit Agreement.

*Administrative Expense Claim* means any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date or NYNM Petition Date, as applicable, and through the Effective Date of preserving the Debtors' Estates and operating the businesses of the Debtors; (b) compensation for Accrued Professional Compensation; (c) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

*Administrative Expense Claims Bar Date* means sixty (60) days after the Effective Date or such other date ordered by the Bankruptcy Court.

*Allegiance Billing & Consulting* shall have the meaning set forth in the Introduction.

*Allegiance Consulting Associates* shall have the meaning set forth in the Introduction.

*Allowed* means, with reference to any Claim against the Debtors, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or Liquidating Trustee or (c) pursuant to the terms of this Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), neither the Debtors nor the Liquidating Trustee waives any rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in

(a) the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced, or (b) the Bankruptcy Court or any other court that has venue and jurisdiction pursuant to 28 U.S.C. §§ 157 and 1409.    An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law.    Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date or NYNM Petition Date, as applicable.

**Allowed Secured Lender Claim** means the Allowed Secured Claim of the Secured Lenders pursuant to this Plan in the amount of Fifty Million Dollars ($50,000,000.00).

**Allowed Secured Lender Deficiency Claim** means the Allowed Deficiency Claim of the Secured Lenders pursuant to this Plan in the amount of One Hundred and Seven Million Six Hundred Twelve Thousand Three Hundred Forty-Two Dollars and Seventy Four Cents ($107,612,342.74).

**Assets** means all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Debtors' Estates pursuant to Bankruptcy Code section 541, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

**Assigned Causes of Action** means any and all Causes of Action assigned to the Liquidating Trust by any Person pursuant to this Plan.

**Avoidance Actions** means claims or causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or the Uniform Voidable Transfer Act (including any similar laws of each of the foregoing enacted by any state, commonwealth or territory of the United States), and any law of similar effect, whether or not litigation is commenced to prosecute such claims or causes of action.

**Ballot** means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

**Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to these Chapter 11 Cases.

**Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Cases.

***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases.

***Beneficiary Tax Information*** shall have the meaning set forth in section 6.3(d).

***Beneficiary Tax Reserve*** shall have the meaning set forth in section 6.3(d).

***Beneficiaries*** means the Holders of each of the Allowed Secured Lender Claim, Allowed Secured Lender Deficiency Claim, Allowed General Unsecured Claims and Allowed Subordinated Claims against the Debtors' Estates as beneficiaries of the Liquidating Trust, as set forth in this Plan and the Liquidating Trust Agreement.

***Beneficiary Tax Information*** shall have the meaning set forth in section 6.3(e).

***Beneficiary Tax Reserve*** shall have the meaning set forth in section 6.3(e).

***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in New York, New York.

***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

***Cash Collateral Stipulations*** means those stipulations agreed to among the Debtors, the Secured Lenders and the Committee providing for the Debtors' continued use of the Secured Lenders' Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) during the Chapter 11 Cases.

***Causes of Action*** means any claim (other than the Claims against the Debtors), cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and/or franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes without limitation:  (a) any right of setoff, counterclaim, or recoupment and/or any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.  The term "Causes of Action" shall include, without limitation, those actions and claims described in the Plan Supplement.

***Chapter 11 Case*** means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code; and (b) when used with reference to all Debtors, the procedurally consolidated Chapter 11 Cases pending for the Debtors in the Bankruptcy Court under case number 18-71748-AST.

*CHT* shall have the meaning set forth in the Introduction.

*Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

*Class* means a class or category of Claims as classified and described in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

*Collateral* means any property or interest in property of the Estates that any party asserts is subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases by the United States Trustee on April 4, 2018 with respect to the Initial Debtors' Chapter 11 Cases, and on July 26, 2018 with respect to NYNM Management's Chapter 11 Case, pursuant to section 1102 of the Bankruptcy Code.

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in each of the Debtors' Chapter 11 Cases.

*Confirmation Hearing* means the hearing on confirmation of this Plan pursuant to Bankruptcy Code section 1129.

*Confirmation Order* means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code.

*Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against any of the Debtors.

*Creditor* means a Holder of a Claim.

*Cure* means the payment of Cash by the Debtors or the Liquidating Trustee, as applicable, as necessary and required under the Bankruptcy Code to (i) cure a default by a Debtor in accordance with the terms of an Executory Contract or Unexpired Lease of a Debtor, and (ii) permit that Debtor to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

*Debtor Released Claims* shall have the meaning set forth in section ~~11.4~~11.3.

*Debtors* shall have the meaning set forth in the Introduction.

*Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

**Deficiency Claim** means, to the extent the value of any property securing a Claim is less than the amount of such Claim, the difference between such value and such Claim.

**DIP Loan** means that senior secured postpetition financing consisting of a revolving credit facility in the principal amount of up to Seven Million Five Hundred Thousand ($7,500,000.00) provided to the Initial Debtors in accordance with the Superpriority Secured Debtor-In-Possession Credit Agreement among (a) Orion, as borrower; (b) the other Initial Debtors, as guarantors thereto; (c) NYNM Management, Network Management Insurance Brokerage Services LLC, New York Network IPA, Inc., New York Premier IPA, Inc., Brooklyn Medical Systems IPA 3, Inc., Brooklyn Medical Systems IPA 4, Inc., and Brooklyn Medical Systems IPA 5, Inc.; (d) Bank of America, N.A. as administrative agent, and (e) the lenders from time to time party thereto.

**Disallowed Claim** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

**Disbursing Agent** shall have the meaning set forth in section 7.3.

**Disclosure Statement** means the ~~Second~~Third Amended Disclosure Statement for the Debtors' ~~Second~~Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated ~~December 27~~January 6, ~~2018~~2019, as the same may be altered, modified, or amended.

**Disputed Claim** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline:  (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which a Debtor, the Liquidating Trustee, or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline:  (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors, the Liquidating Trustee, or any other party in interest which has not been withdrawn or determined by a Final Order.

**Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**Distribution Record Date** means five (5) Business Days prior to the Confirmation Date or any subsequent date established by the Liquidating Trustee upon notice to all Holders of Claims or Interests that may receive a Distribution from the Liquidating Trust.

**Effective Date** means the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10 of this Plan have been either satisfied or waived.

**Estates** means the estate created in each Debtor's Chapter 11 Case containing all Assets of the Debtor pursuant to Bankruptcy Code section 541.

**Excess Liquidating Trust Distributable Cash** means the Liquidating Trust Distributable Cash and any other assets of the Liquidating Trust reduced to Cash net of (i) all expenses and costs of operating or effectuating the duties of the Liquidating Trust as determined by the Liquidating Trustee with the approval of the Liquidating Trust Oversight Board as set forth in the Liquidating Trust Agreement; (ii) any reserves as the Liquidating Trustee may determine are necessary with the approval of the Liquidating Trust Oversight Board as set forth in the Liquidating Trust Agreement; and (iii) payment in full of the Allowed Secured Lender Claim, Allowed Secured Lender Deficiency Claim and the Allowed General Unsecured Claims as set forth in this Plan.

