UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| ORION HEALTHCORP, INC. | : Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | : Case No: 18-74545 (AST) |
| Debtors. | : (Jointly Administered) |

--------------------------------------------------------------------------------x

**DECISION AND ORDER CONCERNING
RULE 2004 EXAMINATION OF ELIZABETH KELLY**

*Summary of dispute and of ruling*

On August 21, 2018, the Official Committee of Unsecured Creditors (the "UCC") filed a

motion seeking, *inter alia*, an order authorizing the UCC to issue subpoenas for the production of

documents from and to take the oral examination of Elizabeth Kelly ("E Kelly") pursuant to

Federal Rule of Bankruptcy Procedure 2004 (the "Motion" and the "Examination").  [dkt item

478]  As further detailed below, E Kelly was a principal owner of an entity that was sold to one

of the current debtors for a purchase price in excess of $70 million.

E Kelly filed a limited objection to the Motion [dkt item 507] and the Court conducted a hearing thereon on September 13, 2018.  At the hearing, E Kelly expressed concerns about possibly having to submit to multiple examinations.  In addition, Kevin Kelly and Edel Kelly ("Kevin and Edel"), children of E Kelly who allege they were minority owners of that same entity and have been embroiled in litigation with her, requested permission to participate in the Examination.

Based thereon, this Court entered an Order which established a protocol for the UCC to serve a subpoena for the production of documents and the Examination, for any notice party to seek to request documents and/or participate in the Examination, for E Kelly to object to any such participation, and for the Court to determine the proper scope and conduct of the Examination.  [dkt item 562]

The UCC served the subpoena.  Kevin and Edel asked to obtain any documents produced by E Kelly and to examine E Kelly at the Examination.  E Kelly objected, and Kevin and Edel responded.  [dkt items 631, 636]

For the reasons stated herein, the Court has determined that any documents produced by E Kelly which are not produced under a protective order, as well as the transcript of the Examination, shall be made available to Kevin and Edel at their expense, that Kevin and Edel may attend the Examination, but that they may not ask any questions, state any objections, or otherwise participate in the Examination.

*Jurisdiction*

This Court has jurisdiction to consider this dispute in accordance with 28 U.S.C. § 1334. This matter presents a core proceeding pursuant to 28 U.S.C. § 157(b)(A).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

*Facts and background: general case issues*

On March 16, 2018, a series of related companies filed for relief under chapter 11, with the lead case being Orion Healthcorp, Inc. ("Orion" and collectively, the "Initial Debtors"). The Initial Debtors were primarily involved in back office medical billing services, and were created through a series of transactions involving hundreds of millions of dollars that have spawned multiple lawsuits, a criminal indictment and several forfeiture actions.

Prior to the petition date, on January 30, 2017, Orion along with certain affiliates entered into a credit agreement (the "Credit Agreement") for approximately $130 million with Bank of America, N.A. as administrative agent, swing line lender and letter of credit issuer ("BOA"), along with certain lender parties thereto (together with BOA, the "Lenders"). *See* Declaration of Timothy J. Dragelin in Support of Chapter 11 Petitions and First Day Motions ("Dragelin Decl."), ¶¶ 57, 62.

On April 4, 2018, the Office of the United States Trustee appointed the UCC in the Initial Debtors' chapter 11 cases pursuant to § 1102 of the Bankruptcy Code. [dkt item 82]

On May 3, 2018, the Court entered a final Order, among other things, authorizing the Initial Debtors to obtain post-petition financing, use cash collateral, and granting adequate protection (the "Final DIP Order"). [dkt item 159] The Final DIP Order, among other things, provided the Initial Debtors with authority to obtain $7.5 million post-petition financing from certain Lenders and contained the Initial Debtors' acknowledgements of the validity and amount of liens and claims held by the Lenders; as is customary in DIP financing orders, parties in interest other than the Initial Debtors were provided a certain period of time to bring an action to challenge the validity of the Lenders' claims and liens, as well as releases they were given and

stipulations agreed to by the Initial Debtors; that window of time was set at 90 calendar days from the date of the formation of the UCC (the "Challenge Period").

