**UNITED STATES BANKRUPTCY COURT**
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| ORION HEALTHCORP, INC. | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLGIES, INC. | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | Case No. 18-74545 (AST) |
| | |
| Debtors. | (Joint Administration) |

-------------------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF OBJECTION TO**
**DEBTOR'S THIRD AMENDED PLAN OF LIQUIDATION**

**MUCHMORE & ASSOCIATES PLLC**
217 Havemeyer Street, 4th Floor
Brooklyn, NY 11211
(917) 932-0299

1

## INTRODUCTION

Kevin and Edel Kelly ("Kellys" or "the Kellys") hold unsecured claims against the NYNM estate. The circumstances of their claims have been extensively briefed in this case.[1] The Kellys only have claims on the NYNM estate, and have never had any dealings with any of the other debtors jointly administered in this case. The Kellys now object to the confirmation of the Debtors' Third Amended Plan of Liquidation ("The Plan"), because confirmation would amount to de facto substantive consolidation of NYNM with the other debtors, resulting in grossly inequitable treatment of the Kellys and the other unsecured creditors of NYNM. The plan also discriminates against NYNM unsecured claim holders without their consent, in violation of Section 1123(a)(4). Therefore, this objection should be sustained, and the Plan should not be confirmed.

## ARGUMENT

**I.   The Chapter 11 Plan Should Not Be Confirmed Because It Amounts to An Improper Substantive Consolidation.**

The Plan proposes to collect the assets of NYNM and redistribute these assets to the secured creditor of the other debtors, thus reducing the secured obligations of the other estates, and correspondingly increasing the distributions to claimholders of the other estates.[2] The Plan is unclear on whether each claim against each of the Debtors is treated as a separate claim against each applicable debtor's estate for purposes of voting.[3] However, the Plan is clear that all of NYNM's assets—approximately $13.5 million in cash— will be used to pay the secured claim of Bank of America, along with certain other lender parties related to Bank of America ("B of A" or

---

[1] Kevin Kelly and Edel Kelly's Objection to 363 Sale, Doc. 23, Index No. 8-18-74545-ast; Kevin Kelly and Edel Kelly's Motion to Modify DIP Order, Doc. 513, Index No. 8-18-71748-ast; Kevin Kelly and Edel Kelly's Cross-Motion for Summary Judgment, Doc. 9, Index No. 18-08154-ast; Kevin Kelly and Edel Kelly's Response to Motion to Deny Participation Request, Doc. 631, 636, Index No. 8-18-71748-ast
[2] Chapter 11 Plan, ECF Doc. 646-2, at Page 13.
[3] *See In re Sabine Oil and Gas Corp.* 555 B.R. 180 (Bankr. S.D.N.Y. 8/16/2016).

the "Lenders").[4] However, NYNM never received the proceeds of any loan from B of A, and never needed any such loan, because it was solvent when it was sold. The secured claim of Bank of America arises entirely through the prepetition operations of the non-NYNM debtors. NYNM had a surplus before it was sold to NYNM Acquisition, LLC and subsequently shackled to the B of A loan. Nevertheless, the Debtors seek to use the assets of this otherwise independent and unrelated estate to pay down the secured claim that exists across multiple estates—to the direct detriment of the NYNM unsecured claim holders. Using the NYNM assets to satisfy the B of A secured claim, as proposed by the Third Amended Plan, thus amounts to de facto substantive consolidation.[5] The Debtors cannot carry their burden of proof to show substantive consolidation is appropriate in this instances, therefore the Plan should not be confirmed.

    **A.    Substantive consolidation should not be ordered when the creditors did not deal with the debtors as single economic unit and did not rely on their separate identity in extending credit.**

Substantive consolidation creates a strong "possibility of unfair treatment of creditors who have dealt solely with the [companies] having a surplus as opposed to those who have dealt with the related entities with deficiencies."[6] "As substantive consolidation may place creditors of one debtor on parity with creditors of a less solvent debtor, '[t]he power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others.'"[7] The burden of proving the appropriateness of substantive consolidation is on the debtor.[8]

