Thomas R. Califano, Esq.
Rachel Nanes, Esq. (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com
            rachel.nanes@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------- x

**DECLARATION OF TIMOTHY J. DRAGELIN IN SUPPORT OF CONFIRMATION
OF THE DEBTORS' THIRD AMENDED JOINT PLAN OF LIQUIDATION
<u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

I, Timothy J. Dragelin, hereby declare as follows:

1.      I am the Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO") of the above-captioned debtors and debtors in possession (the "Debtors").  I have served as the Debtors' CEO and CRO since October 2017.

2.      I am a Senior Managing Director in the Corporate Finance and Restructuring practice at FTI Consulting, Inc. ("FTI"), where I lead FTI's Corporate Finance and Restructuring's Healthcare Industry practice and have more than 20 years of experience in restructuring matters, including representing debtors and creditors in bankruptcy and out-of-court restructurings.  My experience includes bankruptcy planning and management, turnaround consultation, interim management, lender advisory, buy-side due diligence, sell-side mandates, valuation, process improvement, forensic investigations, and litigation advisory work.

3.      In my capacity as CEO and CRO, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and books and records.  I am above 18 years of age and I am competent to testify.

4.      I submit this Declaration in support of confirmation of the *Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 6, 2019 [D.I. 645] (as further modified, amended, and/or supplemented from time to time, the "Plan").[1]

5.       I am familiar with the terms and provisions of the (i) Plan, (ii) *Third Amended Disclosure Statement for Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 6, 2019 [D.I. 644] (the "Disclosure Statement"),

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

(iii) *Notice of Filing of Plan Supplement to the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 6, 2019 [D.I. 647] (as further modified, amended, and/or supplemented from time to time, the "First Plan Supplement"); and (iv) *Notice of Filing of Second Plan Supplement to the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of January 31, 2019 [D.I. 680] (as further modified, amended, and/or supplemented from time to time, the "Second Plan Supplement" and together with the First Plan Supplement, the "Plan Supplements").

6.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the operations of the Debtors, and upon information supplied to me by the Debtors and their advisors.  If called upon, I would testify competently to the facts set forth in this Declaration.

7.      I have been advised of the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code by the Debtors' legal advisors.  Based upon my personal involvement in the plan process in the Chapter 11 Cases and my discussions with the Debtors' advisors, I believe that the Plan was developed and negotiated in good faith, complies with the applicable provisions of the Bankruptcy Code and is in the best interests of Creditors.

## I.      GENERAL BACKGROUND

8.      On March 16, 2018 (the "Petition Date"), certain of the Debtors (the "Initial Debtors") filed voluntary petitions with the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

9.      On July 5, 2018 (the "NYNM Petition Date"), New York Network Management, L.L.C., an affiliate of the Initial Debtors ("NYNM Management") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

10.     On April 4, 2018, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 82].  On July 26, 2018, the U.S. Trustee appointed the same Committee in the Chapter 11 Case of NYNM Management [D.I. 433].  No trustee or examiner has been appointed in the Chapter 11 Cases.

11.     As discussed in detail in the Disclosure Statement and in various documents filed with the Court, after acquiring several businesses, the Debtors' former CEO, Parmjit "Paul" Parmar ("Parmar") took Constellation Healthcare Technologies, Inc. ("CHT"), the direct or indirect parent company of the Debtors (and itself a Debtor), public on the London Stock Exchange's Alternative Investments Market (the "AIM") and then proceeded to raise equity for additional acquisitions, some of which are believed to be fictitious.  Parmar then took CHT off the AIM, by securing $82.5 million of cash (as equity) and causing the Initial Debtors to borrow approximately $130 million in secured debt, the majority of which is believed to have been paid to Parmar (as a shareholder, through entities under his control).  The Debtors borrowed such funds based upon financials subsequently discovered by the Debtors' new management and their professionals to be largely fictitious and involving numerous sham companies and fabricated transactions, revenues, and customers.

12.     As a result, the Debtors became overleveraged and unable to service their debt obligations.  The Debtors' financial distress was compounded by their lack of integration between business lines and the abrupt resignations of Parmar and other members of the Debtors' management when their fraudulent activities were discovered leaving the Debtors without any leadership with institutional knowledge to operate the Debtors' businesses.

