UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Orion HealthCorp, Inc. | : | Case No. 18-71748 (AST) |
| Constellation Healthcare Technologies, Inc. | : | Case No. 18-71749 (AST) |
| NEMS Acquisition, LLC | : | Case No. 18-71750 (AST) |
| Northeast Medical Solutions, LLC | : | Case No. 18-71751 (AST) |
| NEMS West Virginia, LLC | : | Case No. 18-71752 (AST) |
| Physicians Practice Plus, LLC | : | Case No. 18-71753 (AST) |
| Physicians Practice Plus Holdings, LLC | : | Case No. 18-71754 (AST) |
| Medical Billing Services, Inc. | : | Case No. 18-71755 (AST) |
| Rand Medical Billing, Inc. | : | Case No. 18-71756 (AST) |
| RMI Physician Services Corporation | : | Case No. 18-71757 (AST) |
| Western Skies Practice Management, Inc. | : | Case No. 18-71758 (AST) |
| Integrated Physician Solutions, Inc. | : | Case No. 18-71759 (AST) |
| NYNM Acquisition, LLC | : | Case No. 18-71760 (AST) |
| Northstar FHA, LLC | : | Case No. 18-71761 (AST) |
| Northstar First Health, LLC | : | Case No. 18-71762 (AST) |
| Vachette Business Services, Ltd. | : | Case No. 18-71763 (AST) |
| MDRX Medical Billing, LLC | : | Case No. 18-71764 (AST) |
| Vega Medical Professionals, LLC | : | Case No. 18-71765 (AST) |
| Allegiance Consulting Associates, LLC | : | Case No. 18-71766 (AST) |
| Allegiance Billing & Consulting, LLC | : | Case No. 18-71767 (AST) |
| Phoenix Health, LLC | : | Case No. 18-71789 (AST) |
| New York Network Management, L.L.C. | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------ x

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING DEBTORS' THIRD AMENDED JOINT PLAN OF
<u>LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

WHEREAS, Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc., NEMS Acquisition, LLC, Northeast Medical Solutions, LLC, NEMS West Virginia, LLC, Physicians Practice Plus, LLC, Physicians Practice Plus Holdings, LLC, Medical Billing Services, Inc., Rand Medical Billing, Inc., RMI Physician Services Corporation, Western Skies Practice Management, Inc., Integrated Physician Solutions, Inc., NYNM Acquisition, LLC, Northstar FHA, LLC, Northstar First Health, LLC, Vachette Business Services, Ltd., MDRX Medical Billing, LLC, Vega Medical Professionals, LLC, Allegiance Consulting Associates, LLC, Allegiance Billing & Consulting, LLC, Phoenix Health, LLC, and New York Network Management, L.L.C. (collectively, the "Debtors"), having jointly proposed and filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") (i) the *Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 6, 2019 [D.I. 645] (as further modified, amended, and/or supplemented from time to time, including as modified herein, the "Plan"),[1] a copy of which is annexed hereto as Exhibit A, (ii) the *Third Amended Disclosure Statement for Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 6, 2019 [D.I. 644] (as further modified, amended, and/or supplemented from time to time, the "Disclosure Statement"), (iii) the *Notice of Filing of Plan Supplement to the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 6, 2019 [D.I. 647] (as further modified, amended, and/or supplemented from time to time, the "First Plan Supplement"); and (iv) the *Notice of Filing of Second Plan Supplement to the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of January 31, 2019 [D.I. 680] (as further modified, amended, and/or

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or in the Dragelin Declaration (as defined below).

supplemented from time to time, the "Second Plan Supplement" and together with the First Plan Supplement, the "Plan Supplements"); and

WHEREAS, on January 7, 2019, the Bankruptcy Court entered the *Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Relating Relief* [D.I. 652] (the "Disclosure Statement Order"), which, among other things, approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing"), and approved certain procedures for the solicitation of votes to accept or reject the Plan (the "Solicitation Procedures"); and

WHEREAS, the appropriate Ballots for voting on the Plan were duly transmitted to Holders of Claims entitled to vote on the Plan in accordance with the Solicitation Procedures as set forth in the *Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of February 1, 2019 [D.I. 684] (the "Voting Certification"); and

WHEREAS, on February 1, 2019, the Debtors filed that certain *Declaration of Timothy J. Dragelin in Support of Confirmation of the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 685] (the "Dragelin Declaration"); and

WHEREAS, on February 3, 2019, the Debtors filed that certain *Memorandum of Law (I) in Support of Confirmation of the Debtors' Third Amended Joint Plan of Liquidation Pursuant to*

*Chapter 11 of the Bankruptcy Code and (II) in Reply to Outstanding Objections Thereto* [D.I. 686] (the "<u>Memorandum of Law</u>") in support of confirmation of the Plan; and

WHEREAS, certain responses or objections to confirmation of the Plan having been filed prior to the Confirmation Hearing (together with any objections raised at the Confirmation Hearing, the "<u>Objections</u>"); and

