**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC, | : | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, L.L.C. | : | Case No. 18-74545 (AST) |
|  | : | (Jointly Administered) |
| Debtors. |  |  |

**REPLY IN SUPPORT OF TRUSTEE'S (I) MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF APARTMENT 12J LOCATED AT 2 RIVER TERRACE, NEW YORK, N.Y. FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND (II) APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING PAYMENT TO THE RESIDENTIAL BOARD AND OF SALES COMMISSION UPON CLOSING**

Plaintiff, Howard M. Ehrenberg, solely in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al*., (the "Plaintiff" or the "Liquidating Trustee"), for the estates of the above-captioned debtors, hereby submits his *Reply* (the "Reply") *In Support of the Trustee's (i) Motion For Entry Of An Order Authorizing The Sale Of Apartment 12J Located At 2 River Terrace,*

*New York, N.Y. Free And Clear Of Liens, Claims, And Encumbrances And (ii) Application For Entry Of An Order Authorizing And Approving Payment To The Residential Board And Of Sales Commission Upon Closing* (the "Sale Motion") [Docket No. 929] in response to the *Opposition of Defendant* (the "Opposition") [Docket No. 956] as filed by 2 River Terrace, LLC (the "Defendant").

## PRELIMINARY STATEMENT:

The Court entered an order avoiding the transfer of title to the real property located at 2 River Terrace, Apartment 12J, located in, New York, NY (the "Property"). The Court held that the undisputed facts evidenced that the former CEO of the Debtor used $5.6 million of the Debtor Constellation Healthcare Technologies Inc.'s funds to purchase the Property for the Defendant. The Court made such findings at the February 9, 2021[1] hearing in a decision read on the record. On March 1, 2021, the Court entered its Judgment Granting Plaintiff's Motion For Summary Judgment, which among other things held that (a) the Property is property of the Debtors' estates, (b) the deed for the property conveyed to Defendant is void and Defendant has no ownership interest in the Property and (c) all equitable and legal ownership of the Property is vested in the Liquidating Trustee.[2] The Liquidating Trustee has taken possession of the Property and seeks to sell it for the benefit of the estate. Defendant did not file a motion to stay the proceedings pending appeal. The Defendant raises three unpersuasive arguments:

---

[1] Dkt. No. 60; Adv. case number 20-08051-ast.

[2] Dkt. No. 64, par. 5; Adv. case number 20-08051-ast.

First, that the sale is prohibited by section 363(e) of the Bankruptcy Code in order to protect an equitable interest of the Defendant in the Property.

Second, that the Motion is not a core proceeding under 28 U.S.C. § 157(b)(2)(N).

Third, that the Trustee became the Defendant's landlord and is attempting an improper eviction of the Defendant. In addition, Defendant now seeks an 11th hour stay pending appeal.

The Liquidating Trustee is charged with the duty to liquidate in an expeditious and orderly manner for the benefit of all creditors of the estate, assets and claims of the estate. The Liquidating Trustee has located a good faith purchaser of the Property the terms of which are set forth in the Sale Motion. It is well-settled that bankruptcy courts have core jurisdiction to not only approve Section 363 sales under the Code, but to administer a liquidating trust created in accordance with a confirmed plan in bankruptcy. The Sale Motion is a straight-forward exercise of such authority and the claim the Sale Motion is a non-core proceeding grounded in state law is simply off the mark.

While the Opposition characterizes the Motion as "rash" or "rushed", the Property was in peril prior to the Complaint being filed in March 2020. It cannot be reasonably disputed that (a) the Property is subject to a state court judgment and writ of execution from 2019 in favor of the Condominium Board and (b) was on the auction block to be sold at a Sheriff's Sale (a copy of the Sheriff's Adjourned Realty Execution Sale notice (a copy of which is attached to the Affidavit of J. Nolan as Exhibit "A") due to <u>years</u> of delinquent common charges and unpaid tax payments owed to the Residential Board who maintains the building and has patiently waited for an adjudication of the dispute. The Order granting the Trustee's Motion for

Summary Judgment, as supported by upwards of thirty-five (35) Joint Statements of Undisputed Facts [Dkt. No. 55], leaves no doubt that the Property is an estate asset and that legal and equitable title rests with the Trustee. Defendant has not properly moved to stay the underlying proceedings as there is no merit in doing so.