**Exculpated Claim** means any claim related to any act or omission by an Exculpated Party in connection with, relating to or arising out of (i) the Chapter 11 Cases, (ii) the negotiation or consummation of the Sales, (iii) the negotiation, administration or consummation of the DIP Loan or Cash Collateral Stipulations in the Chapter 11 Cases, (iv) the post-petition formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, (v) the filing of the Chapter 11 Cases, (vi) the pursuit of confirmation of this Plan, including, without limitation, any compromise or settlement under Bankruptcy Rule 9019, (vii) the administration and implementation of this Plan, or (vii) the Distribution of property under this Plan and/or any other related agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct to the extent imposed by applicable non-bankruptcy law. No Cause of Action, obligation or liability expressly preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

**Exculpated Party** means each of: (i) the ~~Debtor's~~Debtors' professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including DLA Piper LLP (US), FTI Consulting, Inc., Houlihan Lokey Capital, Inc., Hahn & Hessen LLP, Epiq Bankruptcy Solutions, LLC and any Related Person to such professionals; (ii) the members of the Committee in their capacity as such and the Committee's professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including Pachulski Stang Ziehl & Jones LLP and CBIZ MHM, LLC and any Related Persons to such professionals; (iii) the Administrative Agent and the Secured Lenders solely in their capacity as creditors and parties in interest in these Chapter 11 Cases, Moore & Van Allen, PLLC, Reed Smith LLP, Chapman and Cutler LLP and Carl Marks Advisors and any of the Related Persons to such Secured Lenders, including attorneys and financial advisors solely in their capacity as advisors, creditors and parties

in interest in these Chapter 11 Cases; (iv) the Liquidating Trustee, any professionals retained by the Liquidating Trustee and any Related Person to the Liquidating Trustee or such professionals, (v) the Liquidating Trust, any professionals retained by the Liquidating Trust and any Related Person to the Liquidating Trust or such professionals, (vi) the Liquidating Trust Oversight Board and the members thereof, solely in their capacity as such and any professionals retained by the Liquidating Trust Oversight Board; (vii) Robert Rosenberg, solely in his capacity as the independent board member of ~~CHT~~the Debtors; and (viii) Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara in their capacities as officers and managers of the Debtors.  Any current or former Insider of any of the Debtors and any of their Related Persons, except Robert Rosenberg, Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara, shall not have the benefit of the exculpation or releases granted pursuant to this Plan or the Confirmation Order.

**Executory Contract** means a contract to which one or more of the Debtors is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

**Final DIP Order** means that *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [D.I. 159], which approved, among other things, the DIP Loan.

**Final Order** means an order or judgment of a court entered by the clerk of the court on the docket of a case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that a motion under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

**General Unsecured Claim** means any Claim asserted against any Debtor which is not included within the other specifically defined Classes hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**HealthTek APA** means that certain Asset Purchase Agreement, dated as of July 5, 2018, between NYNM Management and HealthTek Solutions, LLC.

**Holder** means the legal or beneficial holder of a Claim or Interest.

*Impaired* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

*Initial Debtors* shall have the meaning set forth in the Introduction.

*Initial Liquidating Trust Distributions* shall have the meaning set forth in section 6.2.

*Insider* shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

*Insurance Policies* means, collectively, all of the Debtors' insurance policies.

*Integrated Physician Solutions* shall have the meaning set forth in the Introduction.

*Intercompany Claims* shall have the meaning set forth in section 3.1.

*Interest* means the interest of any Holder in an equity security of any Debtor, within the meaning of Bankruptcy Code section 101(16) represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor.

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Liquidating Trust* means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

*Liquidating Trust Agreement* means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Liquidating Trust, as such agreement may be subsequently amended, supplemented or otherwise modified from time to time in accordance with the terms thereof.

*Liquidating Trust Assets* means the assets held in the Liquidating Trust comprised of (i) the Net Sale Proceeds; (ii) the Liquidating Trust Reserve; (iii) all of the Debtors' books and records; (iv) all Causes of Action of the Debtors, except those expressly waived herein, (v) all Assigned Causes of Action; and (vi) all other unencumbered Assets of the Debtors' Estates remaining after all required payments have been made pursuant to the Plan, Confirmation Order and Liquidating Trust Agreement, as applicable, on the Effective Date.

*Liquidating Trust Distributable Cash* means the Liquidating Trust Cash and any other Assets of the Liquidating Trust reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Liquidating Trust and establishing any reserves as the Liquidating Trustee may determine is necessary with the consent of the Liquidating Trust Oversight Board pursuant to the terms of this Plan and the Liquidating Trust Agreement.

**_Liquidating Trust Oversight Board_** shall have the meaning set forth in section ~~6.2~~6.3(~~c~~d) herein.

**_Liquidating Trust Professionals_** shall have the meaning set forth in section ~~6.2~~6.3(b).

**_Liquidating Trust Reserve_** means an amount sufficient to fund the accrued and estimated expenses and costs of operating or effectuating the duties of the Liquidating Trust, as may be incurred from time to time by the Liquidating Trustee and approved by the Liquidating Trust Oversight Board pursuant to the Liquidating Trust Agreement.

**_Liquidating Trustee_** means the individual or entity designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust.

**_MDRX_** shall have the meaning set forth in the Introduction.

**_Medical Billing Services_** shall have the meaning set forth in the Introduction.

**_MTBC APA_** means that certain Asset Purchase Agreement, dated as of June 25, 2018, between certain of the Debtors and Medical Transcription Billing, Corp.

**_NEMS Acquisition_** shall have the meaning set forth in the Introduction.

**_NEMS West Virginia_** shall have the meaning set forth in the Introduction.

**_Net Sale Proceeds_** means the gross proceeds of the Sales, net of (i) the Liquidating Trust Reserve; (ii) 125% of the amounts estimated for payment of Professionals' fees and expenses that have not been previously paid as of the Effective Date; and (iii) 125% of the amounts allocated for payment of administrative expenses and other priority claims, including, without limitation, unpaid Secured Tax Claims that have not been previously paid as of the Effective Date.

**_Northeast Medical Solutions_** shall have the meaning set forth in the Introduction.

**_Northstar First Health_** shall have the meaning set forth in the Introduction.

**_Northstar FHA_** shall have the meaning set forth in the Introduction.

**_Noteholder Litigation_** means that certain proceeding pending before the Bankruptcy Court captioned _Orion HealthCorp, Inc., et al. v. Capita IRG Trustees (Nominees) Limited, et al._ (_In re Orion HealthCorp, Inc._), Adv. Pro. No. 18-08048-AST.

**_NYNM Acquisition_** shall have the meaning set forth in the Introduction.

**_NYNM Management_** shall have the meaning set forth in the Introduction.

*NYNM Petition Date* means July 5, 2018.

*Orion* shall have the meaning set forth in the Introduction.

*Other Priority Claim* means any Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5).

*Other Secured Claim* means a Secured Claim other than the Secured Tax Claims and the Allowed Secured Lender Claim.

*Parmar Litigation* means that certain proceeding pending before the Bankruptcy Court captioned *Orion HealthCorp, Inc., et al. v. Parmjit Singh Parmar, et al. (In re Orion HealthCorp., Inc.)*, Adv. Pro. No. 18-08053-AST.

*Person* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

*Petition Date* means March 16, 2018.

*Phoenix Health* shall have the meaning set forth in the Introduction.

*Physicians Practice Plus* shall have the meaning set forth in the Introduction.

*Physicians Practice Plus Holdings* shall have the meaning set forth in the Introduction.

*Plan* shall have the meaning set forth in the Introduction.

*Plan Supplement* means the compilation of documents and forms of documents, schedules, and exhibits to this Plan as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

*Prepetition Credit Agreement* means that certain Credit Agreement, dated as of January 30, 2017, among the Debtors, certain non-Debtor affiliates, the Administrative Agent and the Secured Lenders.

*Priority Claim* means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claims.

*Priority Tax Claim* means any Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

**Pro Rata** means the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Allowed Claims in such Class or Classes, unless the Plan otherwise provides.

**Professionals** means all professionals employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 363 and 1103.

**Proof of Claim** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

**Rand Medical Billing** shall have the meaning set forth in the Introduction.

**Related Persons** means, with respect to any Person, such Person's successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date or NYNM Petition Date, as applicable, and any Person claiming by or through any of them.