On June 5, 2018, the Court authorized the UCC to retain the law firm of Pachulski Stang Ziehl & Jones LLP as its counsel. [dkt item 275]

The Initial Debtors engaged in marketing and sale efforts related to a sale of substantially all of their assets. This process resulted in two significant sales the Initial Debtors wished to pursue; a sale of substantially all of their assets for approximately $10.6 million subject to higher and better offers (the "Initial Debtors' Assets"), and a potential sale of substantially all of the assets of the then non-debtor affiliate entity New York Network Management, L.L.C. ("NYNM") for $16.5 million also subject to higher and better offers. [dkt item 333] On June 29, 2018, the Court entered an Order approving the sale of the Initial Debtors' Assets for $12.6 million, which, *inter alia*, provided for repayment of the DIP loan. [dkt item 354]

On July 5, 2018, NYNM filed its own chapter 11 petition, assigned case number 18-74545-ast (NYNM along with the Initial Debtors are referred to as the "Debtors"). At the time of the NYNM filing, Initial Debtor NYNM Acquisition LLC ("NYNM Acquisition") was the direct parent of NYNM and Initial Debtor Orion was its indirect parent company. *See* Dragelin Decl. ¶ 33; Supplemental Declaration of Timothy J. Dragelin in Support of Chapter 11 Petition of New York Network Management, L.L.C. and Motions Filed Contemporaneously Therewith ("Dragelin Supp. Decl."), ¶ 11. [dkt items 2, 368] Prior to these bankruptcy filings, in March 2017, Orion, through NYNM Acquisition, had apparently acquired the membership interests in NYNM and its subsidiaries in a transaction predominantly undertaken with E Kelly. *Id.*; *See* E Kelly's Objection to the Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to the Sale of Certain Assets of NYNM. [dkt item 398] BOA

contends that, in connection with the NYNM acquisition, the Debtors borrowed an approximately additional $30.0 million under an Incremental Term Increase Agreement and Lender Joinder Agreement, and Debtors guaranteed the full amount of the debts owed to Lenders. *See* Motion of the UCC for an Order Granting Leave, Standing, and Authority to Prosecute Certain Causes of Action on Behalf of the Debtors and their Estates. [dkt item 504]

On July 5, 2018, the Initial Debtors filed a motion requesting, essentially, that a number of the Orders entered in the Initial Debtors' cases be extended to the NYNM case. [dkt item 363]

On July 26, 2018, the United States Trustee appointed the Initial Debtors' UCC as the UCC in the NYNM case. [dkt item 433]

All of the Debtors' cases are jointly administered for administrative purposes only. [dkt items 34 and 381].

On July 31, 2018, the Court entered an Order authorizing the sale of certain assets of NYNM for the purchase price of $16.5 million and directed that the proceeds of the sale shall not be distributed absent a further order of the Court. [dkt item 445] Kevin and Edel had objected to any distribution of the sales proceeds based on, *inter alia*, claims that they held a lien against or constructive trust over those funds.

On August 14, 2018, Debtors filed a proposed Stipulated Order (I) Authorizing Continued Use of Cash Collateral Through September 10, 2018 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 (the "Proposed Stipulated Order"). [dkt item 465] On August 16, 2018, Debtors filed a notice of filing of the Proposed Stipulated Order that notified interested parties that the deadline to object to the entry of the Proposed Stipulated Order was August 23, 2018 at 4:00 p.m. [dkt item 470] The Proposed Stipulated Order provided that

5

certain stipulations in the Final DIP Order "shall bind NYNM Management and all third parties

… as if made by NYNM Management on the date of entry of the" Final DIP Order.

On September 4, 2018, within the Initial Debtors' Challenge Period,[1] the UCC filed a

motion for an order granting leave, standing, and authority to prosecute certain causes of action

on behalf of all of the Debtors and their estates (the "Standing Motion") against BOA. [dkt item

504] Pursuant to the Standing Motion, the UCC asserts that it has conducted an investigation of

potential claims and defenses that could be asserted against the Lenders in connection with a pre-

petition nearly $300 million "go-private" transaction, which was financed in part by the $130

million loan made pursuant to the Credit Agreement and gave rise to pre-petition liens on

substantially all of the assets of the Debtors. The UCC asserts that if the lawsuit is successful,

the liens would be invalidated, the guarantees would be avoided, and the Lenders' claims would

be subordinated to the unpaid administrative, priority and unsecured claims.