---

4 *Id;* Third Amended Plan of Liquidation, ECF Doc 646-1, at p. 66; Bank of America's secured claim exceeds the value of the estate.
5 *In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062 (2d Cir. 1970); *see also In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 591 (D.Del. 6/16/2009) (holding: Proposed Chapter 11 plan that aggregated various debtor entities into different debtor classes, and that required creditors with claims against debtors that had been placed within same class to compete against each other for payment of their claims from consolidated pool of assets, effected an improper "substantive consolidation" of debtors and could not be confirmed.)
6 *In re Continental Vending Mach. Corp.*, 517 F.2d 997, 1001 (2d Cir. 1975).
7 *In re Republic Airways Holdings, Inc.,* 565 B.R. 710 (Bankr. S.D.N.Y. 4/17/2017), quoting *Chem. Bank N.Y. Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966).
8 *In re Republic Airways* at 717; *See In re Jennifer Convertibles, Inc.,* 447 B.R. 713, 723 (Bankr. S.D.N.Y. 2011).

To determine whether to approve substantive consolidation bankruptcy courts traditionally have considered a variety of factors, including:

> [t]he presence or absence of consolidated financial statements; the unity of interest and ownership among various corporate entities; the degree of difficulty in segregating and ascertaining individual assets and liabilities; the transfers of assets without formal observance of corporate formalities; the commingling of assets and business functions; the profitability of consolidation at a single physical location; and the disregard of legal formalities.[9]

"In *In re Augie/Restivo Baking Co.,* the Second Circuit distilled these considerations into two critical inquiries: whether (i) 'creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit'; or (ii) 'the affairs of the debtors are so entangled consolidation will benefit all creditors.'"[10]  A critical review of the facts pertaining to NYNM shows substantive consolidation is not appropriate.

### 1. The unsecured creditors of NYNM did not deal with NYNM and the other debtors as a single economic unit.

If the Debtors' Third Amended Plan of Liquidation is approved, B of A "would hold an allowed secured claim of $50 million and an allowed unsecured claim of $107 million against all Debtors, including NYNM."[11] The Kellys had no dealings with any debtor other than NYNM. Their claims arise because of the March 2017 sale of NYNM to NYNM Acquisition, LLC—they were never paid for their interests in the company. In August 2017, once NYNM Acquisition, LLC completed the purchase of NYNM, it pledged NYNM's assets to the existing loan from Bank of America[12]. On July 5th, 2018, it filed the voluntary petition. Shortly after the NYNM petition, NYNM sold substantially all its assets to HealthTek Solutions, LLC for $16.5 million.

---

9 *In re Republic Airways* at 717 (internal citations omitted).
10 *Id* citing *Augie/Restivo*, 860 F.2d at 518.
11 Decision and Order, ECF Doc 671, citing ECF Doc. 644, Section III. R.
12 Joinder Agreement, ECF Doc. 9-4, Index No. 8-18-08154-ast

As of the date hereof, the NYNM's counsel holds approximately $13.5 million in remaining sale proceeds in trust.[13]

The Kellys' unsecured claims represent over 90% of the general, unsecured non-priority claims on the estate. The Kellys' dealt exclusively with NYNM, because NYNM had no relationship with the other debtors until the March 2017 sale.[14] Thus, the Kellys claims arose upon the sale transaction, but they never dealt with the Debtors as a single economic unit in extending any credit. Therefore, the first part of the *Augie/Restivo* inquiry should lead the Court to reject the Plan to the extent that it effects a substantive consolidation of NYNM with the other debtors.

### 2.     The creditors of NYNM relied on its separate identity.

The claims of the creditors of NYNM all arose before it was purchased and re-sold by NYNM Acquisition, LLC. Likewise, all the claims of the creditors of NYNM arose before NYNM Acquisition, LLC pledged the assets of NYNM to Bank of America.[15] Before these events, NYNM was an entirely separate and independent company. Therefore, the creditors of NYNM necessarily relied on its separate identity when their claims arose. Following *Augie/Restivo*, these facts should lead the Court to reject the confirmation of the Plan as an improper substantive consolidation.