13.    Therefore, on the Petition Date and NYNM Petition Date, respectively, the Debtors commenced these Chapter 11 Cases to (i) market and sell their assets, (ii) wind down their businesses, and (iii) pursue claims against the individuals and entities that contributed to the Debtors' demise for the benefit of all their Creditors.

14.    To that end, with the support of its key Creditor constituents, on March 22, 2018, the Initial Debtors retained Houlihan Lokey Capital, Inc. as their investment banker to, among other things, commence a marketing and sale process for substantially all of the Initial Debtors' assets.  After marketing their assets and engaging in a competitive auction, the Initial Debtors sold substantially all of their assets related to their revenue cycle management business line to Medical Transcription Billing, Corp. for $12.6 million.  Shortly thereafter, NYNM Management sold substantially all of its assets related to its independent physician association business to Healthtek Solutions, LLC for $16.5 million.  The proceeds of Initial Debtors' sale were used, in part, to satisfy the Debtors' DIP Loan and administrative expenses.

15.    During the Chapter 11 Cases, the Debtors commenced three (3) adversary proceedings against numerous parties seeking damages in excess of $150 million.  In particular, the Debtors have brought two (2) adversary proceedings against prior shareholders, Parmar, and others seeking to recover proceeds or damages caused by fraudulent transfers.  The Debtors also commenced an action against Robinson Brog Leinwand Greene Genovese & Gluck, P.C., A. Mitchell Greene and Adam Greene, the Debtors' former counsel, for, among other causes of action, legal malpractice, breach of fiduciary duties, and unjust enrichment.  The three adversary proceedings are in the early stages of litigation.  The Debtors believe there are additional significant causes of action to pursue in connection with the fraud perpetrated by the Debtors' former management as well as against various insiders and their professionals.

16.    Additionally, the Debtors commenced an adversary proceeding against Kevin Kelly and Edel Kelly seeking mandatory subordination of their claims against NYNM Management under section 510(b) of the Bankruptcy Code.

## II.    THE PLAN AND DISCLOSURE STATEMENT.

17.    On September 4, 2018, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Standing, and Authority to Prosecute Certain Causes of Action on Behalf of the Debtors and Their Estates* [D.I. 504] (the "Standing Motion") in which the Committee indicated that "the Committee has conducted an investigation of potential claims and defenses that could be asserted against the [Prepetition Secured Lenders]" and sought standing to file a Complaint against the Secured Lenders based upon that investigation.

18.    The Plan embodies an extensively negotiated settlement of the Committee's Standing Motion among the Committee, the Secured Lenders and the Debtors (the "Standing Motion Settlement") that provides as follows:

a.    The Secured Lenders' Allowed Secured Claim will be reduced from approximately $157 million to $50 million;

b.    The Secured Lenders will have an Allowed Secured Lender Deficiency Claim, which will share *pari passu* with all other unsecured Creditors of the Debtors' Estates;

c.    The Secured Lenders and the Administrative Agent will assign any and all Causes of Action they may have against any Person who is not a Debtor, related directly or indirectly to the Debtors and their Estates, whether arising before or after the Petition Date, to the Liquidating Trust;

d.    The Secured Lenders will not be entitled to any further fees, charges or expenses;

e.    The Secured Lenders will waive their adequate protection claim(s);

f.    The Secured Lenders have agreed to waive any and all other amounts due or to become due, except for the Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim;

g.    The Secured Lenders have agreed to subordinate the Allowed Secured Lender Claim to Priority Claims and the administrative expenses of the Liquidating Trust; and

h.    The Secured Lenders will fund the Estates with remaining Cash Collateral in an amount appropriate to fund litigation recoveries as determined by the Liquidating Trustee and the Liquidating Trust Oversight Board after confirmation of the Plan.

19.    I believe that the Standing Motion Settlement is in best interests of the Estates and Creditors.

20.    Additionally, the Plan provides that the Debtors' Causes of Action and all other unencumbered Assets remaining as of the Effective Date will be transferred to a Liquidating Trust for the benefit of the Secured Lenders and Holders of Allowed General Unsecured Claims and Subordinated Claims pursuant to the Plan, Confirmation Order and Liquidating Trust Agreement. The Liquidating Trust will be managed by a Liquidating Trustee who will be responsible for liquidating the Liquidating Trust Assets and making Distributions to Holders of Allowed Claims, as well as all other administrative tasks necessary for the ultimate resolution of the Debtors' Chapter 11 Cases, in accordance with the terms of the Plan and the Liquidating Trust Agreement.