WHEREAS, due notice of the Confirmation Hearing has been given to Holders of Claims against and Interests in the Debtors and other parties in interest in compliance with title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York  (the "<u>Local Rules</u>"), and the Disclosure Statement Order as established by the affidavits of service, mailing, and/or publication filed with the Bankruptcy Court, including (1) the *Affidavit of Service*, dated January 15, 2019, filed by Epiq Bankruptcy Solutions, LLC, the Debtors' Voting Agent ("<u>Epiq</u>") [D.I. 662], and (2) the *Affidavit of Publication*, dated January 10, 2019, filed by the Debtors [D.I. 660] (collectively, the "<u>Confirmation Hearing Notice Affidavits</u>"); and

WHEREAS, notice of the Confirmation Hearing, as evidenced by the Confirmation Hearing Notice Affidavits, is sufficient under the circumstances and no further notice is required; and

WHEREAS, the Bankruptcy Court having held the Confirmation Hearing on February 5, 2019 to consider confirmation of the Plan, and the Objections having been resolved, overruled, or withdrawn prior to or during the Confirmation Hearing; and

NOW, THEREFORE, based upon the Bankruptcy Court's consideration of the entire record of these Chapter 11 Cases and the Confirmation Hearing, including (1) the Disclosure Statement, the Plan, and the Plan Supplements, (2) the Voting Certification, (3) the Memorandum of Law, (3) the Dragelin Declaration, and (4) the Confirmation Hearing Notice Affidavits; and all Objections to confirmation of the Plan having been resolved, withdrawn, or otherwise overruled as set forth herein; and upon the arguments of counsel and the evidence adduced at the Confirmation Hearing; and the Bankruptcy Court having found the Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Bankruptcy Rules.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. Confirmation of the Plan, approval of the compromises and settlements incorporated in the Plan, and validation of the associated transactions and documents, are core bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(L).  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and the Court has the constitutional power and authority to enter a final

order with respect thereto.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      ~~Judicial~~ Notice.  The Bankruptcy Court takes ~~judicial~~ notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

D.      Burden of Proof.  The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Debtors have met their burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E.      Chapter 11 Petitions.  On March 16, 2018 (the "Petition Date"), the Initial Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  On July 5, 2018, NYNM Management filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  By prior order of the Bankruptcy Court, the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors continued as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

F.      Statutory Committee of Unsecured Creditors.  On April 4, 2018, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to

section 1102(a)(1) of the Bankruptcy Code [D.I. 82].  On July 26, 2018, the United States

Trustee appointed the same Committee in the NYNM Management Chapter 11 Case [D.I. 433].

      G.    <u>Modifications to the Plan</u>.  As a result of certain informal comments from and

objections raised by interested parties in the Chapter 11 Cases prior to and during the

Confirmation Hearing, the Debtors have agreed to certain modifications to the Plan described

below (the "<u>Modifications</u>"):

      1.    In response to informal comments received from counsel to the Secured

Lenders, Section 4.1(c) of the Plan shall be replaced in its entirety with the following provision:

> ***Allowed Secured Lender Claim (Class 3 against any or all Debtors)***.  This Class consists of the Secured Lenders' Allowed Secured Lender Claim, which shall be deemed Allowed pursuant to this Plan in the amount of Fifty Million Dollars ($50,000,000.00), against each of the Debtors, which amount includes (i) unpaid principal and accrued but unpaid interest owed under the Prepetition Credit Agreement as of the Petition Date and NYNM Petition Date; and (ii) any post-petition adequate protection claims under section 507 of the Bankruptcy Code, the Final DIP Order, the Cash Collateral Stipulations or otherwise <u>provided</u>, notwithstanding anything to the contrary in this Section 4.1(c) or elsewhere in the Plan, any Professional Fees of the Agent and the Secured Lenders that are reimbursable or otherwise payable to the Agent or any Secured Lender pursuant to the terms of the Final DIP Order or any Cash Collateral Stipulation entered from time to time in the Chapter 11 Cases shall not be included within the Allowed Secured Lender Claim, but instead shall be payable in cash to the Agent or such Secured Lender in accordance with the Final DIP Order or such Cash Collateral Stipulation. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Allowed Secured Lender Claim against any of the Debtors, the Secured Lenders will receive (i) the Net Sale Proceeds and (ii) all Distributions from the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement until such time as the Secured Lenders' Allowed Secured Lender Claim and all interest accruing thereon has been paid in full.  Interest shall accrue on the then outstanding balance of the Allowed Secured Lender Claim at a per annum floating rate equal to the prime rate of Bank of America, N.A. publicly announced from time to time plus 2.00%, with a