The Opposition claims the Trustee is improperly seeking to evict a tenant in contravention of the COVID-19 Act of 2020 and the Property should be further neglected and subject to delay by directing the eviction dispute be adjudicated in state court proceedings. However, on May 4, 2021, the Parties executed a stipulation wherein Defendant consensually agreed to remove all personal property from the Property and agreed the Bankruptcy Court had exclusive jurisdiction to hear and determine all disputes surrounding the Move-out. [Dkt. No. 942, ¶7] The COVID-19 Act of 2020 has no application in the present Sale Motion and any claim of its application is a diversion from the Sale Motion.

In summary, the Sale Motion confirms that the marketing of the Property was proper and the offer to purchase the Property for $4,800,000 is fair, equitable and the result of an arms' length negotiation informed by multiple bids for the Property. The Buyer is not related to or affiliated with the Liquidating Trustee or the Debtors and is undoubtedly a good faith bona fide purchaser for value.[3] No creditor contests the fairness of the process or the sale price realized. The Trustee's exercise of his business judgment in selling the Property will undoubtedly benefit and maximize the return to unsecured creditors.

---

[3] Attached to the Sale Motion as Exhibit C was the Contract of Sale-Condominium Unit. For clarity's sake, the Liquidating Trustee corrects the Motion which incorrectly abbreviated the proposed buyer as The PM Riverhouse Trust 1. The buyer under contract is The PM Riverhouse Trust 1 _and_ The PM Riverhouse Trust 2 dated 4/21/21.

4

## ARGUMENT ON REPLY

### A. The Trustee Is Under A Duty To Liquidate Estate Property And Distribute It To Creditors Of The Estate

The Opposition characterizes the Liquidating Trustee's actions as a "rush" and the Property should continue to languish as it has for the past three (3) years. The delay would be without merit and in contravention of the Code. Congress designed a process to efficiently adjudicate administration of the bankruptcy estate and Defendant's lack of interest in following the federal rules has no impact on the Sale Motion.

Pursuant to the *Findings Of Fact, Conclusions Of Law, And Order Confirming The Debtors' Third Amended Joint Plan Of Liquidation Pursuant To Chapter 11 Of The Bankruptcy Code* [Dkt. No. 701; Dkt. No. 647-1], the Court confirmed a Plan and put in place The Liquidating Trustee Agreement ("Trust Agreement") for the orderly disposition of claims and assets of the estate for the sole purpose of liquidating the Trust assets. Despite protests to the contrary, the Property is an asset of the estate by duly issued court order. [Adv. Pro. Dkt. No. 64] (the "Summary Judgment Order"). Section 704(a)(1) requires the trustee to perform the basic tasks necessary to liquidate the debtor's property-collecting property of the estate and reducing it to money. "These tasks are normally accomplished by the trustee's sale of the property, and are to be accomplished expeditiously." 6 Collier on Bankruptcy § 704.01 (Richard Levin & Henry Sommer, 16th ed.) citing to 11 U.S.C. § 704(a)(6). The Trust Agreement directs the Liquidating Trustee to seek approval or direction with respect to any matter relating to the administration of the Liquidating Trust.[4] Thus, while the Trustee is not required to seek approval of the sale of the Property under section 363, the Trustee is authorized

---
[4] See Liquidating Trust Agreement; §3.18 [Dkt. No. 647]

5

DOCS_LA:337166.5 65004/003

to do so pursuant to the terms of the Plan and the Trust Agreement. It is abundantly clear that the sale of an estate asset to benefit creditors under the rubric of the Plan and the Bankruptcy Code is a fundamental task Congress assigned to the bankruptcy courts and the Court has core jurisdiction.

B.  **The Sale Of An Asset Of The Estate In Bankruptcy
    Is Unquestionably A Core Proceeding**

The Opposition asserts that the Sale Motion is not a core proceeding and can only be effectuated with Defendant's consent as the Trustee's custody of the Property was a direct result of a claim brought by the estate only <u>after the Petition</u> in an adversary action (Opposition, ¶¶20, 22). However, Section 157(b)(2) is not limiting, since it uses the word "include" and[5] the attempt by to utilize (b)(2)(N) in such fashion ignores the simple fact (a) the Property is an estate asset, (b) the Plan governs the sale of an estate asset subject to Court oversight, (c) the Bankruptcy Code requires a finding the Sale Motion is fair and in the best interest of the estate creditors, (d) and the Sale Motion seeks injunctive relief that the Property be sold free and clear of encumbrances. Each and all of the aforementioned acts are fundamental aspects under the Bankruptcy Code assigned to the bankruptcy court for final adjudication.