**Released Parties** means each of: (i) the following professionals of the Debtors: DLA Piper LLP (US), FTI Consulting, Inc., Houlihan Lokey Capital, Inc., Hahn & Hessen LLP, Epiq Bankruptcy Solutions, LLC, and any Related Person to such professionals, with respect to services rendered before and after the Petition Date and NYNM Petition Date; (ii) the members of the Committee in their capacity as such and the ~~Creditors~~ Committee's professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including Pachulski Stang Ziehl & Jones LLP and CBIZ MHM, LLC and any Related Persons to such professionals; (iii) the Administrative Agent, the Secured Lenders, Moore & Van Allen, PLLC, Reed Smith LLP, Chapman and Cutler LLP and Carl Marks Advisors and any of Related Persons thereof, in each case solely with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession; (iv) the Liquidating Trustee, any professionals retained by the Liquidating Trustee and any Related Person to the Liquidating Trustee or such professionals, (v) the Liquidating Trust, any professionals retained by the Liquidating Trust and any Related Person to the Liquidating Trust or such professionals, (vi) the Liquidating Trust Oversight Board, the members of the Liquidating Trust Oversight Board, solely in their capacity as such, and any Related Persons to members of the Liquidating Trust Oversight Board; (vii) Robert Rosenberg, solely in his capacity as the independent board member of ~~CHT~~ the Debtors and with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession; and (viii) Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara in their capacities as officers and managers of the Debtors and with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession. Any current or former Insider of any of the Debtors and any of their Related Persons, except Robert Rosenberg, Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara, shall not have the benefit of the exculpation or releases granted pursuant to this Plan or the Confirmation Order.

**Releasing Parties** means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

**RMI Physician Services** shall have the meaning set forth in the Introduction.

**Robinson Brog Litigation** means that certain proceeding pending before the Bankruptcy Court captioned *Orion HealthCorp, Inc., et al. v. Robinson Brog Leinwand Greene Genovese & Gluck P.C., A. Mitchell Greene and Adam Greene (In re Orion HealthCorp., Inc.),* Adv. Pro. No. 18-08104-AST.

**Sales** means the sale of substantially all of the Debtors' Assets ~~to MTBC and HealthTek~~ pursuant to the MTBC APA and HealthTek APA, respectively.

**Schedules** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs, if any, filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

**Secured Claim** means any Claim of a Creditor that is secured by property of the Estates, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a). Secured Claim also means a Claim of a Creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a). To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a *"Deficiency Claim"* unless the holder of such Claim validly elects under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**Secured Lenders** means, collectively, Bank of America, N.A., BMO Harris Bank, N.A., Keybank National Association, Stifel Bank & Trust, and Woodforest National Bank.

**Secured Tax Claim** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8).

**Section 503(b)(9) Claims** shall have the meaning set forth in Section 2.1(b).

**Shell Debtors** shall have the meaning set forth in section 6.4.

**Standing Motion** means the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Standing, and Authority to Prosecute Certain Causes of Action on Behalf of the Debtors and Their Estates* [Docket No. 504] filed in the Chapter 11 Cases.

**Standing Motion Settlement** means the settlement between the Debtors, the Committee and the Secured Lenders regarding the Standing Motion as embodied and described in the Plan and Disclosure Statement.

**Subordinated Claims** means those Claims that have been subordinated pursuant to section 510 of the Bankruptcy Code by Final Order of the Bankruptcy Court.

***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

***Unimpaired*** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

***United States Trustee*** means the Office of the United States Trustee for Region 2.

***Vachette Business Services*** shall have the meaning set forth in the Introduction.

***Vega Medical Professionals*** shall have the meaning set forth in the Introduction.

***Voting Agent*** means Epiq Bankruptcy Solutions, LLC.

***Voting Record Date*** shall have the meaning ascribed to such term in the Disclosure Statement.

***Western Skies*** shall have the meaning set forth in the Introduction.

1.2     ***Interpretation, Application of Definitions and Rules of Construction***. Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise required.

1.3     ***Computation of Time***. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

## SECTION 2.    ADMINISTRATIVE AND PRIORITY CLAIMS

2.1     ***Administrative Expense Claims***.

(a)    ***Treatment***.  Except as otherwise provided in Section 2.1(b) of the Plan, in Section 2.2 of the Plan regarding Accrued Professional Compensation Claims, or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtors or Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Debtors, as Debtors in Possession, prior to the Effective Date, shall be paid by the Debtors, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, the budgets related to the Final DIP Order, Cash Collateral Stipulations and all other orders entered by the Bankruptcy Court related to the foregoing.  In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Debtors, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.

(b)    ***Administrative Expense Claims Bar Date***.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including but not limited to a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("***Section 503(b)(9) Claims***"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date.  Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1(a) of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.2    ***Accrued Professional Compensation Claims***.  All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Debtors' Chapter 11 Cases by the date that is sixty (60) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtors or Liquidating Trustee. Any Accrued Professional Compensation Claim that is not asserted in accordance with this Section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtors, the Debtors' Estates, the Liquidating Trust, or any of their Assets or property, and the

Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.3     ***Priority Tax Claims***.  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is ninety (90) calendar days after the Effective Date.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     ***Classified Claims Against and Interests in the Debtors***.  Except as set forth herein, all Claims against and Interests in a particular Debtor are placed in a particular Class for that Debtor.  The Debtors have not classified Administrative Expense Claims, Accrued Professional Compensation Claims or Priority Tax Claims.  In addition, the Debtors have not classified any Claims they may have against any other Debtor ("***Intercompany Claims***").  All Intercompany Claims shall be assigned to the Liquidating Trust pursuant to this Plan.

The following tables classify Claims against and Interests in each of the Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 herein.  This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

3.2    *CHT*.

The following table designates the Classes of Claims against and Interests in **CHT**, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in CHT | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.3    *Orion*.

The following table designates the Classes of Claims against and Interests in **Orion,** a direct subsidiary of CHT, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Orion | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

17

3.4    *Northeast Medical Solutions*.

The following table designates the Classes of Claims against and Interests in **Northeast Medical Solutions**, a direct subsidiary of NEMS Acquisition, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Northeast Medical Solutions | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.5    *NEMS West Virginia*.

The following table designates the Classes of Claims against and Interests in **NEMS West Virginia**, a direct subsidiary of NEMS Acquisition, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in NEMS West Virginia | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.6     *Physicians Practice Plus*.

The following table designates the Classes of Claims against and Interests in **Physicians Practice Plus**, a direct subsidiary of Physicians Practice Plus Holdings, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Physicians Practice Plus | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.7     *Medical Billing Services*.

The following table designates the Classes of Claims against and Interests in **Medical Billing Services**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Medical Billing Services | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.8    *Rand Medical Billing*.

The following table designates the Classes of Claims against and Interests in **Rand Medical Billing**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Rand Medical Billing | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.9    *RMI Physician Services*.

The following table designates the Classes of Claims against and Interests in **RMI Physician Services**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in RMI Physician Services | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

### 3.10    *Western Skies Practice Management*.

The following table designates the Classes of Claims against and Interests in **Western Skies Practice Management**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|-----------------|-------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Western Skies Practice Management | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

### 3.11    *Integrated Physician Solutions*.

The following table designates the Classes of Claims against and Interests in **Integrated Physician Solutions**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|-----------------|-------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Integrated Physician Solutions | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.12   *Northstar First Health*.

The following table designates the Classes of Claims against and Interests in **Northstar First Health**, a direct subsidiary of Northstar FHA, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Northstar First Health | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.13   *Vachette Business Services*.

The following table designates the Classes of Claims against and Interests in **Vachette Business Services**, a direct subsidiary of Northstar First Health, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Vachette Business Services | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

-

3.14    *Allegiance Consulting Associates*.

The following table designates the Classes of Claims against and Interests in **Allegiance Consulting Associates**, a direct subsidiary of Vega Medical Professionals, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Allegiance Consulting Associates | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.15    *Allegiance Billing & Consulting*.

The following table designates the Classes of Claims against and Interests in **Allegiance Billing & Consulting**, a direct subsidiary of Vega Medical Professionals and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Allegiance Billing & Consulting | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.16    *NYNM Management*.