On September 11, 2018, after no objections were filed to the Proposed Stipulated Order,

the Court so ordered the Proposed Stipulated Order. [dkt item 515] That same day, Kevin and

Edel filed a motion seeking to modify the Final DIP Order, and seeking to establish that

NYNM's assets are not subject to Lenders' liens; they essentially argue that any security interest

granted to the Lenders in NYNM's assets after the NYNM acquisition was unsupported by

consideration, that NYNM Acquisition could not pledge NYNM's assets because Kevin and

Edel maintained equity interests in NYNM after the NYNM acquisition, and that the Final DIP

Order was entered prior to NYNM filing for bankruptcy and thus could not grant a lien to

Lenders on NYNM's assets (the "Motion to Reconsider"). [dkt item 513] While this dispute

---

[1] On June 26, 2018, the Court entered a Stipulation and Order extending the Challenge Period expiration date from July 3, 2018 until August 3, 2018, exclusively for challenges asserted by the UCC. [Dkt item 338] On July 31, 2018, the Court entered a Stipulation and Order further extending the Challenge Period expiration date until September 10, 2018, exclusively for challenges asserted by the UCC. [dkt item 446]

will be separately decided, they reference the Motion to Reconsider in the present 2004 dispute. [dkt item 636]  Various responses have been filed to the Motion to Reconsider, and the Court has set a ruling conference on that motion for February 5, 2019.

After several hearings, Debtors, Lenders and the UCC announced that these parties have agreed to a settlement of the Standing Motion.  This settlement is now described in Debtors' Third Amended Disclosure Statement, and approval is sought as part of Debtors' Third Amended Plan of Liquidation.  If approved, in essence, Lenders would hold an allowed secured claim of $50 million and an allowed unsecured claim of $107 million against all Debtors, including NYNM.  [dkt item 644, Section III. R.]

On January 7, 2019, this Court entered an Order approving Debtors' Third Amended Disclosure Statement, and setting a confirmation hearing for February 5, 2019.  [dkt item 652]

*The 2004 dispute further background*

As part of its reason for seeking to examine E Kelly, the UCC asserts that prior to NYNM filing bankruptcy, Orion indirectly acquired NYNM in March 2017 for approximately $23.5 million in cash at closing, with additional cash payments allegedly due to the selling members of NYNM (the "Selling Members") upon certain milestones being met; that E Kelly was NYNM's Chief Executive Officer and one of the Selling Members; that she continued as NYNM's CEO post-acquisition until her resignation on June 6, 2018; and that less than a year and a half after Orion indirectly acquired NYNM, NYNM was sold through a vigorous sale process approved by this Court for $16.5 million.  [dkt item 445]  E Kelly asserts that she is owed an additional nearly $50 million above the $23.5 million initial purchase price, and she filed a proof of claim to that extent. [Claim No. 10044] [2]

---

[2] On April 25, 2018, the Court entered the Order Authorizing the Appointment of Epiq Bankruptcy Solutions, LLC as Claims and Noticing Agent for the Debtors, pursuant to which Epiq Bankruptcy Solutions, LLC was appointed as

Kevin and Edel claim, *inter alia*, that they were frozen out of Orion's acquisition of NYNM by E Kelly and did not receive millions of dollars they claim they are entitled to, and have each filed various proofs of claim to that effect. *See* Proof of Claim Nos. 113, 114, 254, 255, 268, 269. Kevin has also alleged that NYNM was involved in fraudulent billing practices known to E Kelly since at least 2015. *See* Exhibit to Proof of Claim No. 113.

Debtors have filed an adversary proceeding against Kevin and Edel seeking to subordinate their various proofs of claim pursuant to § 510(b), as claims arising from their equity interests which were supposed to be sold in the NYNM acquisition (the "Subordination Litigation"). [adv. pro. no. 18-8155]

Prior to NYNM filing bankruptcy, E Kelly and Kevin and Edel have been enmeshed in litigation pending before the Supreme Court of New York, Kings County under Index Nos. 522255/2016 and 522203/2016 (the "Kelly Litigation"). The state court in the Kelly Litigation had ordered a portion of the NYNM acquisition proceeds to be escrowed, and ordered the two actions to be consolidated for the purposes of a joint trial. On September 10, 2018, Kevin and Edel removed the Kelly Litigation to this Court, commencing adversary proceeding no. 18-08118 (the "Removal Action"). *See* Removal Action Complaint, Adv. Pro. No. 18-8118; Dkt item 1-9.

E Kelly asserts that allowing Kevin and Edel to participate in the Examination would be unduly burdensome and duplicative because of the Kelly Litigation and that their interests are already represented by the UCC.