### B.    Substantive consolidation should not be ordered when it would not benefit all creditors.

If, "the affairs of the debtors are so entangled consolidation will benefit all creditors," then substantive consolidation may be justified.[16] In this instance, consolidation cannot be justified on the basis that it would benefit all creditors of NYNM. The de facto substantive

---

[13] Decision and Order, ECF Doc 671.
[14] Chapter 11 Plan. ECF Doc. 646-2, at Introduction.
[15] Joinder Agreement, ECF Doc. 9-4, Index No. 8-18-08154-ast
[16] *In re Republic Airways* at 717, quoting *Augie/Restivo*.

consolidation contained in the Plan would only benefit B of A, but it would result in no distribution to the unsecured creditors of NYNM—chiefly, the Kellys. Furthermore, the affairs of NYNM are substantially distinct from the other Debtors. The entire estate is comprised only of the cash proceeds of the sale to Healthtek. There is no entanglement that would be avoided though consolidation. Therefore, the Court should reject the confirmation of the Plan as an improper substantive consolidation of NYNM with the other debtors.

### C. Substantive consolidation should not be ordered without the debtors carrying their burden to prove the appropriateness of consolidation.

The burden of proving the appropriateness of substantive consolidation is on the debtor.[17] Here, the debtor, NYNM, has not attempted to prove the burden of substantive consolidation. Rather, it has attempted to foist consolidation on its creditors through the terms of the Plan. Perhaps the Debtors recognize the requirements for an order of substantive consolidation cannot be shown in this case, and have endeavored to achieve the same ends through the terms of the Plan. Regardless of the reason, the Debtors have not put forth evidence to show that consolidation is appropriate. Without such evidence, the plan should not be confirmed.

### D. Substantive consolidation should not be ordered when the inequities of consolidation outweigh the practical difficulties of maintaining separation.

"[S]ubstantive consolidation should be ordered where the inequalities of substantive consolidation are outweighed by the practical difficulties of tracing complex transactions between interrelated corporate entities."[18] In the case of the NYNM estate, the inequities are clear, and the practical difficulties of separation minimal. Therefore, the plan should not be confirmed on the basis that it improperly substantively consolidates NYNM.

---

17 *Id.*
18*In re Republic Airways* at 717, citing *In re Drexel Burnham Lambert Grp. Inc.*, 138 B.R. at 764–65.

> **1.   The Plan deprives the unsecured creditors of NYNM of any distribution in favor of paying the secured claims that did not benefit NYNM in the first place.**

As discussed above, the value of the NYNM estate does not exceed $13.5 million—all of which is held in cash in trust by counsel for Debtors. The secured claim of B of A amounts to $50 million. However, this debt arises solely due to the operations of the non-NYNM Debtors. Yet, the plan calls for all of NYNM's assets remaining after the satisfaction of priority claims to be paid toward the secured claim of B of A.[19] Thus, the unsecured claimants of NYNM are unfairly wiped out. In the case of the Kellys—whose claims exceed 90% of the total outstanding unsecured claims—this is particularly inequitable because they were never paid for the taking of their property in the first place. If part of the B of A loan proceeds (the Prepetition Credit Agreement) were used to finance the purchase of NYNM, then some of those proceeds should have been paid to the Kellys, in which case they would not be claimants to the estate at all.[20] Since they have not been paid, basic equitable principles mandate that the B of A secured claim should not be paid out of the NYNM assets.

> **2.   There are no practical difficulties in maintaining NYNM as a separate estate.**

The B of A secured claim should not attach to the NYNM estate, and all NYNM claimants should be paid 100%. This is easily accomplished if the B of A claim is removed from the distribution scenario: the NYNM estate consists of tens of millions of dollars more (held in cash) than the total of all priority and non-priority, non-B of A claims. In such an event, the equity security owners of NYNM would receive a surplus, which could then be used to satisfy the B of A claim. The Kellys recognize the foregoing could be construed as an argument for equitable subordination, an action that they have already brought.[21] If the B of A claims become

---

[19] Third Amended Plan of Liquidation at p. 66.
[20] *Id* at p. 22.
[21] Index Nos. 8-18-08154-ast, 8-18-08155-ast

equitably subordinated to those of the Kellys, it would moot this objection, because in that case the NYNM plan would not present a de facto substantive consolidation. These issues are substantially interrelated but may be cured by first denying the confirmation of the Third Amended Plan as to NYNM, and then putting forth a NYNM-only plan that pays the Kelly ahead of B of A—whether via an order of equitable subordination or otherwise. This is a simple, clean solution that results in fair treatment for all parties involved, and it does not increase the difficulties of tracing complex transactions between interrelated corporate entities, or otherwise unduly complicate the reorganization of NYNM.