21.    As reflected in the First Plan Supplement, Howard Ehrenberg, Esq. of SulmeyerKupetz, P.C., has been designated by mutual agreement of the Secured Lenders and the Committee, after consultation with the Debtors, as the proposed Liquidating Trustee.  Mr. Ehrenberg was selected as the proposed Liquidating Trustee after interviewing a number of candidates with the Secured Lenders and Committee.

22.    Substantial contributions and concessions from numerous parties were required to achieve the submission of the Plan.  I believe the Plan presents the best possible chance for recovery for the Debtors' Creditors and will allow for a prompt resolution of the Debtors' Chapter 11 Cases.

### III.    SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS.

#### A.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code.

23.    I understand from the Debtors' legal advisors and believe, based on my review of the Plan and related documents and my discussions with those advisors, that the Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

##### i.    The Plan Complies with Section 1122 of the Bankruptcy Code.

24.    I understand that section 1122 of the Bankruptcy Code permits a plan to classify various Claims and Interests into different classes, so long as all the Claims and Interests in a particular class are substantially similar.  With the exception of Administrative Expense Claims, Accrued Professional Compensation Claims, and Priority Tax Claims, which I have been informed by the Debtors' legal advisors need not be classified, Sections 3 and 4 of the Plan provide for the separate classification of Claims against and Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Interests.  *See* Plan §§ 3 and 4.

25.    It is my understanding that valid business, factual, and legal reasons exist for classifying the Claims and Interests into separate Classes under the Plan and that the Claims or Interests in each particular Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class.  Furthermore, the classification scheme created by the Plan is based on the similar nature of Claims or Interests contained in each Class and not on an impermissible classification factor.  Similar Claims have not been placed into different Classes in order to affect the outcome of the vote on the Plan.  Because I believe that the Debtors have valid reasons for separately classifying the Claims against and Interests in the Debtors, I believe that the Plan satisfies section 1122 of the Bankruptcy Code.

ii.        **The Plan Complies with Section 1123(a) of the Bankruptcy Code.**

26.    I understand that section 1123(a) of the Bankruptcy Code sets forth various requirements regarding the appropriate contents of a plan.  I believe that the Plan satisfies each of these requirements.

27.    Sections 3, 4 and 5 of the Plan (a) designate the different Classes of Claims and Interests, as required by section 1123(a)(1) of the Bankruptcy Code, (b) specify the Classes of Claims that are Unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code, and (c) specify the treatment of each Class of Claims and Interests that is Impaired, as required by section 1123(a)(3) of the Bankruptcy Code.  *See* Plan §§ 3, 4, and 5.

28.    Section 4 of the Plan provides for the same treatment of each Claim or Interest within a Class, as required by section 1123(a)(4) of the Bankruptcy Code.  *See* Plan § 4.

29.    Sections 6 and 7 of the Plan and various other provisions therein and in related documents set forth the means of the Plan's implementation, as required by section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (a) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee, (b) the transfer of the Liquidating Trust Assets to the Liquidating Trust, to be administered in accordance with the terms of the Plan and the Liquidating Trust Agreement for the benefit of the Liquidating Trust's Beneficiaries, and (c) procedures for making distributions to Holders of Allowed Claims.  *See* Plan §§ 6 and 7.  I believe that the proposed implementation steps have been carefully developed and designed to properly effect the Plan and that, as a result, the Plan provides adequate means for its implementation.

30.    As noted above, the Plan provides for the transfer of the Liquidating Trust Assets to the Liquidating Trust, to be liquidated and distributed in accordance with the Plan and the Liquidating Trust Agreement, and the subsequent dissolution of the Debtors.  Therefore, the Plan does not provide for the inclusion in the charter of the Debtors a provision prohibiting the issuance

of nonvoting securities. Nonetheless, because the Plan does not provide for the issuance of any securities, the issuance of nonvoting securities is impossible. Accordingly, I understand that section 1123(a)(6) of the Bankruptcy Code is inapplicable insofar as the Plan does not provide for the issuance of nonvoting equity securities.