2.00% floor and a 6.00% cap.  Upon and subject to the occurrence of the Effective Date, the Secured Lenders shall, and by their acceptance of, and by operation of, this Plan, transfer and assign to the Liquidating Trust any and all Causes of Action they may have against any Person who is not a Debtor, related directly or indirectly to the Debtors and their Estates, whether arising before or after the Petition Date.  The Debtors shall not be obligated to pay the fees and expenses incurred on or after the Effective Date of any Professionals retained by the Administrative Agent and Secured Lenders; *provided, however*, the Administrative Agent and the Secured Lenders shall be entitled to receive and retain Professional Fees and expenses to the extent incurred prior to the Effective Date and permitted to be paid pursuant to the Final DIP Order or any Cash Collateral Stipulations entered from time to time in the Chapter 11 Cases.  Upon the unanimous acceptance of the Secured Lenders to this Plan and the confirmation thereof, the Secured Lenders consent to the treatment of their Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim as provided in this Plan.  Upon the Effective Date by operation of the Plan, the rights (other than with respect to the Allowed Secured Lender Claim and the Allowed Secured Lender Deficiency Claim) and Causes of Action of each accepting Secured Lender and/or the Administrative Agent against any Person arising out of or on account of the Prepetition Loans (as defined in the Final DIP Order) shall be assigned to the Liquidating Trust and shall be deemed Assigned Causes of Action pursuant to this Plan.  The Assigned Causes of Action shall accrue to the benefit of the Liquidating Trust and the Liquidating Trustee shall have sole and exclusive authority to administer, pursue, litigate, settle or abandon any Assigned Causes of Action subject only to the terms of this Plan and the Liquidating Trust Agreement.  The Secured Lenders and\or the Administrative Agent shall undertake such actions and execute such documents as necessary to memorialize, effectuate or enforce the assignment of any Assigned Causes of Action.

2.      In response to informal comments received from counsel to the Secured Lenders, the definition of Allowed Secured Lender Deficiency Claim shall be replaced in its entirety with the following:

> ***Allowed Secured Lender Deficiency Claim*** means the Allowed Deficiency Claim of the Secured Lenders pursuant to this Plan in the amount of One Hundred and Eight Million Two Hundred Eighty Seven Thousand Two Hundred Twenty Three Dollars and Thirty Nine Cents ($108,287,223.39).

3.      In response to informal comments received from counsel to the Secured

Lenders, Section 4.1(e) of the Plan shall be replaced in its entirety with the following provision:

> **General Unsecured Claims (Class 5 against any or all Debtors).**
> This Class consists of (i) the Secured Lenders' Allowed Secured
> Lender Deficiency Claim against each of the Debtors, which shall
> be deemed Allowed pursuant to this Plan in the amount of One
> Hundred and Eight Million Two Hundred Eighty Seven Thousand
> Two Hundred Twenty Three Dollars and Thirty Nine Cents
> ($108,287,223.39); and (ii) all Allowed General Unsecured Claims
> against each of the Debtors.  Except to the extent the Secured
> Lenders on account of their Allowed Secured Lender Deficiency
> Claim or a Holder of an Allowed General Unsecured Claim agrees
> to a different treatment of such Claim, in full and final satisfaction,
> settlement, release, and discharge of the Allowed Secured Lender
> Deficiency Claim or Allowed General Unsecured Claims against
> each of the Debtors, the Secured Lenders and each Holder of an
> Allowed General Unsecured Claim against any of the Debtors will
> receive their Pro Rata share of the Liquidating Trust Distributable
> Cash as soon as practicable as determined by the Liquidating
> Trustee in accordance with the Liquidating Trust Agreement;
> *provided, however*, that each Holder of an Allowed General
> Unsecured Claim against more than one Debtor shall be entitled to
> a single distribution on account of each Claim that arises out of the
> same facts and circumstances regardless of the number of Debtors
> against which the Claim is asserted.  The Debtors (pre-Effective
> Date) and the Liquidating Trustee (post-Effective Date) reserve
> their rights, however, to dispute the validity of any General
> Unsecured Claim (other than the Allowed Secured Lender
> Deficiency Claim), whether or not objected to prior to the
> Effective Date.

4.      In response to certain comments received from the Texas Comptroller of

Public Accounts and the State of Michigan Department of Treasury, the following provision

shall be added to Section 2.3 of the Plan:

> Notwithstanding any term in the Plan or this Confirmation Order to
> the contrary: (a) the setoff rights of the Texas Comptroller of
> Public Accounts and the State of Michigan Department of
> Treasury (together, the "Taxing Authorities") are preserved under
> section 553 of the Bankruptcy Code; (b) the Liquidating Trustee
> shall file delinquent 2017 and 2018 franchise and withholding tax

9

returns, if applicable, on or before sixty (60) days after the Effective Date; (c) thereafter, the Taxing Authorities shall have sixty (60) days after the filing of such tax returns (the "Amended Tax Claim Deadline") to amend their priority tax claims to reflect the return-based liability; (d) the Taxing Authorities' amended priority tax claims filed in accordance with the Debtors' tax returns shall be allowed and paid in accordance with § 1129(a)(9)(C) of the Bankruptcy Code, including post-Effective Date interest at the rate of 6.5%; (e) the Liquidating Trustee shall file and pay the 2019 and any subsequent Texas and Michigan franchise tax returns when due, under and in accordance with the processes and procedures provided by Texas and Michigan law; and (g) the following default provisions apply:

A failure by the Liquidating Trustee to file a tax return or make a payment to the Taxing Authorities pursuant to the terms of the Plan and/or Confirmation Order shall be a default~~n Event of Default~~. If the Liquidating Trustee fails to cure a default~~n Event of Default~~ within ten (10) calendar days after service of a written notice of default, the Taxing Authorities may (a) enforce the entire amount of its claim(s), (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court. The Liquidating Trustee shall be allowed to cure no more than two defaults; a third ~~Event of Default~~ default may not be cured.

The Taxing Authorities may seek a thirty (30) day extension of the Amended Tax Claim Deadline upon written request to the Liquidating Trustee.