Pursuant to 28 U.S.C. §§ 1334(a) and (b), this Court has jurisdiction over four types of matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. *In re Am. Home Mortgage Holdings, Inc.*, 390 B.R. 120, 129-30 (Bankr. D. Del. 2008) (citations omitted). Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are "core" proceedings pursuant to 28 U.S.C. § 157(b), while proceedings that are only "related to" a case under

---

[5] *Bavelis v. Doukas (In re Bavelis),* 773 F.3d 148, 156 (6th Cir. 2004)

title 11 are "non-core" proceedings. *Id* (citing *Binder v. Price Waterhouse & Co., LLP, (In re Resorts Int'l., Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004).

Section 157(b)(2) of the Bankruptcy Code provides "a non-exhaustive list of examples" of "core" proceedings. It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales, see 28 U.S.C. §157(b)(2)(N) ("[C]ore proceedings include . . . orders approving the sale of property."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. See 11 U.S.C. § 105(a); cf. also 28 U.S.C. § 1651. Moreover, courts have characterized the injunctive authority of bankruptcy courts as "core" when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of section 363(f). See *In re Millennium Seacarriers, Inc.*, 458 F.3d at 95 (holding that an adversary action which turned on the terms of a sale order was a core proceeding); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144-45 (6th Cir. 1991) (affirming bankruptcy court's core jurisdiction to issue an order because, inter alia, debtor-appellant and its successor-purchaser asserted "free and clear" rights under section 363(f)); see also *TWA*, 322 F.3d at 288-91 (successor liability claims against purchaser were properly extinguished under section 363(f)); *Smart World Techs. LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 169 n.3 (2d Cir. 2005)("Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers … to acquire assets without any accompanying liabilities.") (emphasis added); cf. *MacArthur Co. v. Johns-Manville Corp*., 837 F.2d 89, 93 (2d Cir. 1988) ("The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's . . . authority . . . to make sure that claims to [the debtor's] insurance proceeds were . . . channeled to the settlement fund and could not be asserted directly against the insurers. The

7

authority to issue the injunction is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds."); *id*. at 94 (citing section 363(f) cases as support for injunctive authority). The injunctive provisions in the Sale Order enjoining successor liability would thus be within the Bankruptcy Court's core jurisdiction to authorize and effectuate the 363 Transaction "free and clear" of Appellants' claims under section 363(f). See *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 56-57 (S.D.N.Y. 2010)

The sale of assets of a debtor in bankruptcy is a fundamental task addressed to the bankruptcy courts that insure sales maximize profits for the benefit of creditors of the estate.

**C.   The Assertion That The Trustee Seeks To Effectuate An Eviction In Contravention Of The COVID Hardship Moratorium Act Is Yet Another Example Of The Bad Faith Tactics Of Paul Parmar And His Single Asset LLC**

Under the COVID-19 Emergency Eviction and Foreclosure Prevention Act (the "Act"), one can prevent a landlord from evicting a tenant if the tenant has lost income or increased expenses during the COVID-19 pandemic, or, if moving them from their home would pose a hardship during the pandemic. To be protected under this law, a "Hardship Declaration" must be prepared and delivered to the tenant's landlord. Assuming the proper delivery of the Hardship Declaration, one cannot be evicted from his/her primary residence pursuant to a pending case. COVID-19 Emergency Eviction and Foreclosure Prevention Act. S. 9114. The Act sets forth in pertinent part:

> PART A 26
>
> Section 1. Definitions. For the purposes of this act: 1. "Eviction proceeding" means a summary proceeding *to recover possession of real property* under article seven of the real property actions and proceedings law relating to a residential dwelling unit or any other judicial or administrative proceeding to recover possession of real property relating to a residential dwelling unit.
>
> "*Tenant*" includes a residential tenant, lawful occupant of a dwelling unit, or any other person responsible for paying rent, use and occupancy, or any other financial obligation *under a residential lease or tenancy agreement, but does not*

8

> *include a residential tenant or lawful occupant with a seasonal use lease where such tenant has a primary residence to which to return to*. (Emphasis Added)
>
> *"Hardship declaration" means the following statement*, or a substantially equivalent statement in the tenant's primary language, in 14-point type, published by the office of court administration, whether in physical or electronic written form: "NOTICE TO TENANT: If you have lost income or had increased costs during the COVID-19 pandemic, or moving would pose a significant health risk for you or a member of your household due to an increased risk for severe illness or death from COVID-19 due to an underlying medical condition, and you sign and deliver this hardship declaration form to your landlord, you cannot be evicted until at least May 1, 2021 for nonpayment of rent or for holding over after the expiration of your lease. You may still be evicted for violating your lease by persistently and unreasonably engaging in behavior that substantially infringes on the use and enjoyment of other tenants or occupants or causes a substantial safety hazard to others.