The following table designates the Classes of Claims against and Interests in **NYNM Management**, a direct subsidiary of NYNM Acquisition, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in NYNM Management | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

## SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS

4.1    *General.*    Pursuant to the Standing Motion Settlement described in the Disclosure Statement, all Assets of each of the Debtors and all Assigned Causes of Action shall be assigned to the Liquidating Trust.    Subject to the Liquidating Trust Agreement, the Liquidating Trustee shall make Distributions from the Liquidating Trust Distributable Cash to Holders of Allowed Claims as follows:

a.    *Other* *Priority Claims (Class 1 against any or all Debtors).*    This Class consists of all Allowed Other Priority Claims against any of the Debtors that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.    Except to the extent that a Holder of an Allowed Other Priority Claim against any of the Debtors has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against the applicable Debtor.

b.    *Secured Tax Claims (Class 2 against any or all Debtors).*    This Class consists of all Allowed Secured Tax Claims against any of the Debtors that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.    Each Holder of an

Allowed Secured Tax Claim against any of the Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidating Trustee and the Holder of the Secured Tax Claim. The applicable Debtor and the Liquidating Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

c. ***Allowed Secured Lender Claim (Class 3 against any or all Debtors)***. This Class consists of the Secured Lenders' Allowed Secured Lender Claim, which shall be deemed Allowed pursuant to this Plan in the amount of Fifty Million Dollars ($50,000,000.00), against each of the Debtors, which amount includes (i) unpaid principal and accrued but unpaid interest owed under the Prepetition Credit Agreement as of the Petition Date and NYNM Petition Date; and (ii) any post-petition adequate protection claims under section 507 of the Bankruptcy Code, the Final DIP Order, the Cash Collateral Stipulations or otherwise. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Allowed Secured Lender Claim against any of the Debtors, the Secured Lenders will receive (i) the Net Sale Proceeds and (ii) all Distributions from the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement until such time as the Secured Lenders' Allowed Secured Lender Claim and all interest accruing thereon has been paid in full. Interest shall accrue on the then outstanding balance of the Allowed Secured Lender Claim at a per annum floating rate equal to the prime rate of Bank of America, N.A. publicly announced from time to time plus 2.00%, with a 2.00% floor and a 6.00% cap. Upon and subject to the occurrence of the Effective Date, the Secured Lenders shall, and by their acceptance of, and by operation of, this Plan, transfer and assign to the Liquidating Trust any and all Causes of Action they may have against any Person who is not a Debtor, related directly or indirectly to the Debtors and their Estates, whether arising before or after the Petition Date. The Debtors shall not be obligated to pay the fees and expenses incurred on or after the Effective Date of any Professionals retained by the Administrative Agent and Secured Lenders; *provided, however*, the Administrative Agent and the Secured Lenders shall be entitled to receive and retain Professional Fees and expenses to the extent incurred prior to the Effective Date and permitted to be paid pursuant to the Final DIP Order or any Cash Collateral Stipulations entered from time to time in the Chapter 11 Cases. Upon the unanimous acceptance of the Secured Lenders to this Plan and the confirmation thereof, the Secured Lenders consent to the treatment of their Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim as provided in this Plan. Upon the Effective Date by operation of the Plan, the rights (other than with respect to the Allowed Secured Lender Claim and the Allowed Secured Lender Deficiency Claim) and Causes of Action of each accepting Secured Lender and/or the Administrative Agent against any Person arising out of or on account of the Prepetition Loans (as defined in the Final DIP Order) shall be assigned to the Liquidating Trust and shall be deemed Assigned Causes of Action pursuant to this Plan. The Assigned Causes of Action shall accrue to the benefit of the Liquidating Trust and the Liquidating Trustee shall have sole and exclusive authority to administer, pursue, litigate, settle or abandon any Assigned Causes of Action subject only to the terms of this Plan and the Liquidating Trust Agreement. The Secured Lenders and\or

the Administrative Agent shall undertake such actions and execute such documents as necessary to memorialize, effectuate or enforce the assignment of any Assigned Causes of Action.

        d.      ***Other Secured Claims (Class 4 against any or all Debtors)***.  This Class consists of the Other Secured Claims against any of the Debtors  if any such Claims exist as of the Effective Date.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date or as soon as practicable thereafter, in full and final satisfaction, settlement, release, and discharge of the Allowed Other Secured Claims against any of the Debtors, the Holders of Allowed Other Secured Claims against any of the Debtors will receive, on the Effective Date or as soon as practicable thereafter, the Collateral that secures their Claims.

        e.      ***General Unsecured Claims (Class 5 against any or all Debtors)***. This Class consists of (i) the Secured Lenders' Allowed Secured Lender Deficiency Claim against each of the Debtors, which shall be deemed Allowed pursuant to this Plan in the amount of One Hundred and Seven Million Six Hundred Twelve Thousand Three Hundred Forty-Two Dollars and Seventy Four Cents ($107,612,342.74); and (ii) all Allowed General Unsecured Claims against each of the Debtors.  Except to the extent the Secured Lenders on account of their Allowed Secured Lender Deficiency Claim or a Holder of an Allowed General Unsecured Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of the Allowed Secured Lender Deficiency Claim or Allowed General Unsecured Claims against each of the Debtors, the Secured Lenders and each Holder of an Allowed General Unsecured Claim against any of the Debtors will receive their Pro Rata share of the Liquidating Trust Distributable Cash as soon as practicable as determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement; *provided, however*, that each Holder of an Allowed General Unsecured Claim against more than one Debtor shall be entitled to a single distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Debtors against ~~with~~which the Claim is asserted.  The Debtors and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim (other than the Allowed Secured Lender Deficiency Claim), whether or not objected to prior to the Effective Date.

        f.      ***Subordinated Claims (Class 6 against any or all Debtors)***.  This Class consists of the Allowed Subordinated Claims against any of the Debtors, which have been subordinated to the Allowed Secured Lender Deficiency Claim and Allowed General Unsecured Claims.  Except to the extent that a Holder of an Allowed Subordinated Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Subordinated Claim, each Holder of an Allowed Subordinated Claim will receive its Pro Rata share of the Excess Liquidating Trust Distributable Cash as soon as practicable as determined by the Liquidating Trustee.  The Debtors and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Subordinated Claim, whether or not objected to prior to the Effective Date.

        g.      ***Interests (Class 7 in any or all Debtors)***.  This Class consists of any Holder's Interest in the Debtors, which will be cancelled as of the Effective Date. However, the Interests in any of the Debtors held by any other Debtor shall be held as Assets in the

Liquidating Trust, unless abandoned by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

## SECTION 5.    ACCEPTANCE OR REJECTION OF THE PLAN

5.1    ***Holders of Claims and Interests Entitled to Vote***.  Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan.  Each Holder of an Allowed Claim in such an Impaired Class shall receive a Ballot and may cast a vote to accept or reject this Plan.  The following Classes of each of the Debtors are Impaired and entitled to vote:

| Debtor | Impaired Classes Entitled to Vote |
|---|---|
| CHT | 3, 4, 5 and 6 |
| Orion | 3, 4, 5 and 6 |
| Northeast Medical Solutions | 3, 4, 5 and 6 |
| NEMS West Virginia | 3, 4, 5 and 6 |
| Physicians Practice Plus | 3, 4, 5 and 6 |
| Medical Billing Services | 3, 4, 5 and 6 |
| Rand Medical Billing | 3, 4, 5 and 6 |
| RMI Physicians Services | 3, 4, 5 and 6 |
| Western Skies Practice Management | 3, 4, 5 and 6 |
| Integrated Physician Solutions | 3, 4, 5 and 6 |
| Northstar First Health | 3, 4, 5 and 6 |
| Vachette Business Services | 3, 4, 5 and 6 |
| Allegiance Consulting Associates | 3, 4, 5 and 6 |
| Allegiance Billing & Consulting | 3, 4, 5 and 6 |
| NYNM Management | 3, 4, 5 and 6 |