---

the Initial Debtors' claims and noticing agent (the "Claims Agent"). [Dkt item 143] On August 23, 2018, the Court entered the Order Extending Order Authorizing the Appointment of the Claims Agent Nunc Pro Tunc to the Petition Date to the Chapter 11 Case of NYNM, which extended the retention of the Claims Agent to the NYNM Chapter 11 Case. [dkt item 492]

Kevin and Edel complain that E Kelly avoided providing discovery in the Kelly Litigation and that several orders were entered thereon prior to removal, and thus they seek to participate in the Examination to obtain the discovery they say they were denied in state court. Kevin and Edel also assert that the UCC "has interests which are directly adverse to creditors of NYNM and has consistently acted in ways that directly undermine the interests of NYNM's creditors to benefit the contradictory interests of creditors of NYNM's corporate parents," and that they need the discovery to challenge the Lenders' lien claims against NYNM. [dkt item 636 para 12]

The Examination is scheduled for February 1, 2019. [dkt item 638]

*Analysis*

Bankruptcy Rule 2004 authorizes a court to allow a party in interest to take the oral examination of any person or entity, and to obtain documents incident thereto, if such examination relates to the acts, conduct, property, liabilities or financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate.[3]  *See* Fed. R. Bankr. Pro. 2004.  In chapter 11 cases, the examination may extend to matters relating "to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the

---

[3] (a)    Examination on Motion.  On motion of any party in interest, the court may order the examination of any entity.

(b)    Scope of Examination.  The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge….

(c)    Compelling Attendance and Production of Documents.  The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

consideration given or offered therefor, and any other matter relevant to the case or to the

formulation of a plan." *Id*.; *In re AOG Entm't, Inc*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016).

"The scope of a Bankruptcy Rule 2004 examination is 'unfettered and broad.'" *In re

Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (internal citations and quotations omitted).

"Its purpose is to facilitate the discovery of assets and the unearthing of frauds and has been

likened to a quick 'fishing expedition' into general matters and issues regarding the

administration of the bankruptcy case." *Id.* (internal citations and quotations omitted).

However, "Rule 2004 examinations are not boundless.  They may not be used for the purposes of

abuse or harassment, and cannot stray into matters not relevant to the basic inquiry." *Id*. at 447-

48.  "The party seeking Rule 2004 discovery has the burden to show good cause for the

examination it seeks … and relief lies within the sound discretion of the Bankruptcy Court."

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 09-11893-SMB, 2014 WL

5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014) (citations omitted).  "Generally, good cause is

shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the

examination, or if denial of such request would cause the examiner undue hardship or injustice."

*In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (citations omitted).

A Rule 2004 examination is not a deposition, and it cannot be used in the same manner as

a deposition.  As Judge Spatt of the Eastern District of New York noted, the "scope of

examination permitted pursuant to Rule 2004 is wider than that allowed under the Federal Rules

of Civil Procedure and can legitimately be in the nature of a 'fishing expedition,'" and a "Rule

2004 examination affords few of the procedural safeguards offered to deponents under the

Federal Rules of Civil Procedure, such as the right to counsel." *St. Clair v. Cadles of Grassy

Meadows II, L.L.C.*, 550 B.R. 655, 668 (E.D.N.Y. 2016) (concluding bankruptcy court did not

abuse its discretion in admitting transcripts of Rule 2004 examinations in an adversary

proceeding trial where the witnesses were available at trial).

Courts have also adopted a prior pending litigation exception to Rule 2004, holding that

such examinations may be inappropriate "where the party requesting the Rule 2004 examination

could benefit their pending litigation outside of the bankruptcy court against the proposed Rule

2004 examinee." *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (citing *In

re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002)); *In re Ecam Publications, Inc.*, 131

B.R. 556, 559 (Bankr. S.D.N.Y. 1991) ("once an adversary proceeding or another contested

matter has been initiated, parties must proceed with discovery for that litigation pursuant to the

Federal Rules of Civil Procedure.") *See also In re Millennium Lab Holdings II, LLC*, 562 B.R.

614, 626 (Bankr. D. Del. 2016).

The information Kevin and Edel say they seek can be broken into the following

categories: information about E Kelly's actions, information about their own claims, and

information about the Lenders' liens.  However, they have failed to establish cause to examine E

Kelly on any of these topics.  First, it is appropriate to not allow Kevin and Edel to ask any

questions at the Examination about their prior pending litigation with her, as doing so may be

sought to further Kevin and Edel's interests in the pending litigation; that discovery should be

sought in the Kelly Litigation.  To the extent they believe that information about her actions may

create claims for the NYNM estate, the UCC is well suited to conduct that interrogation.