Alternatively, a plan could be proposed that carves-out sufficient funds from the NYNM estate to pay the Kellys should they prevail in their action for equitable subordination. In such an event, a revised plan could be easily drafted and set for confirmation. If the Kellys do not prevail in their action for equitable subordination, then no prejudice will result to any other party in interest, because the carved-out funds could then be paid to according to the Plan. Conversely, if the plan were approved and carried out as written, it would render the Kellys' action for equitable subordination moot. Maintaining NYNM as a separate estate does not really present many practical difficulties, and it could substantially redress the inequities presented to the Kellys by the current Plan. Therefore, to the extent the current Plan improperly consolidates NYNM with the other debtors via the B of A loan, the Plan should not be confirmed.

## II. The Plan discriminates against NYNM unsecured claim holders without their consent in violation of Section 1123(a)(4).

A Chapter 11 plan is not confirmable if claims within the same class do not receive same treatment, and if holders of those claims being treated less favorably have not consented to the discrimination.[22] Some unsecured creditors are assured distribution under this plan, because other

---

[22] 11 U.S.C.A. § 1123(a)(4).

unsecured creditors' claims will be wiped out through the use of subsidiary assets—such as the NYNM sale proceeds—to pay down the secured claims of B of A[23]. This results in unequal treatment prohibited by Section 1123(a)(4).

Whether a proposed Chapter 11 plan provides the same treatment for each claim in class, as required for confirmation, is not dependent on whether all of the claimants in class obtain the same thing, but whether they have the same opportunity.[24] The unsecured creditors of NYNM do not have the same opportunity to receive distributions as the unsecured creditors of other subsidiaries, because of the effect of the use of all of NYNM's assets to pay down the B of A loan.[25] The Plan attempts to create the appearance that the creditors within each class of each estate are being treated equally. But the formal segregation of the estates in the plan obscures the fact that the B of A loan is secured by the assets across several of the debtors. Therefore, each dollar that one estate—such as NYNM—pays toward the satisfaction of the secured portion of the B of A loan thus increases the dividend available to the unsecured creditors of other estates.

## CONCLUSION

The Third Amended Plan of Liquidation has the effect of substantively consolidating NYNM with the other estates by using all of NYNM's assets to pay down a secured claim that also burdens the other estates, but which never benefited NYNM itself or its creditors. The Debtors have not attempted to carry their burden to show the appropriateness of substantive consolidation, and the record otherwise shows that the factors supporting substantive

---

[23] Third Amended Plan of Liquidation at p. 66.
[24] *Id; See In re Republic Airways* at note 13, quoting *Ad Hoc Comm. of Personal Injury Asbestos Claimants v. Dana Corp. (In re Dana Corp.),* 412 B.R. 53, 62 (S.D.N.Y. 2008).
[25] 11 U.S.C.A. § 1123(a)(4); *See In re New Century TRS Holdings, Inc.,* 407 B.R. 576 (D.Del. 6/16/2009): Multi-debtor protocol which Chapter 11 debtors had negotiated with creditors holding the same claim against more than one debtor, and which was included in joint liquidating plan that debtors had proposed, which required such creditors to waive the claims that they had to distribution in one class in exchange for a 130% distribution on claim that they possessed in other class, unfairly discriminated in favor of these creditors and against other creditors in class from which 130% distribution was made without these other creditors' consent, in violation of plan confirmation requirement; it did not matter that overall effect on creditors receiving this 130% distribution may have been negative, and that creditors receiving this 130% distribution may have consented to this "negative" treatment.

consolidation are not present here. The Plan also violates the requirements of Section 1123(a)(4), because the unsecured creditors of NYNM do not have the same opportunity to receive distributions as the unsecured creditors of other subsidiaries.

Dated: January 29, 2019
      Brooklyn, NY

                                    **MUCHMORE & ASSOCIATES PLLC**
                                    Counsel for Kevin Kelly and Edel Kelly

                                    By: /s/ Maximilian Travis                        .
                                         Maximilian Travis, Esq.
                                    217 Havemyer Street, 4th Floor
                                    Brooklyn, NY 11211
                                    (917) 932-0299