31.     Finally, in Section 6.3 of the Plan and in the First Plan Supplement, the Debtors disclose the manner of selection and identity of the Liquidating Trustee, and I believe the appointment of the Liquidating Trustee is consistent with the interests of Creditors and with public policy. Accordingly, I understand that the Plan complies with section 1123(a)(7) of the Bankruptcy Code.

### iii.     The Plan Complies with Section 1123(b) of the Bankruptcy Code.

32.     I believe that section 1123(b) of the Bankruptcy Code permits various discretionary provisions to be included in a plan. Based on my review, I believe that the Plan's discretionary provisions are appropriate and satisfy this provision.

33.     In particular, consistent with section 1123(b)(1) of the Bankruptcy Code, Sections 3 and 4 of the Plan provide that: (a) the following Classes are Impaired and entitled to vote to accept or reject the Plan (collectively, the "Voting Classes"):

| Debtor | Impaired Classes Entitled to Vote |
|---|---|
| CHT | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Orion | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northeast Medical Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

| | |
|---|---|
| NEMS West Virginia | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Physicians Practice Plus | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Medical Billing Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Rand Medical Billing | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| RMI Physician Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Western Skies Practice Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Integrated Physician Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northstar First Health | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Vachette Business Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Consulting Associates | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Billing & Consulting | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

| NYNM Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| --- | --- |

(b) the following Classes are Unimpaired and not entitled to vote to accept or reject the Plan (collectively, the "Deemed Accepting Classes"):

| Debtor | Unimpaired Classes Deemed to Accept Plan |
| --- | --- |
| CHT | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Orion | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Northeast Medical Solutions | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| NEMS West Virginia | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Physicians Practice Plus | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Medical Billing Services | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Rand Medical Billing | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| RMI Physician Services | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Western Skies Practice Management | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Integrated Physician Solutions | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Northstar First Health | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Vachette Business Services | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Allegiance Consulting Associates | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Allegiance Billing & Consulting | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |

| | |
|---|---|
| NYNM Management | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |

and (c) the following Classes are Impaired and not entitled to vote (collectively, the "Deemed Rejecting Classes"):

| Debtor | Impaired Classes Deemed to Reject Plan |
|---|---|
| CHT | Class 7- Interests in CHT |
| Orion | Class 7- Interests in Orion |
| Northeast Medical Solutions | Class 7- Interests in Northeast Medical Solutions |
| NEMS West Virginia | Class 7- Interests in NEMS West Virginia |
| Physicians Practice Plus | Class 7- Interests in Physicians Practice Plus |
| Medical Billing Services | Class 7- Interests in Medical Billing Services |
| Rand Medical Billing | Class 7- Interests in Rand Medical Billing |
| RMI Physician Services | Class 7- Interests in RMI Physicians Services |
| Western Skies Practice Management | Class 7- Interests in Western Skies Practice Management |
| Integrated Physician Solutions | Class 7- Interests in Integrated Physician Solutions |
| Northstar First Health | Class 7- Interests in Northstar First Health |
| Vachette Business Services | Class 7- Interests in Vachette Business Services |
| Allegiance Consulting Associates | Class 7- Interests in Allegiance Consulting Associates |
| Allegiance Billing & Consulting | Class 7- Interests in Allegiance Billing & Consulting |
| NYNM Management | Class 7- Interests in NYNM Management |

34.    Section 6.4 of the Plan provides that the Debtors' equity interests in NEMS Acquisition, Physician Practice Plus Holdings, NYNM Acquisition, Northstar FHA, Phoenix Health, MDRX and Vega Medical Professionals shall be retained and transferred to the Liquidating Trust.

35.    Additionally, Section 9 of the Plan provides for the assumption and rejection of Executory Contracts and Unexpired Leases, and Sections 6.3 and 11.14 provide for the retention

of Causes of Action not expressly released under the Plan, thereby satisfying sections 1123(b)(2) and (3) of the Bankruptcy Code.

36.    As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Interests in the Voting Classes and Deemed Rejecting Classes. The Plan leaves unaffected the rights of Holders of Claims in the Deemed Accepting Classes.