5.      In response to certain comments received from Destra Targeted Income

Unit Trust, Section 11.6 of the Plan shall be replaced in its entirety with the following:

***Injunction.* EXCEPT WITH RESPECT TO (I) ADVERSARY PROCEEDINGS BROUGHT BY THE DEBTORS THAT ARE PENDING AS OF THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, THE NOTEHOLDER LITIGATION, PARMAR LITIGATION AND ROBINSON BROG LITIGATION; (II) THE DESTRA STATE COURT LITIGATION (AS DEFINED IN THE DISCLOSURE STATEMENT) OR ANY OTHER LITIGATION INVOLVING THE ASSETS THAT ARE THE SUBJECT OF THOSE LITIGATIONS; AND (III) THE UNDERSTANDINGS DESCRIBED IN THAT CERTAIN PROTOCOL DESCRIBED AT D.I. 284, FROM AND AFTER**

10

**THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTEREST IN THE DEBTORS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR**

**CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.**

<u>**Notice and the Solicitation Process**</u>

H.      <u>Solicitation</u>.      On or around January 8, 2019, and in accordance with the Disclosure Statement Order and Solicitation Procedures approved thereby, the Debtors caused Epiq to transmit and serve the Confirmation Hearing Notice (as defined in the Disclosure Statement Order), the appropriate Ballots and voting instructions (collectively, the "<u>Solicitation Package</u>") on the Holders of Claims in the following Classes (collectively, the "<u>Voting Classes</u>"):

| Debtor | Impaired Classes Entitled to Vote |
|---|---|
| CHT | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Orion | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northeast Medical Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| NEMS West Virginia | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Physicians Practice Plus | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Medical Billing Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

| | |
|---|---|
| Rand Medical Billing | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| RMI Physician Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Western Skies Practice Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Integrated Physician Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northstar First Health | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Vachette Business Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Consulting Associates | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Billing & Consulting | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| NYNM Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

The Voting Classes were the only Classes of Creditors entitled to vote to accept or reject the Plan.    As evidenced by the Voting Certification and the Confirmation Hearing Notice Affidavits, the Solicitation Packages were transmitted and served in compliance with the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and other applicable law.

The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for Holders entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

On or around January 8, 2019, and in accordance with the Disclosure Statement Order and Solicitation Procedures approved thereby, the Debtors caused Epiq to transmit and serve the Confirmation Hearing Notice and Notice of Non-Voting Status (as defined in the Disclosure Statement Order) on the following Classes, referred to herein as the "Deemed Accepting Classes":

| Debtor | Unimpaired Classes Deemed to Accept Plan |
|---|---|
| CHT | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Orion | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Northeast Medical Solutions | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| NEMS West Virginia | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Physicians Practice Plus | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Medical Billing Services | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Rand Medical Billing | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| RMI Physician Services | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Western Skies Practice Management | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Integrated Physician Solutions | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Northstar First Health | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |

| Vachette Business Services | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
|---|---|
| Allegiance Consulting Associates | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Allegiance Billing & Consulting | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| NYNM Management | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |

Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the Holders of Claims in the Deemed Accepting Classes as each such Class is Unimpaired under the Plan, and thus, the Holders of such Claims are deemed to have accepted the Plan.

On or around January 8, 2019, and in accordance with the Disclosure Statement Order and Solicitation Procedures approved thereby, the Debtors caused Epiq to transmit and serve the Confirmation Hearing Notice and Notice of Non-Voting Status on the following Classes, referred to herein as the "Deemed Rejecting Classes":

| Debtor | Impaired Classes Deemed to Reject Plan |
|---|---|
| CHT | Class 7- Interests in CHT |
| Orion | Class 7- Interests in Orion |
| Northeast Medical Solutions | Class 7- Interests in Northeast Medical Solutions |
| NEMS West Virginia | Class 7- Interests in NEMS West Virginia |
| Physicians Practice Plus | Class 7- Interests in Physicians Practice Plus |
| Medical Billing Services | Class 7- Interests in Medical Billing Services |
| Rand Medical Billing | Class 7- Interests in Rand Medical Billing |
| RMI Physician Services | Class 7- Interests in RMI Physicians Services |
| Western Skies Practice Management | Class 7- Interests in Western Skies Practice Management |
| Integrated Physician Solutions | Class 7- Interests in Integrated Physician Solutions |

| Northstar First Health | Class 7- Interests in Northstar First Health |
|---|---|
| Vachette Business Services | Class 7- Interests in Vachette Business Services |
| Allegiance Consulting Associates | Class 7- Interests in Allegiance Consulting Associates |
| Allegiance Billing & Consulting | Class 7- Interests in Allegiance Billing & Consulting |
| NYNM Management | Class 7- Interests in NYNM Management |

The Debtors were not required to solicit votes from the Holders of Claims or Interests in the Deemed Rejecting Classes as each such Holder will not receive or retain any property under the Plan and, thus, the Holders of such Claims or Interests, as applicable, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

I.    Notice.  As evidenced by the Confirmation Hearing Notice Affidavits and/or the Dragelin Declaration, and in compliance with the Disclosure Statement Order, the Debtors also caused the following to occur:

1.    On or around January 8, 2019, the Debtors caused the Confirmation Hearing Notice to be served on all parties requesting notice under Rule 2002 of the Bankruptcy Rules; and

2.    On or around January 10, 2019, the Debtors caused the Confirmation Hearing Notice to be published in the *New York Times*.