<u>First</u>, the Opposition submits *no residential lease or tenancy agreement* because no landlord/tenant relationship exists and no residential lease ever existed. Defendant or Parmar are not a "residential tenant", and argument of counsel is not evidence.

<u>Second</u>, the Unit has been <u>unoccupied</u> for the past 2.5 years. Defendant does not occupy the Unit nor did it pay taxes and common charges during that time such that the notion the Trustee is evicting a tenant is misplaced. As stated by Defendant in prior filings before the Court:

> "Following the filing of this Court's attachment Order, the Condominium Board vastly expanded this Court's Order and barred Parmar – or any other individual – from entering or using the property, including preventing access to any personal property located inside of Apartment 12J. As a result, Defendant has not had the use or enjoyment of its property **since July 2018**." [Opposition to Default Motion, Dkt No. 31, pg. 7].

<u>Third</u>, even assuming (a) a lease existed, and (b) Parmar was a tenant, and (c) a hardship declaration was properly submitted initiating a claim under the Act, the Condominium Unit is not Parmar's residence. The Act on its face does not *include a residential tenant or lawful occupant….where such tenant has a primary residence to which to return*. Parmar resides in

9

New Jersey, not New York, so under what good faith basis does he assert protection under the Act?

As of September 2020, Parmar represented to the courts of New Jersey he resided in New Jersey. "Plaintiff, Ranga Bhoomi, is managed by Paul Parmar ("Parmar"), a resident of Monmouth County" (See Complaint, ¶10, attached to the Affidavit of J. Nolan as Exhibit "B")

The argument is a frivolous pleading, yet another roadblock, constructed without evidence to delay and maximize costs to all parties to the litigation.

D. **The Request To Stay The Adversary Proceeding Is Procedurally Defective And Should Not Disturb The Properly Noticed Motion**

An appellant desiring the stay of a judgment that may not be stayed as of right should present to the bankruptcy court a motion for a stay, stating reasons why the court should exercise its discretion to grant the stay. (Fed. Rule 62(b), made applicable in adversary proceedings by Rule 7062). The potential appellant that files a Rule 8002(b) motion <u>must also</u> seek a stay of enforcement to prevent execution upon the judgment. It is fundamental that the filing of such a motion by itself will not act as a stay of an order entered in a contested matter, nor will it act to extend the 14-day stays of Rule 3020, 4001, 6004 and 6006.[6] The stay takes effect only when the court approves the motion and/or bond or other security is posted. Fed. Rule 62(b).

Defendant has not timely filed a motion to stay the adversary proceedings pending appeal and the 14 day stay from issuance of the judgment has long passed.[7] Local Rule 9013-1, Fed. Rule 9013 [8] and Rule 8007(a)(2) prescribe that such request be by noticed motion with

---

[6] When Rule 8007 and 7062 are read together, it appears that an appellant desiring the stay as of right of a money judgment or of one determining an interest in property should present to the bankruptcy court a bond or other security in an amount adequate to protect the appellee. 10 Collier on Bankruptcy §8007.03 (Richard Levin & Henry Sommer, 16th ed.)

[7] Judgment dated March 1, 2021.

[8] See Fed. R. Proc. 9013: A request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing. The motion shall state with particularity the grounds therefor, and

reasonable notice of the motion to all parties. Rule 8007(a)(4)  Instead, the request is made in the form of an opposition without adequate notice.

The remedy sought in the Opposition, to stay underlying legal proceedings, is the exception not the rule.  The Sale Motion introduces a Buyer ready, willing and able to purchase the Property rather than allowing the Property to fall into a sheriff's sale.  The Opposition does not offer a bond or other security, but simply seeks to block the Sale.  The request is entirely inappropriate when the asset carries hundreds of thousands of dollars of debt and continues to incur even more costs.