5.2    ***Classes Deemed to Reject***.  The following Classes of each of the Debtors are Impaired, are not entitled to a Distribution and are deemed to reject the Plan:

| Debtor | Impaired Class Deemed to Reject Unless held by a Debtor |
|---|---|
| CHT | 7 |
| Orion | 7 |
| Northeast Medical Solutions | 7 |
| NEMS West Virginia | 7 |
| Physicians Practice Plus | 7 |
| Medical Billing Services | 7 |
| Rand Medical Billing | 7 |
| RMI Physicians Services | 7 |
| Western Skies Practice Management | 7 |
| Integrated Physician Solutions | 7 |
| Northstar First Health | 7 |
| Vachette Business Services | 7 |
| Allegiance Consulting Associates | 7 |
| Allegiance Billing & Consulting | 7 |

| NYNM Management | 7 |

-

     5.3    ***Classes Deemed to Accept***.  The following Classes of the Debtors are Unimpaired, not entitled to vote to accept or reject the Plan and are deemed to accept the Plan:

| Debtor | Unimpaired Classes |
| --- | --- |
| CHT | 1 and 2 |
| Orion | 1 and 2 |
| Northeast Medical Solutions | 1 and 2 |
| NEMS West Virginia | 1 and 2 |
| Physicians Practice Plus | 1 and 2 |
| Medical Billing Services | 1 and 2 |
| Rand Medical Billing | 1 and 2 |
| RMI Physicians Services | 1 and 2 |
| Western Skies Practice Management | 1 and 2 |
| Integrated Physician Solutions | 1 and 2 |
| Northstar First Health | 1 and 2 |
| Vachette Business Services | 1 and 2 |
| Allegiance Consulting Associates | 1 and 2 |
| Allegiance Billing & Consulting | 1 and 2 |
| NYNM Management | 1 and 2 |

     5.4    ***Acceptance by a Class***.  A Class of Claims entitled to vote to accept or reject this Plan accepts this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that complete and return Ballots in such Class vote to accept this Plan.  A Class of Interests is deemed to accept this Plan if this Plan has been accepted by Holders of at least two-thirds (2/3) of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class. Notwithstanding the foregoing, in order for any Class 3 to accept the Plan, all Holders of Claims in such Class must vote to accept the Plan.

     5.5    ***Cramdown Under Section 1129(b) of the Bankruptcy Code***.  If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtors will  request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

     5.6    ***Ballots***.  Each Holder of a Claim or Interest entitled to vote on this Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received.

## SECTION 6.    MEANS FOR IMPLEMENTATION

6.1    ***Compromise Regarding Deemed Consolidation***.  This Plan includes, and is implemented by, a settlement under Bankruptcy Rule 9019, between and among the Debtors, the Secured Lenders and the Committee which provides for a deemed consolidation of the Debtors' Estates solely for distribution purposes.  The Debtors shall retain their separate corporate identities for all other purposes.

6.2    ***Initial Secured Lender Distribution***.  On the Effective Date, all Debtor Cash will be transferred to the Liquidating Trust and used to pay or establish a reserve for (i) Allowed Administrative Expense Claims; (ii) Allowed Accrued Professional Compensation Claims; (iii) Allowed Priority Claims; and (iv) the initial funding of the Liquidating Trust Reserve (the "***Initial Liquidating Trust Distributions***").  All Debtor Cash remaining after payment of the Initial Liquidating Trust Distributions may be distributed to the Holders of the Allowed Secured Lender Claim as a Distribution on account of such Claim upon consent of the Liquidating Trust Oversight Board pursuant to the Liquidating Trust Agreement.

6.3    ***Liquidating Trust***.

a.    ***Overview of Liquidating Trust***.   On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of liquidating any non-Cash Liquidating Trust Assets, prosecuting and resolving the Causes of Action (including any Assigned Causes of Action), objecting to all Claims (including, with respect to Claims in Class 4, objecting to any purported Liens), resolving all Disputed Claims, and effecting the Distributions to be made under the Plan to the Holders of Allowed Claims in accordance with the terms of the Plan.  The Beneficiaries of the Liquidating Trust shall be the Holders of Allowed Class 3 Claims (Allowed Secured Lender Claim), Allowed Class 5 Claims (General Unsecured Claims, including the Allowed Secured Lender Deficiency Claim) and Allowed Class 6 Claims (Subordinated Claims).  On the Effective Date, by operation of the Plan, each Holder of Allowed Class 3, Class 5 and Class 6 Claims shall (i) become a Beneficiary of the Liquidating Trust, (ii) be bound by the Liquidating Trust Agreement, and (iii) receive an uncertificated beneficial interest in the Liquidating Trust.  Pursuant to the Plan, the Liquidating Trust shall contain a waterfall for Distributions by which, subject to the Liquidating Trust Reserve, Liquidating Trust Distributable Cash shall satisfy, in full and in Cash, and in order of priority: (i) first, Allowed Class 3 Claims and the interest accruing thereon pursuant to Section 4(c) of the Plan, (ii) second, Allowed Class 5 Claims (including the Allowed Secured Lender Deficiency Claim), and (iii) third, the Allowed Class 6 Claims.  All beneficial interests in the Liquidating Trust shall be subject to such priorities in Distributions.

b.    ***Appointment of Liquidating Trustee***.   On or before the Confirmation Date, the Liquidating Trustee shall be designated by mutual agreement of the Secured Lenders and the Committee, after consultation with the Debtors, and the Liquidating Trustee shall be appointed pursuant to the Confirmation Order.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.   The powers, rights and responsibilities of the Liquidating Trustee shall be specified in and subject to the terms of the Liquidating Trust

Agreement and shall include the authority and responsibility to: (i) receive, manage, invest, supervise and protect the Liquidating Trust Assets; (ii) pay taxes and other obligations incurred by the Liquidating Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals (the "*Liquidating Trust Professionals*") to advise and assist in the administration, prosecution and Distribution of Liquidating Trust Assets; (iv) calculate and implement Distributions of Liquidating Trust Distributable Cash and, as applicable, the Excess Liquidating Trust Distributable Cash; (v) prosecute, compromise and settle all Disputed Claims and all claims and Causes of Action (including the Assigned Causes of Action) vested in the Liquidating Trust; and (vi) pay Professional Fees of professionals retained in the Chapter 11 Cases which are Allowed pursuant to any order of the Bankruptcy Court, whether such Professional Fees were incurred before or after the Effective Date.  Other rights and duties of the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement.

        c.      ***Compensation of Liquidating Trustee.***  The Liquidating Trustee shall be reasonably compensated out of the Liquidating Trust for his services and reimbursed out of the Liquidating Trust for his reasonable expenses in accordance with the compensation schedule attached the Liquidating Trust Agreement as Exhibit B.

        d.      ***Appointment of Liquidating Trust Oversight Board***.  On the Effective Date, an oversight committee comprised of ~~eight~~seven (~~8~~7) members– five (5) of whom shall be designated by the Secured Lenders and ~~three~~two (~~3~~2) of whom shall be designated by the Committee – shall be appointed (the "*Liquidating Trust Oversight Board*").  The Liquidating Trustee shall consult with the Liquidating Trust Oversight Board with respect to, among other matters described in the Liquidating Trust Agreement, (i) settlements of any Cause of Action over Two Hundred and Fifty Thousand Dollars ($250,000.00), (ii) commencement or abandonment of any litigation or other Asset on behalf of the Liquidating Trust, and (iii) the retention or termination of any Liquidating Trust Professional.  The Liquidating Trust Oversight Board shall have such other rights and obligations as set forth in the Liquidating Trust Agreement.

        e.      ***Treatment***.  It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business.  In furtherance of this objective, the Liquidating Trustee shall, in his business judgment, make continuing best efforts not to prolong unduly the duration of the Liquidating Trust.  All Liquidating Trust Assets on the Effective Date shall be deemed for federal income tax purposes (i) to have been distributed (subject to any obligations relating to such assets) by the Debtors to the Beneficiaries (other than the Liquidating Trusts Assets allocable to the Liquidating Trust Reserve and any reserves created with respect to any Disputed Claims) in partial satisfaction of Allowed Claims and (ii) immediately thereafter contributed by such Beneficiaries to the Liquidating Trust in exchange for their respective beneficial interests.  The Beneficiaries will be treated as the deemed owners of the Liquidating Trust (other than the assets allocable to any Liquidating Trust Reserve and any reserves created with respect to Disputed Claims).  The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (i) timely elect to treat any disputed claims reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B9 and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors and the Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