Further, as Kevin and Edel have both filed multiple proofs of claim and Debtors have

filed the Subordination Adversary, to the extent that fact discovery is sought to advance their

individual claims, that discovery should be sought through the more formal discovery

procedures, not through a 2004 exam. *See* Part VII of the Federal Rules of Bankruptcy

Procedure and Rule 9014.

As for seeking information about the Lenders' liens and claims, Kevin and Edel have

failed to demonstrate good cause for why that information would be sought from E Kelly rather

than the Lenders, especially since Kevin and Edel allege that a Uniform Commercial Code

financing statement was not signed by NYNM in favor of the Lenders, and do not allege that E

Kelly signed such a document. Moreover, because the Court is being asked to approve the

Standing Motion settlement with the Lenders as part of the plan, that discovery could be sought

in the context of confirmation as a contested matter, rather than through Rule 2004. Finally, if

the pending Standing Motion settlement is approved, any further challenge to the Lenders' liens

and claims would be precluded. Thus, Kevin and Edel have failed to establish good cause to

interrogate E Kelly at her examination.

This Court has previously limited a Rule 2004 examination to document production

where a pro se debtor sought to conduct an examination of and obtain documents from her

former spouse where the debtor and former spouse had been embroiled in a pre-petition divorce

and the debtor had litigation against the former spouse pending in federal district court. The

Court entered an Order (the "2004 Order") granting in part the debtor's 2004 application, and

later denied a motion to reconsider the 2004 Order. *In re Lynch*, No. 15-74795-AST, 2018 WL

6132504, at *3 (Bankr. E.D.N.Y. Nov. 19, 2018). In the underlying 2004 Order, the Court stated

"given that the information required to be produced should be contained in documents [in

connection with the pre-petition divorce], and given the high level of acrimony between Debtor

and [her former spouse], this Court has determined that an oral examination would not benefit

the administration of this estate or advance the just, speedy and inexpensive determination of the

issues presented, but could instead foment additional satellite litigation over the conduct of the examination. *See* Bankruptcy Rule 1001." *In re Lynch*, No. 15-74795-AST (Bankr. E.D.N.Y. Feb. 23, 2018).

The Court considers the documents sought by the UCC differently than the interrogation. E Kelly has not objected to the subpoena served by the UCC.  Kevin and Edel assert that the document request demands a series of documents which they "previously demanded but that Elizabeth failed to produce."[4] [dkt item 636 para 5]  E Kelly has not argued nor demonstrated that allowing Kevin and Edel to obtain copies of documents that E Kelly produces to the UCC would constitute abuse or harassment.  In addition, E Kelly does not assert that allowing Kevin and Edel to obtain a copy of the transcript of the Examination would constitute abuse or harassment.[5]

No party has addressed the issue of who may attend the Examination, or asserted that the mere attendance of Kevin and Edel at the Examination would violate Rule 2004.  There appears

---

[4] Specifically, Kevin and Edel assert that the UCC has requested documents in the following categories which they previously requested and did not receive; the Court is not finding that E Kelly failed to produce any such documents, only noting the allegation:

Request No. 1: All Documents concerning the allegations of fraud or mismanagement against NYNM or its Providers, including the allegations in paragraphs 80 through 82 of the Kevin and Edel Kelly Complaint

Request No. 6: All Documents concerning NYNM's financial statements (including income statements, balance sheets, statements of retained earnings, cash flow statements, and profit and loss reports) between January 1, 2014 and the Petition Date.

Request No. 7: All Documents and Communications Concerning any potential sale of NYNM to purchasers other than the Debtor prior to March 10, 2017.

Request No. 11: All Documents and Communications Concerning any subpoena to NYNM between January 1, 2014 and the date hereof.

Request No. 13: All Documents and Communications Concerning Edel Kelly's and/or Kevin Kelly's rights to payments from any of the Debtors.