37.    I understand that section 1123(b)(6) of the Bankruptcy Code permits a plan to include additional terms so long as they are not inconsistent with the other provisions of the Bankruptcy Code.  Accordingly, Section 11 of the Plan includes various release, exculpation, and injunction provisions that I understand are typically afforded to debtors and certain third parties under chapter 11 plans.  In particular, the Plan includes (a) the release by the Debtors of certain parties in interest, (b) the release by certain Holders of Claims of certain non-debtor third parties, (c) an exculpation provision, and (d) an injunction provision prohibiting parties from pursuing Claims or Interests otherwise released under the Plan.

38.    I believe these discretionary provisions are appropriate because, among other things, they are the product of extensive good faith and arm's length negotiations, are in exchange for good, valuable, and reasonably equivalent consideration, and are supported by the Debtors and various other parties in interest.  Moreover, the Ballots distributed to all Creditors in the Voting Classes contained an option to opt out of the third party releases in the Plan.

39.    For the reasons described in detail below, I submit that the release, exculpation, and injunction provisions of the Plan are necessary and appropriate under the circumstances.  I further understand that the release, exculpation, and injunction provisions of the Plan are not inconsistent with the Bankruptcy Code and, thus, I believe the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

### (a)    **Debtor Releases.**

40.    Section 11.3 of the Plan provides that, except as otherwise specifically provided in the Plan or Plan Supplements, the Debtors and their Estates will release any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' Chapter 11 Cases, the business or contractual arrangements between any Debtor and any of the Released Parties, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtor Released Claims"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.  Pursuant to this provision, the Debtors are releasing (i) the following professionals of the Debtors: DLA Piper LLP (US), FTI Consulting, Inc., Houlihan Lokey Capital, Inc., Hahn & Hessen LLP, Epiq Bankruptcy Solutions, LLC, and any Related Person to such professionals, with respect to services rendered before and after the Petition Date and NYNM Petition Date; (ii) the members of the Committee in their capacity as such and the Committee's professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including Pachulski Stang Ziehl & Jones LLP and CBIZ MHM, LLC and any Related Persons to such professionals; (iii) the Administrative Agent, the Secured Lenders, Moore & Van Allen, PLLC, Reed Smith LLP, Chapman and Cutler LLP and Carl Marks Advisors and any of Related Persons thereof, in each case solely with regard to any prepetition or postpetition conduct or activity relating to the Debtors

15

or Debtors in Possession; (iv) the Liquidating Trustee, any professionals retained by the Liquidating Trustee and any Related Person to the Liquidating Trustee or such professionals, (v) the Liquidating Trust, any professionals retained by the Liquidating Trust and any Related Person to the Liquidating Trust or such professionals, (vi) the Liquidating Trust Oversight Board, the members of the Liquidating Trust Oversight Board, solely in their capacity as such, and any Related Persons to members of the Liquidating Trust Oversight Board; (vii) Robert Rosenberg, solely in his capacity as the independent board member of the Debtors and with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession; and (viii) Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara in their capacities as officers and managers of the Debtors and with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession (collectively, the "Released Parties"). Any current or former Insider of any of the Debtors and any of their Related Persons, except Robert Rosenberg, Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara, are not included among the Released Parties.

41.     First, I believe there is an identity of interest between the Debtors and the Released Parties arising out of the shared "common goal" of confirming the Plan and implementing the transactions contemplated thereunder.

42.     Second, I believe that the releases set forth in Section 11.3 of the Plan are appropriate because the Released Parties have made substantial contributions to the Debtors' Chapter 11 Cases and efforts to maximize value for their Creditors, including but not limited to the Plan process.

43.     I also believe that the Debtors' Professionals, officers and manager have substantially contributed to the Debtors' Chapter 11 Cases. The work of these professionals has

required specialized knowledge and skill regarding the healthcare industry, as well as in substantive areas of bankruptcy law, corporate law and healthcare regulations.  The knowledge and understanding of these Professionals were essential to, among other things, the sale of substantially all of the Debtors' assets and the negotiation and formulation of the Plan.

44.　　The Committee and its professionals have also substantially contributed to the Debtors' Chapter 11 Cases as they have been required to, among other things, review and comment on the Plan, Disclosure Statement, and the Liquidating Trust Agreement in order to evaluate whether the Liquidating Trust and Plan were in the best interest of the unsecured Creditors in the Chapter 11 Cases.  The Committee and its professionals also participated in the negotiations that resulted in the Standing Motion Settlement.