J.    No Other or Further Notice or Solicitation Required.  As evidenced by the Voting Certification and Confirmation Hearing Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had sufficient opportunity to appear and be heard

with respect thereto.   The solicitation of votes on the Plan complied with the Solicitation Procedures and Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.   No other or further notice or re-solicitation is required.

K.    <u>Good Faith Solicitation</u>.   Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors and their partners, representatives, control persons, members, officers, directors, employees, agents and their respective attorneys and other advisors (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of votes on the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, (ii) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and (iii) to the extent such parties are listed therein, the exculpation provisions set forth in Section 11.5 of the Plan.

L.    <u>Voting</u>.   As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.   The Voting Classes set forth below voted to accept the Plan (the "<u>Accepting Classes</u>").   The Secured Lenders unanimously voted to accept the Plan.

| Debtor | Impaired Classes That Voted to Accept the Plan |
|---|---|
| CHT | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Orion | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Northeast Medical Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| NEMS West Virginia | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Physicians Practice Plus | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Medical Billing Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Rand Medical Billing | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| RMI Physician Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Western Skies Practice Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Integrated Physician Solutions | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

| | |
|---|---|
| Northstar First Health | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Vachette Business Services | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Consulting Associates | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| Allegiance Billing and Consulting | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |
| NYNM Management | Class 3- Allowed Secured Lender Claim<br>Class 4- Other Secured Claims<br>Class 5- General Unsecured Claims<br>Class 6- Subordinated Claims |

M.    <u>Plan Supplement</u>.  All documents contained in the Plan Supplements, including the Liquidating Trust Agreement and Assignment of Secured Lenders' Claims or Proceeds and Cooperation Agreement, comply with the terms of the Plan, and the filing, notice, and service of such documents were done in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, and no other or further notice is or shall be required.

<u>**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**</u>

N.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated, identifies the Debtors as plan proponents, and clearly identifies the injunction proposed under the Plan, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

O.    <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors, as plan proponents, have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and other applicable law in transmitting the Plan, the Disclosure Statement, the Plan Supplements, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

P.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.    The Debtors have proposed the Plan, including the Plan Supplements and all documents necessary to effectuate the Plan, and the transactions contemplated by the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' assets and distributions to Creditors.  Further, the Plan's classification, exculpation, release, and injunction provisions are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Second Circuit, have been negotiated in good faith and at arms' length, are integral to the Plan, and supported by valuable consideration.  The Plan is the result of extensive good faith, arm's length negotiations among the Debtors and certain of their principal constituencies, including the Secured Lenders and the Committee.

Q.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payments made or promised by the Debtors for services or for costs and expenses incurred in

connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

R.    <u>Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5))</u>. The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the Liquidating Trustee has been fully disclosed in the First Plan Supplement and at the Confirmation Hearing, and the appointment of the Liquidating Trustee is consistent with the interests of Holders of Claims against the Debtors and with public policy.

S.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

T.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. Each Holder of an Impaired Claim or Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

U.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. The Deemed Rejected Classes are Impaired under the Plan and have rejected or are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As set forth herein, and pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the

Deemed Rejected Classes are Impaired under the Plan and have rejected or are deemed to have rejected the Plan.

As evidenced by the Voting Certification, the Accepting Classes voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Classes do not include insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code).

V.    Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

W.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  As evidenced by the Voting Certification, section 1129(a)(10) of the Bankruptcy Code is satisfied as the Accepting Classes have accepted the Plan, determined without including any acceptances of the Plan by any insider.

X.    Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement, the Plan Supplements, the Dragelin Declaration, and the evidence proffered or adduced at or prior to the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan is feasible and that there is a reasonable prospect that the Debtors will be able to meet their financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  As provided in Section 14.1 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.  Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 shall be paid on or before the Effective Date and thereafter, as such fees may thereafter accrue and be due and owing until entry of final decrees closing the Debtors' Chapter 11 Cases.

Z.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtors have no obligations for retiree benefits as that term is defined in section 1114 of the Bankruptcy Code, thus the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable.

AA.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are not individuals.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

CC.    <u>Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  The Debtors are businesses.  Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, in the Disclosure Statement, and in the Dragelin Declaration, the Plan does not discriminate

unfairly and is fair and equitable with respect to the Deemed Rejected Classes as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any Claim or Interest that is junior to such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

EE.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan being confirmed in these Chapter 11 Cases. Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

FF.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    <u>Exemption from Transfer Tax (11 U.S.C. § 1146(a))</u>. All transactions contemplated by the Plan, and the purchase, sale, and assignment transactions under the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

HH.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. The Modifications announced at the Confirmation Hearing and described herein do not constitute changes that materially and adversely change the treatment of any Claims or Interests. Accordingly, these modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and

none of the modifications requires additional disclosure or resolicitation of votes on the Plan. Under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified. The Plan as modified shall constitute the Plan submitted for confirmation.

II.     <u>Implementation</u>.  All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplements, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and are in the best interests of the Debtors, and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

JJ.     <u>Standing Motion Settlement</u>.  For the reasons stated on the record, the Standing Motion Settlement embodied in the Plan satisfies Bankruptcy Rule 9019 and the standard for settlements and compromises adopted in the Second Circuit and is approved.