**E.     The Request To Stay The Adversary Proceeding Is Not Warranted Under The Facts**

The party seeking the stay bears the burden of proof, and must show "'satisfactory' evidence on all four" factors of relief. *In re Taub, 2010*, Bankr. LEXIS 3458, *6 (Bankr. E.D.N.Y. 2010), citing to *Bijan-Sara Corp. v. Fed. Deposit Ins. Corp. (In re Bijan-Sara Corp.),* 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (quoting *In re Charles and Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988).  Stays pending appeal are the exception, not the rule, and are granted only in limited circumstances. *In re Paolo Gucci*, 105 F.3d 837, 840 (2d Cir. 1997). Courts in this Circuit apply a well-established four-factor test to determine whether to enter a stay pending appeal:

> (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal, and (4) the public interests that may be affected.

As one court observed, "the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *ACC*

---

shall set forth the relief or order sought. Every written motion, other than one which may be considered ex parte, shall be served by the moving party within the time determined under Rule 9006(d).

11

DOCS_LA:337166.5 65004/003

*Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 347 (S.D.N.Y. 2007).

(1) <u>Whether the movant will suffer irreparable injury</u>:

Defendant asserts it will lose a unique property right absent the Court moving to stay the adversary action. As stated by Defendant, the status quo must be maintained. (Opposition, Dkt no. 956, §32).

The undisputed facts evidence the Defendant has refused to pay for this Property since 2018, ignored the legal proceedings in state court, and ignored the Notice of Sheriff's Sale to auction off the Property. (See Affidavit of J. Nolan) The Sheriff's Sale was averted due to the Liquidating Trustee's intervention and the Residential Board's consensual adjournment of the sale. Defendant has refused to pay the monthly arrears associated with the upkeep of the Property so the "status quo" is a misnomer as the Property falls further into debt. The status quo would also frustrate the Residential Board who has been forced to bankroll hundreds of thousands of dollars due to Defendant's refusal to pay for the costs associated with the Property for three (3) years. Lastly, the Opposition is nothing more than an indirect attack on a duly noticed Sale Motion. The argument is yet another delaying tactic that burdens all participants except Defendant.

(2) <u>Whether a party will suffer substantial injury if a stay is issued</u>.

A party seeking a stay pending appeal must establish that a stay will not cause substantial harm to the non-moving party. *In re Taub, 2010*, Bankr. LEXIS 3458, *6 (Bankr. E.D.N.Y. 2010) The Opposition claims the only other interested party is the Liquidating Trustee and he has only been in possession of the Property for a brief period such that no injury will occur to grant the remedy requested. (Opposition, §33) The argument ignores the true state of affairs.

12

The Residential Board who has appeared since October 2020, and requested notice of all pleadings and holds not less than $450,000 in debt from Defendant's refusal to care for the Property. The Residential Board has stated on multiple occasions they are not a bank to fund Defendant's refusal to abide by the residential by-laws.

The Debtor has lost millions of dollars dues to Defendant's outrageous conduct. The Liquidating Trustee has engaged in a competitive sales process to ameliorate the harm and located a Buyer who has the financial ability to purchase the Property which will allow the Liquidating Trustee to return millions of dollars to the estate as well as pay off the Residential Board. The bankruptcy courts occupy a key role maximizing the price of assets sold. *U.S. v. Salerno,* 932 F. 2d 117, 123 (2nd Cir. 1991) Defendant had months to file a motion for stay pending appeal yet choose to wait until the Sale Motion to undermine the sale process.

The Liquidating Trustee is now forced to expend estate resources to maintain the Property and could very well lose the Buyers. [9] The injury to the Liquidating Trustee and Residential Board is real and the Opposition ignores the harm.

(3) Whether The Movant Has Demonstrated "A Substantial Possibility, Although Less Than A Likelihood, Of Success" On Appeal

On appeal, a bankruptcy court's "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52 (applicable pursuant to Fed. R. Bankr. P. 9014, 7052). While the bankruptcy court's findings of fact are not conclusive, "the party that seeks to overturn them bears a heavy burden." *H & C Dev. Group.*

---

[9] A supersedeas bond is designed to protect the appellee and it is defendant's burden to provide specific reasons why the court should depart from the standard requirement of granting a stay only after posting a bond in the full amount of the judgment. 10 Collier on Bankruptcy §8007.09[1] (Richard Levin & Henry Sommer, 16th ed.) citing to De la Fuente v. DCI Telecomm, Inc. 269 F. Supp. 2d 237, 240(S.D.N.Y. 2003)

13

*Inc. v. Miner (In re Miner),* 229 B.R. 561, 565 (2d Cir. 1999). The reviewing court must be left with a "definite and firm conviction" that a mistake has been made. *Ortega v. Duncan,* 333 F.3d 102, 107 (2d Cir. 2003) (citation omitted). "A bankruptcy court's conclusions of law, by contrast, are reviewed <u>de novo</u>." *In re Adelphia Commc'ns Corp., 367 B.R. 84, 90-91 (S.D.N.Y. 2007).*

At the Notice of Ruling, the Court issued lengthy factual findings most or all of which were undisputed facts agreed to by the parties. The Opposition asserts that the Defendant has a substantial likelihood of success on appeal as it was (a) error to grant the Motion to Strike, and (b) the Defendant came forth with some evidence of insolvency which created a material issue of fact. None of the issues argued by Defendant are persuasive.