The Liquidating Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Internal Revenue Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Beneficiaries. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiaries for all purposes of the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) and forms (including without limitation IRS Form W-8 and IRS Form W-9) as he, in his sole discretion, reasonably deems necessary to effectuate the Plan, the Confirmation Order and the Liquidating Trust Agreement in accordance with the tax laws of the United States and any state, commonwealth or territory thereof (any such information or forms, "***Beneficiary Tax Information***"). In order to receive Distributions under the Plan, all Beneficiaries shall identify themselves to the Liquidating Trustee and provide tax information and the specifics of their holdings, to the extent the Liquidating Trustee reasonably deems appropriate in his sole discretion. The Liquidating Trustee may refuse to make a Distribution to any Beneficiary that fails to furnish such information within sixty (60) days of any request therefor by the Liquidating Trustee, until such information is delivered; *provided, however*, that, upon the delivery of such information by a Beneficiary, the Liquidating Trustee shall make such Distribution to which the Beneficiary is entitled, without interest; and, provided, further, that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any such Beneficiary and the Liquidating Trustee is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Liquidating Trustee for such liability. The Liquidating Trustee shall reserve all Distributions due to any Beneficiary that does not timely provide Beneficiary Tax Information (any such Distribution collectively, the "***Beneficiary Tax Reserve***") until the earlier of (a) such time that the Beneficiary provides the Beneficiary Tax Information and (b) the final Distribution Record Date. Any Beneficiary that does not timely provide Beneficiary Tax Information to the Liquidating Trustee as of the final Distribution Record Date shall not be entitled to receive any Distributions from the Liquidating Trust. Any funds that remain in the Beneficiary Tax Reserve as of the final Distribution Record Date shall be distributed Pro Rata to the Beneficiaries of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement.

The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority,

and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

        f.    ***Liquidating Trust Assets***.  On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code and by operation of the Plan, the Liquidating Trust Assets shall be transferred by the Debtors (and deemed transferred) to the Liquidating Trust, free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any Person to take any further action or obtain any approval.  On the Effective Date, and by operation of the Plan and in furtherance of the Standing Motion Settlement embodied in the Plan, in the event that each of the Holders of the Allowed Secured Lender Claim in Class 3 has voted to approve the Plan, each Secured Lender shall be deemed to have assigned, without recourse, representation or warranty, to the Liquidating Trust, free and clear of all Claims, Liens, charges, encumbrances, rights and interests, any and all Causes of Action they may have against any Person who is not a Debtor, related directly or indirectly to the Debtors and their Estates, whether arising before or after the Petition Date, which assigned Causes of Action shall be deemed Assigned Causes of Action without the need for any Person to take any further action or obtain any approval.  The Assigned Causes of Action shall exclude any action released or settled by the Debtors (or other Releasing Parties) pursuant to this Plan or an order of the Bankruptcy Court.

        The Liquidating Trust may pursue any Assigned Causes of Action in accordance with the best interests of the Liquidating Trust.  **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Liquidating Trust will not pursue any and all available Causes of Action**.  The Plan expressly reserves for the Liquidating Trust all rights to prosecute any and all Assigned Causes of Action against any Person, except as otherwise provided in the Plan.  Unless any Assigned Causes of Action against any Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Liquidating Trust expressly reserves all Assigned Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Assigned Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.

        g.    ***Claims Reconciliation Process***.  From and after the Effective Date, the Liquidating Trust shall be solely responsible for objecting to Claims which are not otherwise Allowed, for all related aspects of the claims reconciliation process, and for the payment of all costs and expenses incurred by the Liquidating Trust in connection with such process.

        h.    ***Preservation of Right to Conduct Investigations***.  Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors or the Committee prior to the Effective Date shall vest with the Liquidating Trust upon the Effective Date and shall continue in effect until dissolution or termination of the Liquidating Trust.

        i.    ***Preservation of Privilege and Defenses***.  No action taken by the Debtors in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or

immunity of the Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The Confirmation Order shall provide that notwithstanding the Debtors' providing any privileged information to the Liquidating Trustee, the Liquidating Trust, or any party or Person associated with the Liquidating Trust, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged.

           j.      ***Indemnification and Exculpation***.  The Liquidating Trustee, the Liquidating Trust Professionals, the Liquidating Trust Oversight Board, the members of the Liquidating Trust Oversight Board and any professionals retained by the Liquidating Trust Oversight Board or its members, shall not be liable for actions taken or omitted in such capacities, except those acts arising out of its or their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the Liquidating Trust for fees and expenses in defending any and all of its actions or inactions in such capacities, except for any actions or inactions involving willful misconduct or gross negligence.  Any indemnification claim of the Liquidating Trustee (and any other parties entitled to indemnification under this subsection) shall be satisfied first from the Liquidating Trust Reserve and, then, to the extent the Liquidating Trust Reserve is exhausted, from the Liquidating Trust Distributable Cash.

           k.      ***Liquidating Trust Agreement Controlling***.  In the event of any conflict between this summary or any other provision of the Plan and the Liquidating Trust Agreement, then the terms and provisions of the Liquidating Trust Agreement shall control.  In the event of any conflict between the Confirmation Order and the Liquidating Trust Agreement, then the terms of the Confirmation Order shall control.  These descriptions of the Liquidating Trust and the scope and terms of the Liquidating Trust Agreement are qualified in their entirety by reference to the specific terms and conditions of the Liquidating Trust Agreement.

        6.4    ***The Shell Debtors***.  The Debtors' equity interests in NEMS Acquisition, Physician Practice Plus Holdings, NYNM Acquisition, Northstar FHA, Phoenix Health, MDRX and Vega Medical Professionals (collectively, the "***Shell Debtors***") shall be retained and transferred to the Liquidating Trust.

## SECTION 7.   DISTRIBUTIONS

        7.1    ***Distribution Record Date***.  As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests, except for death and by operation of law.  The Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring after the Distribution Record Date unless specifically notified in writing of a transfer by death or by operation of law.  The Debtors, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

7.2    ***Date of Distributions***.  Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that this Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  Distributions made after the Effective Date to Holders of Allowed Claims (other than Distributions to Holders of the Allowed Secured Lender Claim) shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Plan.  Except as otherwise provided in this Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

7.3    ***Disbursing Agent***.  Except as otherwise provided in this Plan, all Distributions under this Plan shall be made by the Debtors or Liquidating Trustee as disbursing agent or such other Person designated by the Liquidating Trustee as a disbursing agent on the Effective Date (the "***Disbursing Agent***").

7.4    ***Rights and Powers of Disbursing Agent***.  The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

7.5    ***Delivery of Distributions in General***.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent.  Distributions to Holders of Allowed Claims will be made at the address of each such Holder as set forth in the Debtors' books and records, except that, in the case of Holders of the Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim, the Administrative Agent shall be deemed to be the Holder of the Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim, for purposes of Distributions to be made hereunder, and all Distributions on account of such Claims shall be made to or at the direction of the Administrative Agent.  As soon as practicable, the Administrative Agent shall arrange to deliver such distributions to or on behalf of the Holders of the Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim, as provided for and pursuant to the terms of the applicable Prepetition Credit Agreement.  None of the Debtors or the Liquidating Trustee shall incur any liability whatsoever on account of any Distributions under this Plan except for gross negligence, willful misconduct or fraud.

7.6     ***Payments and Distributions on Disputed Claims***.  Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.  Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtors or the Liquidating Trustee, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

7.7     ***Manner of Payment***.  Any Distributions to be made by or on behalf of the Debtors or the Liquidating Trustee, as applicable, pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtors or the Liquidating Trustee, respectively, or by wire transfer if circumstances justify, at the option of the Debtors or the Liquidating Trustee, as applicable; *provided, however*, all Distributions to the Administrative Agent shall be made by wire.