[dkt item 636 para 5]

[5] Neither party has argued that this Court should conduct an analysis under FRCP Rule 26(c) as to whether a protective order should be issued prohibiting the attendance of Kevin and Edel; thus, the Court considers the E Kelly objection solely under the auspices of Rule 2004 as constituting abuse or harassment.

to be limited case law on the subject of who may attend a 2004 examination.  Several courts that

have discussed the procedures of 2004 examinations have stated they are public proceedings.  *In*

*re Olsen*, 251 B.R. 441 (B.A.P. 10th Cir. 1999) ("Historically, the creditor or the debtor himself

have been given the opportunity to view testimony from such proceedings as well as a chance to

view any books or records in the possession of the trustee.") (citing *In re Saur*, 122 F. 101

(S.D.N.Y. 1903)); *See In re Samuelsohn*, 174 F. 911 (W.D.N.Y. 1909) (A creditor of a bankrupt

is entitled to information even though claim is not formerly proved.)  At least one court has

stated that "Rule 2004 examinations …  were historically public proceedings and … public

access plays [a] significant role in the bankruptcy process."  *In re Symington*, 209 B.R. 678, 681–

82 (Bankr. D. Md. 1997) (allowing news media "to view the fruits of a document production

pursuant to Rule 2004," in a case involving alleged criminal misconduct committed by a debtor

while serving as the Governor of Arizona); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R.

702, 712 (Bankr. S.D.N.Y. 1991)(granting receiver or conservator's motion to receive the

testimony and documents obtained in the committees' 2004 examinations, subject to specific

objection.)  In addition, Section 107 of the Bankruptcy Code provides that, subject to certain

limitations, papers filed in and dockets generated by bankruptcy cases are generally to be open to

the public, although that section does not speak to examinations conducted under Rule 2004.

As in *Lynch*, the pleadings and proceedings before this Court demonstrate a high degree

of acrimony between family members E Kelly and Kevin and Edel, which could be exacerbated

by the questioning of E Kelly by Kevin and Edel at the Examination.  Further, any hostility

between these persons could detract from the core purpose of the Examination, which is for the

UCC to obtain information related to E Kelly's pre-petition operation of NYNM, the pre-petition

sale of NYNM to Orion, and information about potential claims against third parties in

connection with the NYNM acquisition.  Additionally, as discussed above, Kevin and Edel can

seek the discovery they need in the multiple pending disputes they have with E Kelly and

Debtors.

As for Kevin and Edel's broad assertion that the UCC "has consistently acted in ways

that directly undermine the interests of NYNM's creditors to benefit the contradictory interests

of creditors of NYNM's corporate parents," they have failed to muster any evidence to support

that assertion.  This allegation is made to bolster their litigation position in the pending Motion to

Reconsider, which, in sum, is that NYNM's assets should not be encumbered by the Lenders'

liens or other liabilities of the other Debtors; this position, if adopted, could be to Kevin and

Edel's economic advantage.

In addition, to the extent that Kevin and Edel believe that having one UCC represent all

of the Debtors, including NYNM, is improper, their recourse was to either have asked this Court

to require an additional committee in the NYNM case and/or to require a change to the

composition of the NYNM UCC.  The Court may "order the appointment of additional

committees of creditors or of equity security holders if necessary to assure adequate

representation of creditors or of equity security holders," 11 U.S.C. § 1102(a)(2), or "order the

United States trustee to change the membership of a committee appointed under this subsection,

if the court determines that the change is necessary to ensure adequate representation of creditors

or equity security holders." § 1102(a)(4).  *In re JNL Funding Corp.*, 438 B.R. 356, 361-63

(Bankr. E.D.N.Y. 2010)(noting that judicial review of action by the UST in carrying out a power

specifically delegated by Congress, such as composition of a creditors committee, should be

under the arbitrary and capricious standard).  *See AOG Entm't,* 558 B.R. at 109 (denying the

creditor of a debtor's subsidiary's motion to conduct 2004 examination to investigate pre-petition

liens where the committee had previously investigated liens, entered into a settlement with the debtor and secured creditor, and the movant had not challenged the composition of the committee).  Kevin and Edel did not seek an additional committee or a change to the NYNM UCC, and have thus waived any complaint about the composition of the UCC.

For the reasons outlined, it is hereby

**ORDERED**, that Kevin and Edel may attend the Examination, but may not question E Kelly, object to any questions or answers or otherwise participate in the Examination; and it is further

**ORDERED**, that Kevin and Edel may at their own expense obtain copies of any documents that E Kelly produces to the UCC that are not produced under a protective order, and may at their own expense obtain a copy of the transcript of the Examination; and it is further

**ORDERED**, that this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order.



**Dated: January 24, 2019**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**