45.　　The Secured Lenders and their professionals have also made substantial contributions to the Debtors' Chapter 11 Cases by, among other things, providing a DIP Loan to the Debtors, agreeing to the Debtors' continued use of Cash Collateral throughout the pendency of the Chapter 11 Cases, agreeing to compromise their Claims against the Estates as part of the Standing Motion Settlement and contributing the Assigned Causes of Action to the Liquidating Trust as part of the Standing Motion Settlement.

46.　　Based upon the foregoing, I believe the Released Parties' contributions and material concessions have allowed the Chapter 11 Cases to move expeditiously towards confirmation.  I believe that without these releases, the Released Parties would not have been willing to contribute to the Plan process, which would have eliminated the ability to commence the Chapter 11 Cases and propose the Plan.

47.     Accordingly, I believe that, under the specific facts and equities of these Chapter 11 Cases, the Debtors' release of the Released Parties constitutes a valid exercise of the Debtors' business judgment and should be approved.

**(b)     Third Party Releases.**

48.     Section 11.4 of the Plan provides for the release of the Released Parties by certain third parties of any and all liens, claims, causes of action, liabilities, encumbrances, security interests, interests or charges of any nature or description whatsoever based or relating to the Debtors' Chapter 11 Cases, or affecting property of the Debtors' Estates (as set forth more fully in Section 11.4 of the Plan, the "Third Party Releases").   The Third Party Releases apply only to those Persons who (I) (A) have voted to accept the Plan or who are presumed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code, or (B) are entitled to vote to accept or reject the Plan and who vote to reject the Plan, and (II) do not mark their Ballots as opting out of the Third Party Release under the Plan.   *See* Plan § 11.4.   The Third Party Releases do not encompass claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.

49.     The Third Party Releases were conspicuously included in the Plan, Disclosure Statement, and Ballot, and other notice materials, and Holders of Claims in the Voting Classes were given the opportunity to opt out of the Third Party Releases on their Ballots.  In addition, the Third Party Releases are not binding on any party that opted out of the Third Party Release. Therefore, I believe that the Third Party Releases should be approved.

**(c)     Exculpation.**

50.     Section 11.5 of the Plan provides for an exculpation limiting the liability of the Exculpated Parties for acts or omissions in connection with, related to, or arising out of the Debtors' Chapter 11 Cases.  The provision exculpates the Debtors and certain other parties that

18

have played significant roles in connection with these Chapter 11 Cases and the Plan.  Further, the exculpation provision does not relieve any party of liability for gross negligence or willful misconduct.

      51.     The term "Exculpated Parties" is defined in the Plan as each of: (i) the Debtors' professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including DLA Piper LLP (US), FTI Consulting, Inc., Houlihan Lokey Capital, Inc., Hahn & Hessen LLP, Epiq Bankruptcy Solutions, LLC and any Related Person to such professionals; (ii) the members of the Committee in their capacity as such and the Committee's professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including Pachulski Stang Ziehl & Jones LLP and CBIZ MHM, LLC and any Related Persons to such professionals; (iii) the Administrative Agent and the Secured Lenders solely in their capacity as creditors and parties in interest in these Chapter 11 Cases, Moore & Van Allen, PLLC, Reed Smith LLP, Chapman and Cutler LLP and Carl Marks Advisors and any of the Related Persons to such Secured Lenders, including attorneys and financial advisors solely in their capacity as advisors, creditors and parties in interest in these Chapter 11 Cases; (iv) the Liquidating Trustee, any professionals retained by the Liquidating Trustee and any Related Person to the Liquidating Trustee or such professionals, (v) the Liquidating Trust, any professionals retained by the Liquidating Trust and any Related Person to the Liquidating Trust or such professionals, (vi) the Liquidating Trust Oversight Board and the members thereof, solely in their capacity as such and any professionals retained by the Liquidating Trust Oversight Board; (vii) Robert Rosenberg, solely in his capacity as the independent board member of the Debtors; and (viii) Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara in their capacities as officers and managers of the Debtors.  Any current or former Insider of any of the Debtors and any of their Related Persons, except Robert Rosenberg, Timothy

J. Dragelin, Daniel S. Jones and Frank Lazzara, shall not have the benefit of the exculpation or releases granted pursuant to the Plan or the Confirmation Order.