KK.     <u>Injunction, Exculpation, and Releases</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Section 11 and elsewhere in the Plan and this Confirmation Order.  Section 105(a) of the Bankruptcy Code permits issuance of injunction and approval of the releases and exculpations set forth in Section 11 and elsewhere in the Plan and this Confirmation Order, if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented in the Dragelin Declaration and during the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair,

equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates and Creditors. The Dragelin Declaration and the record of the Confirmation Hearing and the Chapter 11 Cases are sufficient to support the releases, exculpation, and injunction provided for in Section 11 of the Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Dragelin Declaration and during the Confirmation Hearing, the Bankruptcy Court finds that the injunction, exculpation, and releases set forth in Section 11 of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, release, and exculpation provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan.

LL.    Preservation of Causes of Action. It is in the best interests of the Debtors, and Holders of Claims against and Interests in the Debtors that all Causes of Action, including, without limitation, any avoidance or recovery actions under sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and any other Causes of Action that may be pending or exist on the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, shall vest in the Liquidating Trust, and from and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or, subject to the Plan and the Liquidating Trust Agreement, abandon

such Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code.

MM.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## <u>ORDER</u>

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though more fully set forth herein.

2.    <u>Notice of the Confirmation Hearing</u>.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

3.    <u>Plan Modifications</u>.  The Modifications described herein meet the requirements of section 1127(a) and (c) of the Bankruptcy Code, such modifications do not materially and adversely affect the treatment of the Claim of any Creditor or Interest Holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.  The Plan is hereby amended to include the Modifications described herein.

4.    <u>Solicitation and Tabulation</u>.  The solicitation and tabulation of votes on the Plan complied with applicable bankruptcy and nonbankruptcy law, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order and applicable non-bankruptcy law.

5.     Confirmation of the Plan.  The Plan and each of its provisions and exhibits, including the Plan Supplements, as modified in accordance with section 1127 of the Bankruptcy Code, shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplements are authorized and approved.  Each provision of the Plan, as modified herein, is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified, as modified at the Confirmation Hearing, and as modified herein, are incorporated by reference into and are an integral part of this Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplements, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety.

6.     Objections.  All Objections, responses to, reservation of rights, statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

7.     Satisfaction of Claims.  To the fullest extent provided under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided herein or in the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in full and final

satisfaction and settlement, as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors' Estates, the Debtors, or any of the Debtors' assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim or Interest has accepted the Plan.  This Confirmation Order shall be a judicial determination of the satisfaction of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided herein or in the Plan.

8.    <u>Compromise of Controversies</u>.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order shall constitute this Bankruptcy Court's approval of the

compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. After the Effective Date, the Liquidating Trustee, subject to the applicable provisions of the Plan and Liquidating Trust Agreement, shall have the exclusive right to, compromise and settle any Claims against the Debtors or Liquidating Trust, as the case may be, and Causes of Action against any other Person or Entity subject to the provisions of the Plan.

9.      Administrative Expense Claims.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including, but not limited to, a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court).  **Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

10.      Accrued Professional Compensation Claims.  All Professionals seeking payment of Accrued Professional Compensation Claims shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases by the date that is sixty (60) days after the Effective Date and (b) be paid

(i) the full unpaid amounts as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtors or Liquidating Trustee.  **Any Accrued Professional Compensation Claim that is not asserted in accordance herewith and with Section 2.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.  For avoidance of doubt, the professional fees paid or payable in connection with the treatment of the Holders of Class 3 Claims shall be excluded from the preceding requirements applicable to Accrued Professional Compensation Claims and shall instead be governed by the terms of the Plan, the Final DIP Order and the Cash Collateral Stipulations.**

11.    <u>Liquidating Trust</u>.

(a)    On the Effective Date, the Liquidating Trust shall be established in accordance with Section 6.3 of the Plan, and the Debtors and the Liquidating Trustee are authorized to and shall execute the Liquidating Trust Agreement and shall take all other steps necessary or appropriate to establish the Liquidating Trust in accordance with and pursuant to the terms of the Liquidating Trust Agreement.  The Liquidating Trust Agreement is hereby approved in all respects.  The Plan and the Liquidating Trust Agreement shall govern the management and administration of the Liquidating Trust and the respective rights, powers and obligations of the Liquidating Trustee and the Beneficiaries.  On the Effective Date, the Debtors shall transfer to

the Liquidating Trust all of their right, title and interest in and to the Causes of Action, and the Liquidating Trustee shall be deemed to have been designated as a representative of the Estates pursuant to Bankruptcy Code section 1123(b)(3)(B) to enforce and pursue the Causes of Action, including the Assigned Causes of Action, objecting to all Claims, resolving all Disputed Claims, and effecting the Distributions to be made under the Plan to the Holders of Allowed Claims in accordance with the terms of the Plan.  Howard M. Ehrenberg is appointed as the Liquidating Trustee, having the powers, rights and responsibilities as set forth in the Liquidating Trust Agreement.