The party proffering evidence has the burden of showing that the prerequisites for its admissibility are met. *See*, *e.g.*, *Gentile v. County of Suffolk*, 926 F.2d 142, 151 (2d Cir. 1991); *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991) [The district court's findings as to whether those prerequisites have been met may not be overturned unless they are clearly erroneous]. When a party offers facts to support his contention asserting "an issue of fact remains" to oppose summary judgment, they must comply with Rule 56(e). *Federal Republic of Germany v. Elicofon,* 536 F. Supp. 813, 822 (E.D.N.Y 1978). In the present case, in opposing the Motion For Summary Judgment, Or In The Alternative Summary Adjudication (<u>Motion For Summary Judgment</u>), Defendant submitted no affidavits or declarations to rebut the affidavits or key facts set forth in the Motion For Summary Judgment and further failed to lay a foundation for the documents attached to its opposition. The issue was not merely academic as numerous of the documents were incomplete, contradictory, or unrecognizable. Rule 56(d) sets forth a mechanism for a nonmovant to explain why it cannot

14

present facts essential to oppose a summary judgment. Defendant did not request additional time or move the court in accordance with Rule 56 or otherwise.

Under Rule 56, once there is a showing of the absence of an issue of fact, the opposing party must produce specific evidence that raises a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). With respect to the issue of insolvency, Plaintiff submitted financial records and affidavits as to the financial condition of the Debtor at the relevant time frame as well as noted the long-recognized presumption of insolvency settled under N.Y. Debt. & Cred. Law § 273, where the debtor makes a conveyance without fair consideration. See *Kramer v. Mahia (In re Khan),* 2014 Bankr. LEXIS 4205, citing to *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 20, 2000); *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, 41 (Bkrtcy E.D.N.Y, 2016) (trustee has met his burden on summary judgment and there is no genuine issue of fact where Debtor transferred property for less than fair consideration or reasonably equivalent value, not on account of antecedent debt, and for intra-family transfer). Again, Defendant submitted no affidavits or declarations to rebut the affidavits. Defendant failed to lay a foundation for the documents attached to its opposition. Lastly, even if Defendant's arguments were supported by admissible evidence, the defense offered by Defendant was an impermissible triangular set-off prohibited under the Code.

(4) <u>Public Interest Is Not Served To Grant The Request To Stay The Adversary Proceeding</u>

Defendant cannot point to any tangible interest served in favor of granting a stay which he characterizes as a "dispute between private parties over a particular piece of real estate". To

15

the contrary, the grant of a stay would continue to harm a multitude of parties who have appeared before the Court seeking an efficient adjudication of the issues.

The public interest favors the prompt and efficient resolution of disputes. *In re Adelphia, 361 B.R. at 367-68; In re Enron Corp.*, 01-16034, 2006 WL 2400411 (Bankr. S.D.N.Y. May 10, 2006); In re Taub, 2010 Bankr. LEXIS 3458, *15 ((Bankr. E.D.N.Y., 2010)(the interests of creditors are a significant determinant of the public interest in a bankruptcy case); *In re Richmond,* 2014 Bankr. LEXIS 4332, *16 (Bankr. E.D.N.Y. May 10, 2014) (rejection of the argument that stay motion must be granted to secure due process right of appellant to address legal questions)

Since February 2018, <u>Defendant has refused to pay</u> the common charges, taxes, utilities, and assessments associated with the Property he claims is his "unique" property interest which has spawned a mass of legal proceedings including state court litigation and sheriff's sales. Defendant is solely responsible for the current state of affairs. The Residential Board since 2018, and the Trustee since March 2021, have all carried the burden to pay for the upkeep of the Property while Defendant sat on its rights. A bona fide purchaser for value is willing to fill the void so no further waste occurs to the Property. Public interest militates against granting the request to stay the adversary pending appeal.

Plaintiff respectfully requests the Sale Motion be granted in its entirety.

Dated: June 1, 2021	PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Counsel to the Liquidation Trust.*