7.8     ***Undeliverable Distributions and Unclaimed Property***.  In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable; *provided, however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the date of the Distribution.  After such date, all "unclaimed property" or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property shall be discharged and forever barred.

7.9     ***Withholding and Reporting Requirements***.  In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

7.10     ***Surrender Instruments***.  Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under the Plan, each holder of a certificated instrument or note (other than the Administrative Agent and the Secured Lenders) must surrender such instrument or note (other than the Administrative Agent and the Secured Lenders) held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent, as applicable, before the fifth anniversary of the Confirmation Date shall be deemed to have forfeited all rights and claims and may not participate in any Distribution hereunder.  Any Distribution so forfeited shall become property of the Liquidating Trust.

7.11     ***Setoffs***.  The Debtors and the Liquidating Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such

Claim on which a Distribution shall be made), any claims of any nature whatsoever that the Debtors and the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors and the Liquidating Trustee of any such claim the Debtors and the Liquidating Trustee may have against the Holder of such Claim.

7.12    ***Insurance Claims***.  Notwithstanding anything to the contrary contained herein, to the extent that the Debtors have Insurance Policies applicable and providing coverage for any particular Allowed General Unsecured Claim(s), no Distribution under this Plan shall be made on account of any such particular insured Allowed General Unsecured Claim(s) until the Holder of such Allowed General Unsecured Claim has exhausted all remedies with respect to the Debtors' Insurance Policies.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full any such insured Allowed General Unsecured Claim, then immediately upon such insurers' agreement, such Allowed General Unsecured Claim may be expunged without a Claims objection having to be filed and without further notice to or action, order or approval of the Bankruptcy Court.   To the extent that the Debtors have Insurance Policies applicable and providing insurance coverage with respect to any Allowed General Unsecured Claim, the Holder of such Allowed General Unsecured Claim shall (a) be paid an amount from the proceeds of such Insurance Policies to the extent that such Allowed General Unsecured Claim is insured, and (b) solely for the portion of such Allowed General Unsecured Claim that is not covered by and paid on account of such applicable Insurance Policies, receive the treatment provided for Allowed General Unsecured Claims in the Plan.  Nothing in this Plan shall prevent the Debtors' insurers from pursuing subrogation claims against third parties.

7.13    ***Applicability of Insurance Policies***.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, Liquidating Trustee or any Person may hold against any insurers under any of the Debtors' Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

7.14    ***No Post-petition Interest***.  Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date or NYNM Petition Date, as applicable, on such Claim.

7.15    ***Distributions Free and Clear***.  Except as may be otherwise provided herein, all Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

7.16    ***Fractional Dollars; De Minimis Distributions***.  Notwithstanding any other provision of this Plan, Cash payments of fractions of dollars shall not be made.  Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down.  Neither the Debtors

nor the Liquidating Trustee shall be required to make any Cash payment of less than five hundred dollars ($500.00) with respect to any Claim or Interest unless a request therefor is made in writing to the Debtors or the Liquidating Trustee, as applicable; *provided, however*, that neither the Debtors nor the Liquidating Trustee shall have any obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim or Interest is equal to or greater than one hundred dollars ($100.00).

## SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS

8.1    ***Allowance of Claims and Interests***.  Except as expressly provided herein, or in any order entered in the Debtors' Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or Allowed by the Bankruptcy Court by entry of a Final Order allowing such Claim or Interest.  Following the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

8.2    ***Objections to Claims***.  Upon the Effective Date, the Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan.  Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court upon request of the Liquidating Trustee. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court upon consultation or consent of the Liquidating Trust Oversight Board in accordance with the terms of the Liquidating Trust Agreement; *provided, however*, that nothing herein shall prohibit the Liquidating Trustee from seeking approval for any matter in a court of competent jurisdiction, including the Bankruptcy Court.

8.3    ***Estimation of Claims***.  The Debtors, the Committee, the Secured Lenders (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, the Committee, the Secured Lenders or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim; *provided, however*, the Liquidating Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

8.4    ***No Distribution Pending Allowance***.    Notwithstanding any other provision of this Plan, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5    ***Distributions After Allowance***.    At such time as a Contingent Claim or a Disputed Claim becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Contingent Claim or Disputed Claim becomes a Final Order.    To the extent that all or a portion of a Contingent Claim or a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed.

8.6    ***Preservations of Rights to Settle Claims***.    In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall have the discretion to retain and enforce, sue on, settle, or compromise all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person without the approval of the Bankruptcy Court, subject to the terms of this Plan, the Confirmation Order, the Liquidating Trust Agreement, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.    The Liquidating Trustee may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate.

8.7    ***Disallowed Claims***.    All Claims held by persons or entities against whom or which the Debtors or Liquidating Trustee has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.    Disallowed Claims pursuant to this Section shall continue to be Disallowed Claims for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or Liquidating Trustee from such party have been paid.

## SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1    ***Assumption and Rejection of Executory Contracts and Unexpired Leases***.    Except as otherwise provided in this Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, including, but not limited to, the MTBC APA and HealthTek APA entered into by the Debtors in connection with the Sales, each of the Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the applicable Debtor; (ii) expired or terminated pursuant to its own terms before the Effective Date; or (iii) is the subject of a motion to assume or reject filed on or before the Effective Date.    Nothing herein shall be deemed to reject any insurance policy of the Debtors that provides insurance coverage to or for the benefit of the ~~Debtor~~Debtors as of the Effective Date; *provided, however*, that nothing herein shall obligate the Liquidating Trustee to pay any premiums allegedly due under such policies.

9.2    ***Inclusiveness***.  Unless otherwise specified, each Executory Contract and Unexpired Lease assumed or rejected by the Debtors shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease.

9.3    ***Rejection Claims***.  Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtors or the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided, that* any such Claims shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b).  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Liquidating Trustee, the Debtors' Estates or their property without the need for any objection by the Debtors or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with this Plan.

9.4    ***Full Release and Satisfaction***.  Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

9.5    ***Reservation of Rights.***    Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or the Liquidating Trustee have any liability thereunder.

## SECTION 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

10.1    ***Conditions Precedent to Confirmation***.  Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)    The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtors, the Secured Lenders and the Committee, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law;

(b)      The Secured Lenders shall have unanimously accepted the Plan;

(c)      The proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors, the Secured Lenders and the Committee; and

(d)      The Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, acceptable to the Debtors, the Secured Lenders and the Committee and filed in accordance with Bankruptcy Rule 3019.

10.2    ***Conditions Precedent to the Effective Date***.  The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)      The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors, the Secured Lenders and the Committee, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code; and

(b)      All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the Liquidating Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

10.3    ***Effect of Failure of Conditions***.  If the consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests or any other Person; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Person in any respect.