52.      I played an important and active role in negotiating and formulating the Plan, have significantly contributed to the Plan and these Chapter 11 Cases, and the cooperation of each party is necessary to implement the provisions of the Plan.  The cooperation of the Exculpated Parties resulted in the maximization of recoveries available to Creditors.

53.      For the reasons articulated above, it is my opinion that the Exculpated Parties have substantially contributed to these Chapter 11 Cases and maximized the recoveries available to creditors.  Accordingly, I believe that the Exculpated Parties should be provided the exculpations set forth in Section 11.5 of the Plan.

**(d)      Injunction**.

54.      Section 11.6 of the Plan contains an injunction to enforce the releases and exculpation provisions in the Plan.  *See* Plan § 11.6.  Because I believe the releases and exculpation provisions are central to the Plan, I believe the injunction is also essential.  Thus, if the Bankruptcy Court finds that the releases and exculpation provisions are appropriate, I believe the Court should also find the injunction provision is appropriate.  Moreover, I believe that the injunction is narrowly tailored to achieve its purpose.

**iv.      The Plan Complies with Section 1123(d) of the Bankruptcy Code.**

55.      The Plan does not propose to cure any defaults.  Therefore, I believe the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

**B.      The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code.**

56.      Based on my discussions with the Debtors' legal advisors, I believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the orders of the Bankruptcy Court and other applicable law in formulating and

20

transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

### C.    The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code.

57.    I believe the Plan allows Holders of Allowed Claims to realize the highest possible recovery under the circumstances from the proceeds of liquidating the Liquidating Trust Assets, including the Causes of Action transferred to the Liquidating Trust.  As such, I believe the Plan was proposed with the legitimate and good faith purpose of providing the greatest possible distribution to the Debtors' Creditors.  Additionally, I believe the Plan has been proposed in compliance with all applicable laws, rules, and regulations.  Therefore, I believe the Plan satisfies the requirements of 1129(a)(3) of the Bankruptcy Code.

### D.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.

58.    Based on my discussions with the Debtors' legal advisors, I believe the Plan complies with section 1129(a)(4) of the Bankruptcy Code, as all payments made or to be made by the Debtors for services rendered and expenses incurred in connection with the Chapter 11 Cases, including, without limitation, all Accrued Professional Compensation Claims through the Effective Date, will be paid only after allowance of such Claims by the Bankruptcy Court to the extent not already approved and paid in accordance with orders of the Bankruptcy Court.

### E.    The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code.

59.    The identity of the Liquidating Trustee has been fully disclosed in the First Plan Supplement, and I believe the appointment of the Liquidating Trustee is consistent with the interests of Creditors and with public policy.  Accordingly, I believe that the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**F.      Section 1129(a)(6) of the Bankruptcy Code is Inapplicable.**

60.      Because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, I understand that section 1129(a)(6) is inapplicable.

**G.      The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code.**

61.      I understand that to satisfy the "best interests" test of section 1129(a)(7), with respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest in such Impaired Class (a) has voted to accept the Plan, (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the applicable Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (c) has agreed to receive less favorable treatment.

62.      I am familiar with and participated in the Debtors' efforts to conduct a hypothetical, reasonable, and good faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with the chapter 7 of the Bankruptcy Code (the "Liquidation Analysis"). I understand that the Liquidation Analysis was filed as Exhibit 3 to the Disclosure Statement.  The Liquidation Analysis reflects, among other things, the impact of the Standing Motion Settlement on the Creditors' potential recoveries as well as the additional administrative costs that the Estates would bear if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code.

63.      I believe that the Plan satisfies the "best interests test" because the Liquidation Analysis reflects that Holders of Claims or Interests will not receive or retain property on account of their Claim or Interests if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date that is more than such Holders will receive under the Plan.

**H.    The Plan Complies with Sections 1129(a)(8) and 1129(b) of the Bankruptcy Code.**

64.    As set forth in the *Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of February 1, 2019, filed contemporaneously herewith (the "Voting Certification"), the following Classes among the Voting Classes voted to accept the Plan (the "Accepting Classes"):

| Debtor | Impaired Classes That Voted to Accept the Plan |
|---|---|
| CHT | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Orion | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northeast Medical Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| NEMS West Virginia | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Physicians Practice Plus | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Medical Billing Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

| | |
|---|---|
| Rand Medical Billing | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| RMI Physician Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Western Skies Practice Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Integrated Physician Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northstar First Health | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Vachette Business Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Consulting Associates | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Billing and Consulting | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| NYNM Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

65.     As a result of the Deemed Rejecting Classes, I understand that the Plan does not meet the requirements of section 1129(a)(8) of the Plan.  Nevertheless, I understand that the Plan may still be confirmed because the Plan satisfies the "cram down" provisions of 1129(b) of the Bankruptcy Code.