(b)    <u>Indemnification and Exculpation</u>.    The Liquidating Trustee, the Liquidating Trust Professionals, the Liquidating Trust Oversight Board, the members of the Liquidating Trust Oversight Board and any professionals retained by the Liquidating Trust Oversight Board or its members, shall not be liable for actions taken or omitted in such capacities, except those acts arising out of its or their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the Liquidating Trust for fees and expenses in defending any and all of its actions or inactions in such capacities, except for any actions or inactions involving willful misconduct or gross negligence.  Any indemnification claim of the Liquidating Trustee (and any other parties entitled to indemnification under this subsection) shall be satisfied first from the Liquidating Trust Reserve and, then, to the extent the Liquidating Trust Reserve is exhausted, from the Liquidating Trust Distributable Cash.

12.    <u>The Shell Debtors</u>.    The Debtors' equity interests in NEMS Acquisition, Physician Practice Plus Holdings, NYNM Acquisition, Northstar FHA, Phoenix Health, MDRX and Vega Medical Professionals shall be retained and transferred to the Liquidating Trust.

13.    <u>General Authorizations</u>.    The appropriate officers of the Debtors and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  The Debtors or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Debtors or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the officers, directors, partners, or managers, direct or indirect, of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the State of New York and any other relevant jurisdiction, without any further vote, consent, approval, authorization, or other action by such officers, directors, partners, or managers of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

14.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, including, but not limited to, the Healthtek APA and MTBC APA entered into by the Debtors in connection with the Sales, each of the Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed

or rejected previously by the applicable Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to assume or reject filed on or before the Effective Date.

15.     <u>Rejection Damages</u>.    Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtors or the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided, that* any such Claims shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b).   Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Liquidating Trustee, the Debtors' Estates or their property without the need for any objection by the Debtors or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan.

16.     <u>Claims Objections</u>.    Upon the Effective Date, the Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan.   Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court upon request of the Liquidating Trustee.

From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court upon consultation or consent of the Liquidating Trust Oversight Board in accordance with the terms of the Liquidating Trust Agreement; *provided, however*, that nothing herein shall prohibit the Liquidating Trustee from seeking approval for any matter in a court of competent jurisdiction, including the Bankruptcy Court.

17.    <u>Distributions</u>.  The provisions of the Plan governing distributions and procedures for resolving and treating Disputed Claims under the Plan are approved and found to be fair and reasonable.

18.    <u>Consents and Approvals</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or governmental authority with respect to the implementation or consummation of the Plan and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplements, the Disclosure Statement, any documents, instruments or agreement that may be necessary or appropriate for the implementation or consummation of the Plan, and any other acts referred to in, or contemplated by the Plan and the Disclosure Statement.

19.    <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, but subject to Section 10.2 of the Plan, on the Effective Date, and effective as of the Effective Date, the Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, the Liquating Trust, the Liquidating Trust Oversight Board, the Secured Lenders, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to

35

the settlements, compromises, releases, discharges and injunctions described in the Plan, each Person acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

20.     <u>Releases by the Debtors</u>.  Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' Chapter 11 Cases, the business or contractual arrangements between any Debtor and any of the Released Parties, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "<u>Debtor Released Claims</u>"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

21.    <u>Releases by Holders of Claims</u>.  **ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THE PLAN, ALL PERSONS WHO (I) (A) VOTED TO ACCEPT THE PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THE PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE OR (B) WERE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN AND WHO VOTED TO REJECT THE PLAN AND (II) DID NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER BASED OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS' CHAPTER 11 CASES OR AFFECTING PROPERTY OF THE ESTATES, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF**

**ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALES, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THE PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THE PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.  NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 OF THE PLAN.  EXCEPT AS OTHERWISE PROVIDED HEREIN, ALL PERSONS WHO DID NOT VOTE ON THE PLAN WILL NOT BE DEEMED TO RELEASE, WAIVE OR DISCHARGE THE RELEASED PARTIES AS PROVIDED IN THIS SECTION**.

22.    <u>Exculpation</u>.  None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Debtors' Chapter 11 Cases, except for their willful misconduct or gross negligence as determined by a

Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

23.     <u>Injunction</u>.  Except with respect to (i) any adversary proceedings brought by the Debtors that are pending as of the Effective Date, including, but not limited to, the Noteholder Litigation, Parmar Litigation, and Robinson Brog Litigation; (ii) the Destra State Court Litigation (as defined in the Disclosure Statement) or any other litigation involving the assets that are the subject of those litigations; and (iii) the understandings described in that certain Protocol described at D.I. 284, from and after the Effective Date, all persons who have held, hold or may hold Claims against or Interests in the Debtors are permanently enjoined from commencing or continuing in any manner, any cause of action released or to be released pursuant to the Plan or this Confirmation Order.

From and after the Effective Date, to the extent of the releases and exculpation granted in the Plan, the Releasing Parties shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan.

Except as otherwise expressly provided in the Plan, the Plan Supplements or related documents, or for obligations issued pursuant to the Plan, all persons who have held, hold or may hold Claims or Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding

of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled or discharged pursuant to the Plan.

The rights afforded in the Plan and the treatment of all Claims or Interests therein shall be in exchange for and in complete satisfaction of all Claims or Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates.  On the Effective Date, all such Claims against the Debtors shall be fully released, and the Interests shall be cancelled (except as otherwise expressly provided in the Plan).