## SECTION 11.  EFFECT OF CONFIRMATION

11.1    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, the Liquating Trust, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

11.2    ***Compromise and Settlement of Claims, Interests and Controversies***. Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and

controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

11.3   ***Releases by the Debtors***.  Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' Chapter 11 Cases, the business or contractual arrangements between any Debtor and any of the Released Parties, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "***Debtor Released Claims***"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

11.4   ***Releases by Holders of Claims***.  **ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO (I) (A) VOTED TO ACCEPT THIS PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE OR (B) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO VOTE TO REJECT THIS PLAN AND (II) DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER BASED OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS' CHAPTER 11 CASES OR AFFECTING PROPERTY OF THE ESTATES, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR**

**RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALES, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 HEREOF. EXCEPT AS OTHERWISE PROVIDED HEREIN, ALL PERSONS WHO DO NOT VOTE ON THIS PLAN WILL NOT BE DEEMED TO RELEASE, WAIVE OR DISCHARGE THE RELEASED PARTIES AS PROVIDED IN THIS SECTION.**

11.5 ***Exculpation***. None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Debtors' Chapter 11 Cases, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

11.6 ***Injunction***. **EXCEPT WITH RESPECT TO ADVERSARY PROCEEDINGS BROUGHT BY THE DEBTORS THAT ARE PENDING AS OF THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, THE NOTEHOLDER LITIGATION, PARMAR LITIGATION AND ROBINSON BROG LITIGATION, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTEREST IN THE DEBTORS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE**

**EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:   (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.**

11.7     ***Term of Injunctions or Stays***.  Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

11.8     ***Injunction Against Interference with Plan***.  Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtors, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtors', the Liquidating Trust's, the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

11.9     ***Release of Liens***.  Except as otherwise provided in the Plan and the Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of

44

-

trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged. Except as otherwise provided in the Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtors' Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

11.10   ***Effectuating Documents and Further Transactions***.  Upon entry of the Confirmation Order, the appropriate officers of the Debtors and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Debtors or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims or Interests receiving Distributions pursuant to this Plan, at the request or direction of the Debtors or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

11.11   ***Corporate Action***.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date).  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors.

11.12   ***Cancellation of Documents***.  On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Debtors including, without limitation, the Prepetition Credit Agreement shall be deemed inoperative and unenforceable against the Debtors and the Debtors shall have no continuing obligations thereunder; *provided, however*, that (i) the Prepetition Credit Agreement shall continue in effect for purposes of allowing the Secured Lenders holding the Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim to receive Distributions under the Plan and (ii) the Prepetition Credit Agreement shall remain operative and enforceable with respect to any Person, other than the Debtors, which has rights and/or obligations thereunder.

11.13   ***Dissolution of the Debtors***.  On the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.3 of this Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan.  Upon entry of a final decree closing the Debtors' Chapter 11 Cases, the Debtors shall be deemed dissolved for all purposes in accordance with applicable state law without the need to take any further action or file any plan of dissolution, notice, or application.

11.14   ***Preservation of Causes of Action***.  In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released

(including, pursuant to the releases by the Debtors and exculpation provisions provided in the Plan), the Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including, but not limited to, any claims that are the subject of the Parmar Litigation, Noteholder Litigation and the Robinson Brog Litigation, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Debtors and Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Creditors and Beneficiaries. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them**.  Except with respect to Causes of Action as to which the Debtors and Liquidating Trustee have released any Person or Person on or before the Effective Date, the Debtors (pre-Effective Date) and Liquidating Trustee (post-Effective Date), as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

11.15  ***Preservation of Rights Under Bankruptcy Rule 2004***.  The Liquidating Trustee shall have the right to seek the examination of any Person pursuant to Bankruptcy Rule 2004.

## SECTION 12.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

12.1    ***Modification and Amendments***.  This Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, the Debtors or Liquidating Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

12.2    ***Effect of Confirmation on Modifications***.  Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

12.3    ***Revocation or Withdrawal of this Plan***.  The Debtors reserve the right to, consistent with their fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtors revoke or withdraw this Plan, or if the Confirmation Date does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Person.

## SECTION 13.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Debtors' Chapter 11 Cases and this Plan, including, but not limited to, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)    resolve any matters related to:  (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims and cure Claims, pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease in connection with the Sales; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)    adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)    adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including, but not limited to, the Causes of Action, involving the Liquidating Trustee or the Liquidating Trust;

(g)    adjudicate, decide or resolve any and all matters related to any Cause of Action;

(h)    adjudicate, decide or resolve any and all matters related to the Parmar Litigation, Noteholder Litigation or Robinson Brog Litigation;

(i)    adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(j)    enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(k)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(l)    resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(m)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, the Liquidating Trust Agreement, any transactions or

payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(o) adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(p) consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q) determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(r) hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(s) hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(t) enforce all orders previously entered by the Bankruptcy Court;

(u) hear any matter related to the administration of the Liquidating Trust which may be brought by the Liquidating Trustee at his sole discretion, whether or not the Bankruptcy Court's allowance or approval of such matter is required by the Plan or the Confirmation Order.

(v) hear any other matter not inconsistent with the Bankruptcy Code; and

(w) enter final decrees closing the Debtors' Chapter 11 Cases.

## SECTION 14.  MISCELLANEOUS PROVISIONS

14.1 *Payment of Statutory Fees*.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date by the Debtors.  After the Effective Date, the Liquidating Trustee shall be liable for payment of any such fees until entry of final decrees closing the Debtors' Chapter 11 Cases.

14.2 *Dissolution of Committee*.  On the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases, except with respect to Professional fee applications.

14.3 *Section 1125(e) Good Faith Compliance*.  As of and subject to the occurrence of the Confirmation Date, the Debtors and their Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

14.4    ***Substantial Consummation***.   On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

14.5    ***Section 1146 Exemption***.   To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under or pursuant to this Plan, and the execution, delivery, or recording of any instrument of transfer under or pursuant to this Plan, and the revesting, transfer, or sale of any property of or to the Liquidating Trust, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or other Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

14.6    ***Closing of the Chapter 11 Cases***.   When all Liquidating Trust Assets have been liquidated and converted into Cash and such Cash has been distributed in accordance with the Liquidating Trust Agreement and the Confirmation Order, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

14.7    ***Plan Supplement***.   Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtors hereby reserve the right to file such exhibits or schedules as a Plan Supplement.

14.8    ***Further Assurances***.   The Debtors or the Liquidating Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors, the Liquidating Trustee, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

14.9    ***Exhibits Incorporated***.   All exhibits to the Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

14.10    ***Inconsistency***.   In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern.

14.11    ***No Admissions***.   If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors, (b) prejudice in any manner the rights of the Debtors or any other party in interest, or (c) constitute an admission of any sort by the Debtors or other party in interest.

14.12   **Reservation of Rights**.  Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred.  None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by any Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

14.13   **Successors and Assigns.**   The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

14.14   **Entire Agreement**.   On the Effective Date, this Plan, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

14.15   **Notices**.  All notices, requests, and demands to or upon the Debtors in the Chapter 11 Cases shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the following recipients:

Orion HealthCorp, Inc.
Attention: Timothy J. Dragelin
c/o Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

and

DLA Piper LLP (US)
Attention:  Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Debtors' Chapter 11 Cases.  Any such Holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtors (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date).

14.16  ***Severability***.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.17  ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

14.18  ***Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b)***.  The Debtors request entry of the Confirmation Order under Bankruptcy Code section 1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).

[*Signature Page Follows*]

Dated: ~~December 27~~January 6, ~~2018~~2019          Respectfully submitted,

Orion HealthCorp, Inc.
Constellation Healthcare Technologies, Inc.
NEMS Acquisition, LLC
Northeast Medical Solutions, LLC
NEMS West Virginia, LLC
Physicians Practice Plus, LLC
Physicians Practice Plus Holdings, LLC
Medical Billing Services, Inc.
Rand Medical Billing, Inc.
RMI Physician Services Corporation
Western Skies Practice Management, Inc.
Integrated Physician Solutions, Inc.
NYNM Acquisition, LLC
Northstar FHA, LLC
Northstar First Health, LLC
Vachette Business Services, Ltd.
MDRX Medical Billing, LLC
Vega Medical Professionals, LLC
Allegiance Consulting Associates, LLC
Allegiance Billing & Consulting, LLC
Phoenix Health, LLC
New York Network Management, L.L.C.

By: */s/ Timothy J. Dragelin*
    Name: Timothy J. Dragelin
    Title: Chief Executive Officer and
           Chief Restructuring Officer

| Summary report: Litéra® Change-Pro TDC 10.1.0.700 Document comparison done on 1/6/2019 4:46:57 PM | |
|---|---|
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://USDMS.PIPER.ROOT.LOCAL/EAST/159823542/11 | |
| **Modified DMS:** iw://USDMS.PIPER.ROOT.LOCAL/EAST/159823542/12 | |
| **Changes:** | |
| Add | 43 |
| Delete | 42 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 89 |