66.     It is my understanding that a chapter 11 plan may be confirmed notwithstanding the rejection or deemed rejection by a class of claims or interests if the plan does not discriminate unfairly and is fair and equitable as to that class.  It is my further understanding that (a) the "fair and equitable" requirement is satisfied if the holders of claims and interests in classes junior to the rejecting classes are not receiving any property under the plan, and (b) the plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are substantially similar to those of that class.

67.     I believe the Plan's treatment of the Deemed Rejecting Classes is proper because there is no similarly situated class of Claims or Interests, as applicable, classified under the Plan that is receiving different treatment.  Thus, the Plan does not discriminate unfairly.  In addition, no Holder of a junior Claim or Interest will receive any distribution unless the Holders of higher priority Claims receive the full value of their Claims or the Holders of such higher priority Claims have consented to such treatment.  No Holders of any Claims or Interests that are junior to the Deemed Rejecting Classes will receive or retain any property under the Plan on account of such junior Claims or Interests, and no Holders of Claims or Interests senior to Deemed Rejecting Classes are receiving more than 100% recovery on account of their Claims or Interests.  As such, I believe the Plan does not violate the "fair and equitable" requirement of section 1129(b)(1) with regards to the Deemed Rejecting Classes.  Accordingly, it is my understanding that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

I.     **The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code.**

68.    I understand that all administrative and priority claims against the Debtors will be satisfied in the manner required by section 1129(a)(9) of the Bankruptcy Code, unless such holder of a particular claim has agreed to different treatment of such claim.  I understand the Debtors will seek to resolve the objections raised by certain taxing authorities.  *See* Plan §§ 2, 3, and 4.

J.     **The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code.**

69.    The Voting Certification shows the Accepting Classes have accepted the Plan, determined without including any acceptances of the Plan by any insider.  Accordingly, I understand that the Plan complies with section 1129(a)(10) of the Bankruptcy Code.

K.     **The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code.**

70.    I understand that, to satisfy the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code, the Debtors must demonstrate that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further reorganization, of the Debtors.

71.    The Plan contemplates that all of the Assets of the Debtors will be transferred to the Liquidating Trust to be liquidated and distributed by the Liquidating Trustee to the Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement.  The Plan further contemplates that the Debtors will be dissolved after the entry of a final decree closing the Chapter 11 Cases.  Consequently, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors.

L.     **The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code.**

72.    Section 14.1 of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date by the Debtors.  After the Effective Date, the Liquidating Trustee shall be liable for payment of any such fees until entry of final

decrees closing the Debtors' Chapter 11 Cases.  *See* Plan § 14.1.  Thus, I understand that the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**M.      Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are Inapplicable.**

73.      With regards to these sections of the Bankruptcy Code, the Debtors (a) have no pension or retiree benefits, (b) are not subject to any domestic support obligation, (c) are not an "individual," and (d) are business entities.  Thus, I understand that sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

**N.      The Plan Complies with Section 1129(c) of the Bankruptcy Code.**

74.      The Plan is the only chapter 11 plan that has been proposed in these Chapter 11 Cases and, thus, I understand that the requirement of section 1129(c) has been met.

**O.      The Plan Complies with Section 1129(d) of the Bankruptcy Code.**

75.      The principal purpose of the Plan is not the avoidance of taxes or the application of section 5 of the Securities Act of 1933.  Thus, I understand that the requirements of section 1129(d) have been met.

**IV.      CONCLUSION.**

76.      It is my opinion that the Plan satisfies the requirements of the Bankruptcy Code discussed herein, and I respectfully request that the Bankruptcy Court enter an order confirming the Plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: February 1, 2019

*/s/ Timothy J. Dragelin*

By:    Timothy J. Dragelin
Title: Chief Executive Officer and
       Restructuring Officer