24.     _Injunction Against Interference with the Plan_.  Upon entry of this Confirmation Order, all Holders of Claims and Interests, the Debtors, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtors', the Liquidating Trust's, the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

25.     _Release of Liens_.  Except as otherwise provided in the Plan and this Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made

pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged.  The provisions of this Order authorizing the release of record of existing liens shall be self-executing, and none of the Debtors nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate or implement the release provisions hereof.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept a copy of this Confirmation Order as evidence of such release.

26.    Corporate Action.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors.

27.    Cancellation of Documents.  On the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Debtors including, without limitation, the Prepetition Credit Agreement shall be deemed inoperative and unenforceable against the Debtors and the Debtors shall have no continuing obligations thereunder; *provided, however*, that (i) the Prepetition Credit Agreement shall continue in effect for purposes of allowing the Secured Lenders holding the Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim to receive Distributions under the Plan and (ii) the Prepetition Credit

Agreement shall remain operative and enforceable with respect to any Person, other than the Debtors, which has rights and/or obligations thereunder.

28.    <u>Dissolution of the Debtors</u>.  On the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.3 of the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan.  Upon entry of a final decree closing the Debtors' Chapter 11 Cases, the Debtors shall be deemed dissolved for all purposes in accordance with applicable state law without the need to take any further action or file any plan of dissolution, notice, or application.

29.    <u>Preservation of Causes of Action of the Debtors</u>.  In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, pursuant to the releases by the Debtors and exculpation provisions provided in the Plan), the Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including, but not limited to, any claims that are the subject of the Parmar Litigation, Noteholder Litigation and the Robinson Brog Litigation, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Creditors and Beneficiaries.  **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them**.  Except with respect to Causes of Action as to which the Debtors and Liquidating

Trustee have released any Person or Person on or before the Effective Date, the Debtors (pre-Effective Date) and Liquidating Trustee (post-Effective Date), as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

30.    Preservation of Rights Under Rule 2004. The Liquidating Trustee shall have the right to seek the examination of any Person pursuant to Bankruptcy Rule 2004.

31.    Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Section 10.2 of the Plan have been satisfied.  In the event that one or more of the conditions specified in Section 10.2 of the Plan have not been satisfied, the Plan shall be null and void in all respects and nothing in the Plan or Disclosure Statement shall, (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking by the Debtors, any Holders or any other Person in any respect.

32.    Retention of Jurisdiction.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to Section 13 of the Plan and sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the matters set forth in Section 13 of the Plan.

33.    Payment of Statutory Fees and Filing of Quarterly Reports.  All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date by the Debtors.  After the Effective Date, the Liquidating Trust shall be liable for payment of any such fees until entry of final decrees closing the Chapter 11 Cases.  The Liquidating

Trustee shall be responsible for the filing of quarterly disbursement reports with the United States Trustee within twenty (20) days of the end of each calendar quarter.

34.    <u>Dissolution of the Creditors' Committee</u>.  On the Effective Date, the Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases, except with respect to Professional fee applications.

35.    <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

36.    <u>Exemption from Certain Taxes</u>.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under or pursuant to the Plan, and the execution, delivery, or recording of any instrument of transfer under or pursuant to the Plan, and the revesting, transfer, or sale of any property of or to the Liquidating Trust, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or other Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

37.    <u>The Automatic Stay</u>.  The stay in effect in these Chapter 11 Cases pursuant to sections 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force of effect, subject to the

injunctions set forth in the Plan, this Confirmation Order, and/or sections 524 and 1141 of the Bankruptcy Code; *provided, however*, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, and bills of sale) or the taking of such actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

38.    <u>Preservation of Privilege and Defenses</u>.    No action taken by the Debtors in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  Notwithstanding the Debtors providing any privileged information to the Liquidating Trustee, the Liquidating Trust, or any party or Person associated with the Liquidating Trust, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged.

39.    <u>Conflicts Between Confirmation Order and Plan</u>.    The provisions of this Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

40.    <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

41.    <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.  If any or all of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Liquidating Trustee, as applicable, pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

42.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

43.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

44.     <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Bankruptcy Court, or further action by the respective officers or directors of the Debtors and with the effect that such actions has been taken by unanimous action of such officers and directors.

45.     <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>** (the "<u>Notice of Confirmation and Effective Date</u>"), to the United States Trustee, all parties that hold a Claim or Interest in these Chapter 11 Cases, and any other party requesting notice under Bankruptcy Rule 2002.  The Notice of Confirmation and Effective Date shall also be posted on the Debtors' case information website, available at https://dm.epiq11.com/orionhealthcorp.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

46.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

47.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

48.     <u>Waiver of Stay</u>.  The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)) is hereby

waived.  This Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

49.     <u>Release of Adequate Assurance Deposits</u>.    Pursuant to that *Final Order (I) Authorizing the Debtors' Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Objections by Utility Companies, and (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services* [D.I. 94] (the "<u>Utilities Order</u>"), the Debtors are holding certain funds as Adequate Assurance Deposits in Utility Deposit Accounts (as such terms are defined in the Utilities Order).   In accordance with the Utilities Order, the Debtors are authorized to release the funds held in the Utility Deposit Accounts into their general operating account upon the occurrence of the Effective Date.



**Dated: February 26, 2019**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**